UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------

IRA NATHEL and SHELDON NATHEL,

                Plaintiffs,

      -against-

RICHARD SIEGAL, GEORGE COLEMAN,
HARVEY JOSEPHSON, ROBERT A. TREVISANI,
PAUL HOWARD, RICHARD S. GURALNICK;
SCHAIN LEIFER GURALNICK; BISTATE OIL
MANAGEMENT CORPORATION, SS&T
HOLDING CO., LLC, PALACE EXPLORATION
COMPANY, TAH DRILLING CO., INC., TAQ
DRILLING CO., INC., OIL AND GAS TITLE,
HOLDING CORPORATION, JOHN DOES 1-20;
JOHN DOE CORPORATIONS 1-20; JOHN DOE
LLCs 1-20; and JOHN DOE LLPs 1-20,

                Defendants.

--------------------------------------------------------

07 CV 10956 (LBS)(HBP)

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS THE AMENDED COMPLAINT BY DEFENDANTS
## RICHARD S. GURALNICK AND SCHAIN LEIFER GURALNICK

John H. Eickemeyer
Charles S. Caranicas
VEDDER PRICE P.C.
1633 Broadway – 47th Floor
New York, New York  10019
(212) 407-7700

*Attorneys for Defendants*
*Richard S. Guralnick and Schain Leifer Guralnick*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................. 1

PROCEDURAL HISTORY ..................................................................... 3

STATEMENT OF RELEVANT FACTS ...................................................... 4

    A.    General Factual Allegations ....................................................... 4

    B.    Allegations Specific to the SLG Defendants .............................. 5

ARGUMENT ..................................................................................... 7

POINT I    PLAINTIFFS' FIRST CLAIM, FOR VIOLATION OF THE
SECURITIES EXCHANGE ACT, MUST BE DISMISSED FOR
FAILURE TO STATE A CLAIM ............................................... 7

    A.    The Alleged Actions By The SLG Defendants Were Not In
Connection With The Purchase Or Sale Of A Security ............. 7

    B.    Plaintiffs Have Not Sufficiently Alleged That The SLG Defendants
Intended To Deceive Them ...................................................... 11

    C.    Plaintiffs' Securities Fraud Claim Is Time-Barred ................... 12

    D.    Plaintiffs' Securities Fraud Claim Is Also Barred Because It Fails
to Allege Actual Damages Caused By the SLG Defendants ................... 13

POINT II    DISMISSAL OF THE FEDERAL SECURITIES CLAIM REQUIRES
DISMISSAL OF THE ENTIRE ACTION FOR LACK OF SUBJECT
MATTER JURISDICTION ...................................................... 14

POINT III    PLAINTIFFS' COMMON LAW CLAIMS AGAINST THE SLG
DEFENDANTS SHOULD BE DISMISSED .................................. 15

    A.    Because There Is No Allegation That The SLG Defendants
Participated In Marketing the Partnerships, Plaintiffs' Fraud And
Misrepresentation Claims Must Be Dismissed ......................... 15

    B.    Plaintiffs' Breach Of Fiduciary Duty Claim Cannot Stand Because
The SLG Defendants Were Never In A Fiduciary Relationship
With Plaintiffs ...................................................................... 18

    C.    Plaintiffs' Professional Malpractice Claim Should Be Dismissed
Due To The Lack Of Causation And Recoverable Damages, And
Because It Is, At Least In Part, Time-Barred ............................ 19

CONCLUSION ................................................................................... 22

i

# TABLE OF AUTHORITIES

**Page**

## Cases

*Abrahamson v. Fleschner*, 568 F.2d 862 (2d Cir. 1977) ........................................................ 11

*Abrash v. Fox*, 805 F.Supp. 206 (S.D.N.Y. 1992) ..................................................................... 8

*Ackerman v. Price Waterhouse*, 84 N.Y.2d 535, 620 N.Y.S.2d 318,
 644 N.E.2d 1009 (1994) ...................................................................................................... 22

*Alpert v. Shea Gould Climenko & Casey*, 160 A.D.2d 67,
 559 N.Y.S.2d 312 (1st Dept. 1990) ............................................................................. 20, 21

*Block v. Razorfish, Inc.*, 121 F. Supp.2d 401 (S.D.N.Y. 2000) ................................................ 18

*Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57 (2d Cir. 1985) ...................... 8

*Dallas Aerospace, Inc. v. CIS Air Corporation*, 352 F.3d 775 (2d Cir. 2003) ......................... 17

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) ................ 11

*Estate of Burke v. Peter J. Repetti & Co.*, 255 A.D.2d 483,
 680 N.Y.S.2d 645 (2nd Dept. 1998) ................................................................................... 19

*Freschi v. Grand Coal Venture*, 767 F.2d 1041 (2d Cir. 1985), *vacated on other
 grounds*, 478 U.S. 1015, 106 S.Ct. 3325, 92 L.Ed.2d 731 (1986) ....................................... 14

*Fund of Funds, Ltd. v. Arthur Anderson & Co.*, 545 F. Supp. 1314 (S.D.N.Y. 1982) ............... 18

*Giordano v. City of New York*, 274 F.3d 740 (2d Cir. 2001) .................................................... 15

*Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8 (2d Cir. 2000) ....................... 17, 19

*In re Cross Media Marketing Corporation Securities Litigation*,
 314 F.Supp.2d 256 (S.D.N.Y. 2004) ..................................................................................... 10

*In Re Financial Corporation of America Shareholder Litigation*,
 796 F.2d 1126 (9th Cir. 1986) ............................................................................................... 8

*In Re Gas Reclamation Inc. Securities Litigation*, 659 F.Supp. 493 (S.D.N.Y. 1987) ............. 11

*Ingenito v. Bermec Corporation*, 376 F.Supp. 1154 (S.D.N.Y. 1974) ..................................... 11

*Kanev v. Turk*, 187 A.D.2d 395, 590 N.Y.S.2d 211 (1st Dept. 1992) ...................................... 19

*Laub v. Faessel*, 297 A.D.2d 28, 745 N.Y.S.2d 534 (1st Dept. 2002) ....................................... 19

*Lavin v. Kaufman, Greenhut, Lebowitz & Forman*, 226 A.D.2d 107,
 640 N.Y.S.2d 57 (1st Dept. 1996) ........................................................................................ 18

*Lentell v. Merrill Lynch & Co., Inc.*, 361 F.3d 161 (2d Cir.); *cert denied*,
 546 U.S. 935, 126 S.Ct. 421, 163 L.Ed.2d 321 (2005) .............................................. 8, 9, 13

*Lumbermens Mutual Casualty Co. v. Franey Muha Alliant Ins. Svces.*,
 388 F.Supp.2d 292 (S.D.N.Y. 2005) ............................................................................... 18, 19

*Marchese v. Nelson*, 809 F.Supp. 880 (D. Utah 1993) ................................................. 11

*Matthews v. Mulkos*, 377 F.Supp.2d 350 (S.D.N.Y. 2005) .......................................... 19

*Morse v. Weingarten*, 777 F.Supp. 312 (S.D.N.Y. 1991) .............................................. 9

*Nate B. & Frances Spingold Foundation v. Wallin, Simon, Black & Co.*,
    184 A.D.2d 464, 585 N.Y.S.2d 416 (1st Dept. 1992) ........................................ 18, 19

*National Union Fire Ins. Co. of Pittsburgh, PA v. Robert Christopher Assoc.*,
    257 A.D.2d 1, 691 N.Y.S.2d 35 (1st Dept. 1999) ................................................. 16

*Osofsky v. Zipf*, 645 F.2d 107 (2d Cir. 1981) .............................................................. 14

*Schick v. Ernst & Young*, 808 F.Supp. 1097 (S.D.N.Y. 1992) ..................................... 16

*Scone Investments, L.P. v. American Third Market Corp.*, 1998 WL 205338
    (S.D.N.Y. 1998) .............................................................................................. 16

*Small v. Lorillard Tobacco Co., Inc.*, 252 A.D.2d 1, 679 N.Y.S.2d 593
    (1st Dept. 1998) *aff'd* 94 N.Y.2d 43, 720 N.E.2d 892, 698 N.Y.S.2d 615 (1999) ................... 16

*Suez Equity Investors L.P. v. Toronto-Dominion Bank*, 250 F.3d 87 (2d Cir. 2001) ................... 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) .............. 11

*The Ernest Lawrence Group v. Marketing The Americas, Inc.*, 2005 WL 2811781
    (S.D.N.Y. 2005) .............................................................................................. 17

*Wall v. CSX Transportation, Inc.*, 471 F.3d 410 (2d Cir. 2006) ................................... 15

**Statutes and Regulations**

28 U.S.C. § 1331 .......................................................................................................... 14

28 U.S.C. § 1332 .......................................................................................................... 14

Employment of Manipulative and Deceptive Devices, Rule 10b-5,
    17 C.F.R. § 240.10b-5 ......................................................... 1, 3, 7, 8, 11, 16

Federal Rule of Civil Procedure 9(b) ......................................................................... 16

Federal Rule of Civil Procedure 12(b)(1) ............................................................. 1, 15

Federal Rule of Civil Procedure Rule 12(b)(6) .......................................................... 1

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(4) ............................. 9

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(2) ........................... 11

Securities Act of 1933, Section 2(a)(1), 15 U.S.C. § 77b(a)(1) .................................... 8

Securities Exchange Act of 1934, Section 10(b), 15 U.S.C. § 78j(b) .............. 1, 3, 7, 8, 11, 13, 16

Securities Exchange Act of 1934, Section 28(a), 15 U.S.C. § 78bb(a) ............... 2, 13,14

CPLR 214(6) ......................................................................................................... 3, 21

Defendants Richard S. Guralnick ("Guralnick") and Schain Leifer Guralnick ("SLG")(collectively, the "SLG Defendants") submit this memorandum of law in support of their motion to dismiss the First Amended Complaint ("Amended Complaint")[1] of plaintiffs Ira Nathel and Sheldon Nathel ("Plaintiffs") as against them for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and alternatively for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

## PRELIMINARY STATEMENT

Plaintiffs' action, insofar as asserted against the SLG Defendants, is premised on the theory that they were misled into purchasing interests in partnerships engaged in oil and gas exploration by misstatements concerning, among other things, the tax deductibility of certain "intangible drilling costs" associated with the exploration activities. However, Plaintiffs do not identify a single representation of any kind that is attributable to the SLG Defendants and that was made to them prior to their purchase of interests in the partnerships. Indeed, the only statements and conduct by the SLG Defendants alleged in the Amended Complaint are tax return preparation services for the partnerships and responses to IRS inquiries—both of which necessarily occurred *after* Plaintiffs acquired their partnership interests. Plaintiffs allege no facts from which it could be inferred that the SLG Defendants made any representations, failed to disclose any information or engaged in any conduct that induced them to purchase the partnership interests. Notably, Plaintiffs do not allege any adverse determination by the IRS regarding the partnerships—because there has been none.

Plaintiffs' claim against the SLG Defendants under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder is flawed for a number of reasons. Plaintiffs

---

[1]  A copy of the First Amended Complaint is attached to the Notice of Motion as Exhibit 1.

fail to identify any material misstatement or omission by the SLG Defendants by which they were—or could have been—induced to acquire their partnership interests. Plaintiffs also fail to identify any allegedly fraudulent conduct by the SLG Defendants "in connection with" the purchase or sale of a security (assuming that the general partnership interests are a "security" at all). Since Plaintiffs fail to allege any misstatements or material omissions by the SLG Defendants by which they could have been induced to purchase their partnership interests, they cannot possibly establish the requisite elements of reliance and causation. Plaintiffs allege no facts on which the "strong inference" of scienter required to maintain a securities fraud claim could be founded. Additionally, Plaintiffs' claim is time-barred because they were on inquiry notice of the facts underlying the purported fraud claim more than two years before they commenced this action. Finally, Plaintiffs cannot possibly establish that any misrepresentation by the SLG Defendants was the proximate cause of their alleged damage or that they have suffered any actual damage within the meaning of Section 28(a) of the Exchange Act. For all of these reasons, Plaintiffs' securities fraud claim must be dismissed insofar as it is asserted against the SLG Defendants. (*See* Point I, *infra*) Since the federal securities claim is the only possible basis for subject matter jurisdiction, dismissal of the securities claim should result in dismissal of the action in its entirety. (*See* Point II, *infra*)

If the action is not dismissed for lack of subject matter jurisdiction, the Court must still consider—and should dismiss—Plaintiffs' common law claims against the SLG Defendants. Plaintiffs' common law fraud claims must be dismissed for the same reasons as their securities fraud claim since the requisite elements are largely the same—and are entirely absent here. Similarly, Plaintiffs' negligent misrepresentation claim should be dismissed because they allege no actionable misrepresentation by the SLG Defendants, fail to allege any facts from which the

requisite duty of care could be inferred, and cannot allege the requisite reliance. (*See* Point IIIA, *infra*) Plaintiffs' breach of fiduciary duty claim fails because they allege no facts that take this action out of the general rule that accountants who function as tax preparers – which is the SLG Defendants' role with regard to the Partnerships—are not fiduciaries of their clients. (*See* Point IIIB, *infra*) Finally, Plaintiffs' professional malpractice claim against the SLG Defendants must be dismissed because Plaintiffs cannot establish that any acts by the SLG Defendants proximately caused their damages or that they have suffered any recoverable damages. In addition, any malpractice claim would be barred, at least in part, by the three-year statute of limitations for malpractice actions contained in CPLR 214(6). (*See* Point IIIC, *infra*) Accordingly, the Amended Complaint should be dismissed in its entirety as against the SLG Defendants.

## **PROCEDURAL HISTORY**

Plaintiffs filed their initial complaint on or about December 3, 2007. Plaintiffs then filed the Amended Complaint on or about December 13, 2007, and served it upon the SLG Defendants on December 14, 2007.

In the Amended Complaint, Plaintiffs set forth seven claims for relief. The First Claim alleges a violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder, by the SLG Defendants and others; the Second Claim alleges fraudulent inducement against all defendants; the Third Claim alleges "fraudulent non-disclosure" against all defendants; the Fourth Claim alleges negligent misrepresentation against all defendants; the Fifth Claim alleges a breach of fiduciary duty against the SLG Defendants and others; the Sixth Claim alleges breach of contract against several defendants, excluding the SLG Defendants; and the Seventh Claim alleges professional malpractice against the SLG Defendants and defendant Robert A. Trevisani.

3

## STATEMENT OF RELEVANT FACTS

### A.    General Factual Allegations

In their Amended Complaint, Plaintiffs allege that their accountant, defendant Harvey Josephson ("Josephson"), suggested Plaintiffs invest in eight general partnerships (the "Partnerships") in the field of oil and gas exploration organized by defendant Richard Siegal ("Siegal").  Plaintiffs now claim they were misled by both Josephson and Siegal as to the tax deductible nature of certain intangible drilling costs ("IDC Deductions") associated with the exploration activities (Amended Complaint, ¶¶ 44, 45, 47 through 52, 62 through 65)—even though no adverse tax determination has been made against any of the Partnerships.  Plaintiffs also allege that they were misled as to other issues, including predicted annual returns, cash flow, distributions, payment of exploration-related costs and drilling agreements (Amended Complaint, ¶¶ 53 through 56).   Plaintiffs further allege that Defendants fraudulently misrepresented the Partnerships' oil and gas exploration activities and expertise (Amended Complaint, ¶¶ 84, 90, 94, 101), and that they relied generally on "Defendants" in making their decision to purchase their interests in the Partnerships (Amended Complaint, ¶ 66).[2]

But while Plaintiffs do attribute certain allegedly misleading statements to defendants other than SLG and Guralnick, they do not allege a single statement made to them by the SLG Defendants prior to their purchase of the interests in the Partnerships.  The allegations with regard to specific actions or statements by the SLG Defendants—as opposed to a mere mention

---

[2]   Curiously, Plaintiffs state that their first purchase of an interest in the Partnerships (in High Island Drilling) was made in August of 2001 (Amended Complaint, ¶ 66), approximately three months *before* Josephson is alleged to have proposed—for the first time—that Plaintiffs participate in the Partnerships (Amended Complaint, ¶ 47).

that the SLG Defendants would be preparing tax returns for the Partnerships—all relate to actions *subsequent to* Plaintiffs' decision to purchase their interests.

Plaintiffs allege that the IRS began investigating the Partnerships in or about November of 2006 (Amended Complaint, ¶ 70).[3]  Plaintiffs further allege that, during the investigation, defendant Paul Howard ("Howard") expressed his concern that "the IRS is going to see something they don't like" in the investment proposals requested by the IRS (Amended Complaint, ¶ 73).  Based on a comment by one IRS agent, Plaintiffs also allege that the IRS deemed that the Partnerships "did not own a working interest in any [oil/gas] wells" (Amended Complaint, ¶ 80).  Of course, any and all allegations concerning the IRS inquiry—including those pertaining to the SLG Defendants—necessarily relate to matters that occurred *after* Plaintiffs acquired their interests in the Partnerships.

Plaintiffs allege that in 2007 they received documents from one of the non-SLG Defendants concerning the Condor, Hurricane and Indian Village Partnerships, which supposedly revealed that representations in the investment proposals, in the quarterly distributions and in correspondence with the IRS (along with corresponding verbal representations) were false and that material facts were withheld with respect to the Partnerships' interests, the IDC Deductions and the expected returns to Plaintiffs (Amended Complaint, ¶ 83).

**B.    Allegations Specific to the SLG Defendants**

The Amended Complaint contains few allegations directed specifically to the SLG Defendants.  As noted above, nowhere do Plaintiffs allege that they relied on representations or

---

[3]  Plaintiffs further allege that the New York State Department of Taxation also began to review their returns in or about July of 2007 and that their interest in one of the Partnerships (Indian Village) was subject to audit (Amended Complaint, ¶ 79).

assertions by the SLG Defendants in deciding to purchase their interests in the Partnerships. Specifically, Plaintiffs allege the following with respect to the SLG Defendants:

- that the SLG Defendants prepared the Partnerships' tax returns and Schedules K-1, which were in turn provided to Plaintiffs for use in preparing their personal tax returns, and which reflected the IDC Deductions that the SLG Defendants allegedly knew (or should have known) were improper (Amended Complaint, ¶¶ 67, 102, 141, 152).

- that on or about January 29, 2007, the SLG Defendants misinformed the IRS that there were no promotional/marketing materials used to solicit investments in the Partnerships; and that on or about October 16, 2006, the SLG Defendants misinformed the IRS that there was no legal opinion or prospectus describing the material tax deductibility issues (Amended Complaint, ¶¶ 77, 78).

- that the Partnerships were structured as a "common enterprise" with the expectation of profits "derived from the efforts of the promoter Siegal, the Managing Partners and/or the Siegal Companies or other third parties including Defendants Guralnick and SLG" (Amended Complaint, ¶ 61), though nowhere do Plaintiffs allege that the SLG Defendants had any role in structuring the Partnerships or did anything other than prepare the Partnerships' tax returns and respond to questions from the IRS about them.

- that the SLG Defendants and Josephson were "agents, and professional advisors placed in a positions (sic) of trust by Plaintiffs" (Amended Complaint, ¶ 137), and that the SLG Defendants were engaged "to render full accounting and tax services and advice to the Partnerships" (Amended Complaint, ¶ 150). Once again, though, Plaintiffs do not allege that the SLG Defendants made any statement or representation on which they relied in deciding to purchase their interests in the Partnerships.

6

Nowhere in the Amended Complaint is it alleged that the SLG Defendants ever communicated directly with Plaintiffs. Indeed, nowhere do Plaintiffs identify a single representation by the SLG Defendants on which they relied in deciding to purchase their interests in the Partnerships. Although Plaintiffs refer to the fact that the SLG Defendants were identified as the Partnerships' tax preparer, that representation was made by others, not by the SLG Defendants. Quite simply, the Amended Complaint fails to make a single allegation from which it could be inferred that Plaintiffs were induced to purchase their interests in the Partnerships by any representation made by the SLG Defendants.

Plaintiffs allege that federal and state tax authorities have challenged the tax deductibility of the IDCs and have questioned other aspects of the Partnerships (Amended Complaint, ¶¶ 70, 79). However, Plaintiffs do not allege that there has been any adverse determination—or any determination whatsoever—by the IRS or New York State. The tax deductibility of the IDCs, and whether Plaintiffs' interests in the Partnerships have lost their value, are open questions—as therefore, is the issue of whether Plaintiffs have suffered recoverable damages.

## ARGUMENT

### POINT I

### PLAINTIFFS' FIRST CLAIM, FOR VIOLATION OF THE SECURITIES EXCHANGE ACT, MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

#### A.    The Alleged Actions By The SLG Defendants Were Not In Connection With The Purchase Or Sale Of A Security

Plaintiffs' First Claim is brought under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, which states:

> "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,

7

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

*in connection with the purchase or sale of any security*."

17 C.F.R. § 240.10b-5, Employment of Manipulative and Deceptive Devices (emphasis added).[4]

In order to state a claim for relief under Section 10(b) and Rule 10b-5, a plaintiff must allege that the defendant "(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' relevance was the proximate cause of their injury." *Lentell v. Merrill Lynch & Co., Inc.*, 361 F.3d 161, 172 (2d Cir.); *cert denied*, 546 U.S. 935, 126 S.Ct. 421, 163 L.Ed.2d 321 (2005); *see also, Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 61 (2d Cir. 1985). "This requires that a certain relationship be established between the fraud and the transaction that resulted in the injury complained of." *In Re Financial Corporation of America Shareholder Litigation*, 796 F.2d 1126, 1129-1130 (9th Cir. 1986); *see also Abrash v. Fox*, 805 F.Supp. 206, 208 (S.D.N.Y. 1992). Such a plaintiff "must show that the act complained of caused the injury suffered . . . that the damage was either a direct result or a reasonably foreseeable result of the misleading statement." *Bloor, supra*, 745 F.2d at 61. Even

---

[4] It is also unclear whether Plaintiffs' interests in the Partnerships are "securities" as defined in Section 2(a)(1) of the Securities Act of 1933, 15 U.S.C. § 77b(a)(1). If the interests are determined not to be "securities," this action should be dismissed against all defendants for lack of subject matter jurisdiction. Since the Court may not be in a position to determine this issue at this early stage, the SLG Defendants are not moving to dismiss on this ground at this time. However, when the record has been more fully developed, the SLG Defendants will move promptly to bring this issue to the Court for determination.

where a comprehensive scheme to defraud is alleged, such a plaintiff "must still demonstrate causation in fact by showing that defendant's allegedly fraudulent activities were actually responsible for plaintiff's injuries." *Id*. This "causal connection may not be supplied by 'but for' allegations." *Id*. "[T]o establish loss causation, 'a plaintiff must allege . . . that the subject of the fraudulent statement or omission was the cause of the actual loss suffered.'" *Lentell*, *supra*, 396 F.3d at 173, *quoting Suez Equity Investors L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001). Where the "transactional nexus between a defendant's conduct and a plaintiff's purchase or sale of securities is not established, the claim is not viable." *Morse v. Weingarten*, 777 F.Supp. 312, 317 (S.D.N.Y. 1991). The Private Securities Litigation Reform Act also places upon Plaintiffs "the burden of proving that the act or omission of the defendant . . . caused the loss for which the plaintiff seeks to recover damages. 15 U.S.C. § 78u-4(b)(4).

Plaintiffs allege that they purchased interests in the Partnerships after relying on certain supposedly misleading representations conveyed to them by defendants other than the SLG Defendants. But nowhere do Plaintiffs allege or identify *any* representation or statement made to them by the SLG Defendants prior to their decision to purchase interests in the Partnerships. Plaintiffs allege only that the materials they received prior to their purchase identified the SLG Defendants as the intended tax preparers for the Partnerships. All of the alleged conduct or statements attributed to the SLG Defendants occurred *after* Plaintiffs purchased their interests. Thus, Plaintiffs could not possibly have relied on the SLG Defendants in making their purchase decision. Nor could any misstatements by the SLG Defendants be deemed to have proximately caused Plaintiffs any harm since they made no representation to Plaintiffs about anything prior to the purchase of the Partnership interests.

9

The SLG Defendants are alleged only to have prepared the tax returns and Schedules K-1 for the Partnerships (which included the allegedly improper IDC Deductions) and to have responded to inquiries from the IRS. In each case, the tax returns were prepared and the inquiries responded to by the SLG Defendants *after* Plaintiffs had purchased their interests in the respective Partnerships. There are no allegations that the SLG Defendants were in any way involved in the marketing of the Partnerships to Plaintiffs or to any other potential investors, or even that they had any direct contact with Plaintiffs. The SLG Defendants are not alleged to have drafted the promotional materials for the Partnerships or to have reviewed or edited the promotional materials. The SLG Defendants are not alleged to have presented the promotional materials to Plaintiffs or any other potential investors, nor are they alleged to have offered their professional opinion with respect to IDC Deductions prior to Plaintiffs' purchase. Quite simply, the SLG Defendants are not alleged to have made any statement or representation whatever *in connection with* Plaintiffs' purchase of their interests in the Partnerships.[5]

Plaintiffs' effort to assert a federal securities claim against the SLG Defendants is fatally undermined by their failure to allege any "significant affirmative acts" by the SLG Defendants "made *concurrently* with the sale . . . or the existence of any misleading documents attributable to" the SLG Defendants "that could serve as the predicate for concluding that" the SLG Defendants were "the proximate cause or substantially participated or assisted in the sale." *In Re*

---

[5]    Plaintiffs cannot overcome the failure to attribute any misleading statements to the SLG Defendants by reference to the "group pleading doctrine," which, to the extent it is recognized in the Second Circuit, is "extremely limited in scope" and only excuses Plaintiffs from attributing misstatements to specific defendants when those defendants were corporate insiders involved in the offering of the investment in question. *See, e.g., In re Cross Media Marketing Corporation Securities Litigation*, 314 F.Supp.2d 256, 262-63 (S.D.N.Y. 2004) (Patterson, J.). The Amended Complaint alleges no facts from which it could be inferred that the SLG Defendants were involved in authoring offering materials for the Partnerships or were involved in the Partnerships' day-to-day operations.

*Gas Reclamation Inc. Securities Litigation*, 659 F.Supp. 493, 509 (S.D.N.Y. 1987). Plaintiffs'
failure to allege facts satisfying Section 10(b)'s "in connection with" requirement as to the SLG
Defendants—as well as their inability to allege that they detrimentally relied on any
misstatement or omission by the SLG Defendants or that any statements by the SLG Defendants
proximately caused their supposed loss—thus requires dismissal of the Section 10(b) claim as
against the SLG Defendants.[6]

**B.     Plaintiffs Have Not Sufficiently Alleged That**
         **The SLG Defendants Intended To Deceive Them**

"To establish liability under § 10(b) and Rule 10b-5, a private plaintiff must prove that
the defendant acted with scienter, 'a mental state embracing intent to deceive, manipulate, or
defraud.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2507, 168 L.Ed.2d 179
(2007) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193-194, 96 S.Ct. 1375, 47 L.Ed.2d
668 (1976)). The Private Securities Litigation Reform Act of 1995 ("PSLRA") further requires
that a § 10(b) plaintiff "must 'state with particularity facts giving rise to a *strong inference* that
the defendant acted with the required state of mind.'" 127 S.Ct. at 2504 (quoting the PSLRA,
§ 21D(b)(2), 15 U.S.C. § 78u-4(b)(2))(emphasis added). This *strong inference* of scienter "must
be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus
strong in light of other explanations. A complaint will survive, we hold, only if a reasonable

---

[6]   Although they have not done so, Plaintiffs might allege that they relied on the allegedly
improperly prepared tax returns in deciding to retain their interests in the Partnerships. However,
"if misrepresentations are made which cause the plaintiff to retain stock, rather than buy or sell,
these misrepresentations are not actionable under Rule 10b-5." *Marchese v. Nelson*, 809 F.Supp.
880, 888 (D. Utah 1993); *see also, Abrahamson v. Fleschner*, 568 F.2d 862, 888 (2d Cir. 1977)
("in connection with" requirement is "not satisfied by an allegation that plaintiffs were induced
fraudulently not to sell their securities"); *Ingenito v. Bermec Corporation*, 376 F.Supp. 1154,
1170 (S.D.N.Y. 1974)("mere holding or retention" of securities will not satisfy the "in
connection with" requirement).

person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* 127 S.Ct. at 2510.

Based on the facts alleged against the SLG Defendants in the Amended Complaint, no reasonable person could possibly draw an inference that the SLG Defendants intended to defraud Plaintiffs. The SLG Defendants prepared tax returns and Schedules K-1 *after* Plaintiffs had purchased their interests in the Partnerships and therefore could not possibly have harbored any intent to defraud Plaintiffs into purchasing their interests in the Partnerships. As for the SLG Defendants' alleged misrepresentations to the IRS in 2006 and 2007 (Amended Complaint, ¶¶ 77, 78), these, too, came long after Plaintiffs had acquired their interests in the Partnerships. This chronology of events thus negates any possibility that a reasonable person could infer scienter as to the SLG Defendants. Accordingly, for this additional and independent reason, Plaintiffs' securities fraud must be dismissed as against the SLG Defendants.

C.    **Plaintiffs' Securities Fraud Claim Is Time-Barred**

In addition to the insufficiency of Plaintiffs' securities fraud claim with respect to the SLG Defendants, the claim is barred by the statute of limitations because Plaintiffs were on inquiry notice of the facts on which they contend their claim is based more than two years prior to the commencement of this action. The memorandum of defendants Richard Siegel, Paul Howard, Palace Exploration Company, Bistate Oil Management Corp., Oil and Gas Title Holding Corp, SS&T Holding Corporation, TAQ Drilling Company and TAH Drilling Company, submitted in support of their motion to dismiss, details the basis for dismissal due to time bar on Plaintiffs' securities fraud claim. Rather than reiterate those arguments, the SLG Defendants respectfully refer the Court to Point IA of co-defendants' memorandum, which they join in and adopt.

**D.    Plaintiffs' Securities Fraud Claim Is Also Barred Because It
Fails to Allege Actual Damages Caused By the SLG Defendants**

Section 28(a) of the Exchange Act, 15 U.S.C. §78bb(a) provides, in relevant part, that

> No person permitted to maintain a suit for damages under the
> provisions of this chapter shall recover . . . a total amount in
> excess of his actual damages on account of the [fraudulent] act
> complained of.

The Second Circuit has interpreted this provision to limit recovery in actions under Section 10(b)

to actual damages, *i.e.*, the plaintiff's out-of-pocket loss.  As discussed in Point IA, *supra*, the

Second Circuit and the Private Securities Litigation Reform Act require that a plaintiff allege

both transaction (or "but for") causation and loss (or "proximate") causation.  In order to

establish the requisite loss causation, the plaintiff must plead and prove that the subject of the

misrepresentation or omission was the cause of plaintiff's actual loss.  *Lentell*, *supra*, 396 F. 3d

at 173.

Plaintiffs cannot meet their burden of establishing loss causation with respect to the SLG

Defendants nor can they prove that they have sustained recoverable damages under Section

28(a).  Since Plaintiffs fail to allege any statements whatever made to them by the SLG

Defendants prior to their acquisition of interests in the Partnerships, Plaintiffs cannot even

establish transaction causation, *i.e.*, they cannot properly allege that but for the statements or

conduct of the SLG Defendants they would not have bought their Partnership interests.  Since the

SLG Defendants made no representations prior to the purchase, Plaintiffs most certainly cannot

establish loss causation, which would require them to link the matter misrepresented—and here

there was none—to the reason for their alleged loss.

Aside from this complete failure of causation, Plaintiffs cannot now allege that they have

suffered any "actual damages" within the meaning of Section 28(a) of the Exchange Act.

Plaintiffs allege that they "now face monetary losses due to unanticipated tax payments, interest

and penalties." (Amended Complaint, ¶15)  However, no such determinations have been made as yet by any taxing authority—and Plaintiffs do not allege to the contrary—so plaintiffs cannot contend that they have as yet suffered any "actual damages."  This action is thus, at the very least, premature and should be dismissed on that basis.

Moreover, as noted in the co-defendants' brief, the Second Circuit, and other courts, have found that anticipated but unrealized tax benefits do not constitute an out-of-pocket loss under Section 28(a).  *Freschi v. Grand Coal Venture*, 767 F.2d 1041 (2d Cir. 1985), *vacated on other grounds*, 478 U.S. 1015, 106 S.Ct. 3325, 92 L.Ed.2d 731 (1986).  To the extent that this is the anticipated harm for which Plaintiffs seek redress via their securities fraud claim—which is most certainly indicated by paragraph 15 of the Amended Complaint—such damages are plainly not recoverable as actual damages within the meaning of Section 28(a).  *Osofsky v. Zipf*, 645 F.2d 107, 111-12 (2d Cir. 1981).[7]  Plaintiffs' inability to plead and prove causation with regard to the SLG Defendants, and the absence of any present or anticipated actual damages within the meaning of Section 28(a) of the Exchange Act, provides still another basis for dismissal of Plaintiffs' securities fraud claims.

## POINT II

### DISMISSAL OF THE FEDERAL SECURITIES CLAIM REQUIRES DISMISSAL OF THE ENTIRE ACTION FOR LACK OF SUBJECT MATTER JURISDICTION

Plaintiffs' federal securities claims provide the sole basis for federal subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1331.  There is no possible basis for diversity jurisdiction under 28 U.S.C. § 1332 because Plaintiffs and many of the defendants are New York citizens.  In the event that the Court dismisses Plaintiffs' federal securities fraud claim, the sole

---

[7] As demonstrated in Point IIIC, *infra*, such damages are also not recoverable under New York law on Plaintiffs' common law claims.

basis for subject matter jurisdiction will be removed.  Although dismissal of pendent state law claims is not absolutely required where federal claims have been dismissed, where "state issues substantially predominate . . ., the state claims may be dismissed without prejudice." *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001).  Accordingly, upon dismissal of the federal securities claims, this Court should dismiss this action due to the absence of federal subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1)

**POINT III**

**PLAINTIFFS' COMMON LAW CLAIMS AGAINST
THE SLG DEFENDANTS SHOULD BE DISMISSED**

In the event that this action does survive in this Court, then the Court must address—and should dismiss—Plaintiffs' common law claims against the SLG Defendants, each of which is deficient.

**A.    Because There Is No Allegation That The SLG Defendants
Participated In Marketing the Partnerships, Plaintiffs'
Fraud And Misrepresentation Claims Must Be Dismissed**

**1.    Fraud[8]**

"Proof of fraud under New York law requires a showing that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Wall v. CSX Transportation, Inc.*, 471 F.3d 410, 415-416 (2d Cir. 2006)(citation omitted).  "To make out a prima facie case of fraud, the pleadings must contain

---

[8]    Plaintiffs Second Claim is for Fraud, while their Third Claim is for "Fraudulent Non-disclosure." (Amended Complaint, ¶¶ 123 through 129).  Since any claim for failure to disclose material facts is subsumed within Plaintiffs' purported fraud claim, the purported claim for "fraudulent non-disclosure" is merely a reiteration of Plaintiffs' common law fraud claim and must be dismissed as against the SLG Defendants for the same reasons.

detailed allegations in support of every element: representation of material fact, falsity, scienter, reasonable reliance and damages." *Small v. Lorillard Tobacco Co., Inc.*, 252 A.D.2d 1, 679 N.Y.S.2d 593, 604 (1st Dept. 1998) *aff'd* 94 N.Y.2d 43, 720 N.E.2d 892, 698 N.Y.S.2d 615 (1999); *see also National Union Fire Ins. Co. of Pittsburgh, PA v. Robert Christopher Assoc.*, 257 A.D.2d 1, 691 N.Y.S.2d 35, 41 (1st Dept. 1999).[9]

Plaintiffs' "common law fraud claims fail for the same reasons as the 10(b) claims." *Schick v. Ernst & Young*, 808 F.Supp. 1097, 1104 (S.D.N.Y. 1992). This is true because "the elements of common law fraud are essentially the same as those which must be pleaded to establish a claim under § 10(b) and Rule 10b-5." *Scone Investments, L.P. v. American Third Market Corp.*, 1998 WL 205338, at *10 (S.D.N.Y. 1998). Since Plaintiffs have clearly failed to sufficiently plead a securities fraud claim against the SLG Defendants (*see* Point I, *supra*) Plaintiffs' common law fraud claim against them must be dismissed for the same reasons.

More specifically, Plaintiffs fail to allege any representations or actions by the SLG Defendants before the purchase of their interests in the Partnerships, it is impossible for Plaintiffs to prove that they relied on the SLG Defendants in deciding to purchase their interests in the Partnerships, that the SLG Defendants intended to defraud them (*see* Section I(b), above), or that the SLG Defendants did anything to cause their alleged losses. Once again, virtually all of the essential elements of a fraud claim are lacking. Accordingly, Plaintiffs' common law

---

[9] Of course, these elements must be pled with particularity under Fed.R.Civ.P. 9(b). Aside from their substantive flaws, Plaintiffs' securities fraud and common law fraud claims are also deficient under Rule 9(b) because the Amended Complaint alleges no specific representation by the SLG Defendants that could have induced Plaintiffs to purchase their interests in the Partnerships. Dismissal of both the securities fraud and common law fraud claims is required on this additional ground as well.

fraud claim against the SLG Defendants suffers from the same deficiencies as their securities fraud claim and so must be dismissed.

## 2.    <u>Negligent Misrepresentation</u>

"It is settled New York law that the elements of negligent misrepresentation are: (1) carelessness in imparting words; (2) upon which others were expected to rely; (3) and upon which they did act or failed to act; (4) to their damage. (citation omitted)  Most relevant, the action requires that (5) the declarant must express the words directly, with knowledge or notice that they will be acted upon, to one to whom the declarant is bound by some relation or duty of care." *Dallas Aerospace, Inc. v. CIS Air Corporation*, 352 F.3d 775, 788 (2d Cir. 2003); *The Ernest Lawrence Group v. Marketing The Americas, Inc.*, 2005 WL 2811781, at *10 (S.D.N.Y. 2005); *see also Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).

Plaintiffs' negligent misrepresentation claim is deficient for many of the same reasons as their securities fraud and common law fraud claims.  As demonstrated above, the allegations in the Amended Complaint are such that Plaintiffs could not have relied on the work of the SLG Defendants in deciding to purchase their interests in the Partnerships because the SLG Defendants prepared tax returns and Schedules K-1 *after* Plaintiffs had decided to purchase their interests.  Moreover, since the SLG Defendants made no representations directly to Plaintiffs, with whom they were never acquainted, Plaintiffs cannot satisfy the requisite elements of a *direct* representation made to a person to whom a defendant was bound by some duty or relation or that Plaintiffs' reliance was expected.  As for allegations that the SLG Defendants misinformed the IRS as to the existence of promotional/marketing materials or legal opinions with respect to tax issues for the Partnerships, such alleged misrepresentations were allegedly made in late 2006 and early 2007 (Amended Complaint, ¶¶ 77, 78), long after Plaintiffs acquired

17

their interests in the Partnerships. Accordingly, Plaintiffs' claim for negligent misrepresentation must also be dismissed as against the SLG Defendants.

**B.    Plaintiffs' Breach Of Fiduciary Duty Claim Cannot Stand Because The SLG Defendants Were Never In A Fiduciary Relationship With Plaintiffs**

Plaintiffs' claim for breach of fiduciary duty must be dismissed as against the SLG Defendants because the SLG Defendants performed only routine tax return preparation services for the Partnerships and did not owe any fiduciary duty to the Partnerships, let alone to Plaintiffs. In order to sustain a breach of fiduciary duty claim, a plaintiff "must demonstrate: (1) the existence of a fiduciary relationship; and (2) breach of a fiduciary duty." *Lumbermens Mutual Casualty Co. v. Franey Muha Alliant Ins. Svces.*, 388 F.Supp.2d 292, 304 (S.D.N.Y. 2005).

Under New York law, an accountant who performs only routine accounting or tax services is not deemed to be in a fiduciary relationship with the client. *Block v. Razorfish, Inc.*, 121 F. Supp.2d 401, 403 (S.D.N.Y. 2000)(New York courts "do not generally regard the accountant-client relationship as a fiduciary one"), *quoting Nate B. & Frances Spingold Foundation v. Wallin, Simon, Black & Co.*, 184 A.D.2d 464, 585 N.Y.S.2d 416, 417 (1st Dept. 1992); s*ee also Fund of Funds, Ltd. v. Arthur Anderson & Co.*, 545 F. Supp. 1314, 1356 (S.D.N.Y. 1982).

New York Courts have recognized only limited circumstances in which an accountant's misconduct may be deemed to give rise to a claim for breach of a fiduciary duty, such as where the accountant is in possession of property belonging to the client or engages in affirmative fraudulent conduct to the detriment of the client. *See, e.g., Lavin v. Kaufman, Greenhut, Lebowitz & Forman*, 226 A.D.2d 107, 640 N.Y.S.2d 57, 57-58 (1st Dept. 1996)(fiduciary duty claim permitted to proceed where accountant failed to disclose—and outright lied about— pertinent information to his client in order to protect other clients); *Kanev v. Turk*, 187 A.D.2d

395, 590 N.Y.S.2d 211 (1st Dept. 1992)(fiduciary duty claim permitted where accountant advised client to loan money to another client without security even as the accountant was aware that the borrowing client was insolvent); *Spingold Foundation, supra*, 585 N.Y.S.2d at 417 (fiduciary duty claim permitted where allegations included "concealment of illegal acts and diversions of funds and failure to withdraw in the face of a conflict of interest").

None of these limited circumstances is present in this case. There is no allegation that the SLG Defendants did anything other than provide tax services to the Partnerships. There are no allegations from which it could be inferred that the SLG Defendants had custody of, or control over, any property of the Partnerships, much less property of Plaintiffs, or that the SLG Defendants had any sort of conflict of interest. "It is well-settled that the absence of a duty is fatal to a negligence or fiduciary duty claim." *Lumbermens Mutual, supra*, at 304. Since Plaintiffs do not allege any facts from which it could be inferred that the SLG Defendants were in a fiduciary relationship with the Partnerships or the Plaintiffs—particularly prior to Plaintiffs' acquisition of their interests—Plaintiffs' breach of fiduciary duty claim must be dismissed as against the SLG Defendants.

  **C.    Plaintiffs' Professional Malpractice Claim Should Be Dismissed Due To The Lack Of Causation And Recoverable Damages, And Because It Is, At Least In Part, Time-Barred**

Under New York law, the general elements of a professional malpractice claim are "(1) negligence, (2) which is the proximate cause of (3) damages." *Hydro Investors, supra*, at 15; *see also Estate of Burke v. Peter J. Repetti & Co.*, 255 A.D.2d 483, 680 N.Y.S.2d 645 (2nd Dept. 1998)(emphasis added). Plaintiff must allege "that the misrepresentations directly caused the loss about which plaintiff complains." *Matthews v. Mulkos*, 377 F.Supp.2d 350, 357 (S.D.N.Y. 2005)(quoting *Laub v. Faessel*, 297 A.D.2d 28, 32, 745 N.Y.S.2d 534 (1st Dept. 2002)). While the SLG Defendants are prepared to demonstrate that they complied with all

applicable standards of professional care in their preparation of the tax returns and Schedules K-1 for the Partnerships, Plaintiffs' malpractice claim should be dismissed against the SLG Defendants due to the absence of proximate cause as to the damages sought by Plaintiffs. The SLG Defendants cannot be deemed to have proximately caused any damages in the nature of the loss of Plaintiffs' investment because by the time the SLG Defendants prepared tax returns for the Partnerships, the Plaintiffs had already acquired their interests and paid for them. This simple chronology of events negates any effort by Plaintiffs to establish that the losses of which they complain were proximately caused by the SLG Defendants. Accordingly, Plaintiffs' professional malpractice claim against the SLG Defendants must be dismissed.

Moreover, all issues of causation aside, if the IRS or the State of New York eventually require that Plaintiffs pay back taxes (a decision not yet made), under New York law back taxes are not recoverable in a case such as this. *Alpert v. Shea Gould Climenko & Casey*, 160 A.D.2d 67, 72, 559 N.Y.S.2d 312, 314 (1st Dept. 1990) "The recovery of consequential damages naturally flowing from a fraud is limited to that which is necessary to restore a party to the position occupied before commission of the fraud." *Id*. The position that Plaintiffs occupied before purchasing the Partnership interests was that they would have had to pay the money saved by the IDC Deductions in taxes. Thus, Plaintiffs have suffered no damages due to the alleged malpractice by the SLG Defendants.[10] Even taking into account possible alternative investments that Plaintiffs may have had to forgo in order to purchase their interests in the Partnerships (an allegation not set forth in the Amended Complaint), such a speculative loss will not state a claim

---

[10] Plaintiffs may eventually have some damages—at least theoretically—inasmuch as the IRS may, at some time in the future, assess monetary penalties against Plaintiffs. But whether such penalties will be imposed is entirely speculative at this point and, in their absence, Plaintiffs' current claim is not yet ripe for adjudication.

for damages under New York law. "It is also well settled that the victim of fraud may not recover the benefit of an alternative agreement overlooked in favor of the fraudulent one." *Id.* New York law also precludes the recovery of interest on unpaid taxes. *Id.* at 315. Of course, at this point, no adverse determination has been made by the IRS with regard to the Partnerships, so the matter is not even ripe. Plaintiffs' malpractice claim should therefore be dismissed not only because it is premature but because even if an adverse determination is eventually made, Plaintiffs will be unable to prove recoverable damages.

Finally, Plaintiffs' malpractice claim against the SLG Defendants is barred, at least in part, by the statute of limitations. CPLR 214(6) prescribes a three-year statute of limitations for claims of professional malpractice (other than medical malpractice) regardless of the theory under which they are asserted. To the extent that Plaintiffs base their malpractice claims on representations allegedly made by the SLG Defendants on which they relied in acquiring their interests in the Partnerships, any such claims would be barred with regard to representations made more than three years prior to the initial filing of this action on December 3, 2007. The Amended Complaint alleges only two Partnership interest purchases by Plaintiffs subsequent to December 3, 2004: the Hurricane Drilling purchase on December 9, 2004, for $300,000, and the Pebble Bay Drilling purchase on December 12, 2005, for $400,000. (*See* Amended Complaint, ¶ 66) All other Partnership purchases alleged by Plaintiffs were made prior to December 3, 2004, and any malpractice claim against the SLG Defendants based on such purchases are therefore time-barred. Even if Plaintiffs' purported professional malpractice claim is not dismissed in their entirety for the reasons set forth in the previous portions of this section, it should be dismissed at

least with respect to the acquisition of any Partnership interests purchased by Plaintiffs prior to December 3, 2004.[11]

## CONCLUSION

For the foregoing reasons, Defendants Richard S. Guralnick and Schain Leifer Guralnick respectfully request an Order dismissing all claims in Plaintiffs' First Amended complaint as against them.

Dated:   January 25, 2008
         New York, New York

                              VEDDER PRICE P.C.


                              By:    s/ John H. Eickemeyer
                                   John H. Eickemeyer (JE 8302)
                                   Charles S. Caranicas (CC 9244)

                                   1633 Broadway – 47th Floor
                                   New York, New York  10019
                                   Tel:  (212- 407-7700
                                   Fax:  (212) 407-7799

                                   Attorneys for Defendants
                                   *Richard S. Guralnick* and
                                   *Schain Leifer Guralnick*

NEWYORK/#190908.1

---

[11]   To the extent that Plaintiffs' malpractice claim seeks recovery of any tax benefits that may ultimately be denied by the IRS (which in any event are not recoverable under the *Alpert* decision) on the theory that the Partnership tax returns were improperly prepared by the SLG Defendants, that claim is time-barred with regard to any Partnership tax returns prepared prior to December 3, 2004. *Ackerman v. Price Waterhouse*, 84 N.Y.2d 535, 620 N.Y.S.2d 318, 644 N.E.2d 1009 (1994)(under New York law, statute of limitations for negligently-prepared tax returns begins to run when client receives the accountant's work product).