UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

IRA NATHEL and SHELDON NATHEL,                          :
                                                        :
                        Plaintiffs,                     :
                                                        :
        -against-                                       :
                                                        :          07-CIV-10956 (LBS)
RICHARD SIEGAL, GEORGE COLEMAN, HARVEY                   :
JOSEPHSON, ROBERT A. TREVISANI, PAUL                    :
HOWARD, RICHARD S. GURALNICK, SCHAIN                    :
LEIFER GURALNICK, BISTATE OIL                           :
MANAGEMENT CORPORATION, SS&T HOLDING                    :
CO., LLC, PALACE EXPLORATION COMPANY,                   :
TAH DRILLING CO., INC., TAQ DRILLING CO.,               :
INC., OIL AND GAS TITLE HOLDING                         :
CORPORATION, JOHN DOES 1-20, JOHN DOE                   :
CORPORATIONS 1-20, JOHN DOE LLCs 1-20, and              :
JOHN DOE LLPs 1-20                                      :
                                                        :
                        Defendants.                     :
                                                        :
------------------------------------------------------------------x

**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT BY RICHARD SIEGAL,
PAUL HOWARD, BISTATE OIL MANAGEMENT CORPORATION, SS&T HOLDING
CO., LLC, PALACE EXPLORATION COMPANY, TAH DRILLING CO., INC., TAQ
DRILLING CO., INC., OIL AND GAS TITLE HOLDING CORPORATION**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................2

FACTUAL BACKGROUND...................................................................................3

    A.    Plaintiffs' Introduction to the Investment Structure .................................3

    B.    The Investment Proposals......................................................................4

    C.    Plaintiffs' Investments..........................................................................5

    D.    Plaintiffs' Communications with the IRS...............................................6

    E.    The Purported Securities Fraud .............................................................7

ARGUMENT.........................................................................................................7

I.    PLAINTIFFS' SECTION 10(B) CLAIM SHOULD BE DISMISSED. ...........................8

    A.    Plaintiffs' Section 10(b) Claim is Barred By The Statute of Limitations. ..............9

    B.    The Complaint Fails To Allege Misrepresentation Undertaken In Connection With A Purchase of Securities..............................................................11

    C.    The Complaint Fails to Adequately Plead Proximate Cause..................................12

    D.    The Complaint Fails to Plead Scienter. .................................................14

        1.    The Complaint Fails to Allege that Siegal or Howard Had The Opportunity or the Motive to Commit Securities Fraud..........................15

        2.    The Complaint Fails to Allege that Siegal or Howard Acted Recklessly. 16

II.    THIS COURT SHOULD DISMISS PLAINTIFFS' REMAINING STATE LAW CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION. ..................................18

CONCLUSION .....................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Acito v. Imcera Group, Inc.,*
   47 F.3d 47(2d Cir. 1995) ........................................................................................15, 16

*Arduini/Messina P'ship v. Nat'l Med. Fin. Serv. Corp.,*
   74 F.Supp.2d 352(S.D.N.Y. 1999) ..................................................................................7

*Armstrong v. McAlpin,*
   699 F.2d 79 (2d Cir. 1983) ...........................................................................................10

*Beck v. Mfrs. Hanover Trust Co.,*
   820 F.2d 46 (2d Cir. 1987) ...........................................................................................16

*Bell Atlantic Corp. v. Twombly,*
   127 S.Ct. 1955 (2007)......................................................................................................7

*Chill v. Gen. Elec. Co.,*
   101 F.3d 263 (2d Cir. 1996) .........................................................................................14

*Credit Acceptance Corp. Sec. Litig.,*
   50 F. Supp. 2d 662, 671 (E.D. Mich. 1999) ...................................................................8

*Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc., rev'd on other grounds,* 126 S.Ct. 1503,
   (2006)
   395 F.3d 25 (2d Cir. 2005) ...........................................................................................11

*Decker v. Massey-Ferguson, Ltd.,*
   681 F.2d 111 (2d Cir. 1982) ...........................................................................................9

*Dresner v. Utility.com, Inc.,*
   371 F. Supp. 2d 476 (S.D.N.Y. 2005) ...........................................................................13

*Emergent Capital Inv. Mgmt LLC v. Stonepath Group, Inc.,*
   343 F.3d 189 (2d Cir. 2003) .........................................................................................12

*Ernst & Ernst v. Hochfelder,*
   425 U.S. 185 (1976) .........................................................................................................9

*Fadem v. Ford Motor Co.,*
   352 F. Supp. 2d 501 (S.D.N.Y. 2005) ...........................................................................16

*Feldman v. Pioneer Petroleum, Inc.,*
   606 F. Supp. 916 (W.D. Okla. 1985)..............................................................................14

*Freschi v. Grand Coal Venture, vacated on other grounds*, 478 U.S. 1015 (1986)
   767 F.2d 1041 (2d Cir. 1985) ...................................................................................13

*Gamble v. City of New York*,
   No. 2007 WL 2847221 (S.D.N.Y. Sept. 28, 2007) ..................................................7

*Gebhardt v. Allspect, Inc.*,
   96 F. Supp. 2d 331 (S.D.N.Y. 2000) .........................................................................7

*Giordano v. City of New York*,
   274 F.3d 740 (2d Cir. 2001) ....................................................................................18

*GSGSB, Inc., v. New York Yankees*,
   862 F. Supp. 1160 (S.D.N.Y. 1994) ........................................................................17

*Hernandez v. Childers*,
   736 F. Supp. 903 (N.D. Ill. 1990) ............................................................................10

*Huddleston v. Herman & MacLean*,
   640 F.2d 534 (5th Cir. 1981) ...................................................................................12

*In re AFC Enters., Inc. Sec. Litig.*,
   348 F. Supp. 2d 1363 (N.D. Ga. 2004) ....................................................................15

*In re AOL Time Warner Inc. Sec. Litig.*,
   381 F. Supp. 2d 192 (S.D.N.Y. 2004) .......................................................................9

*In re Carter-Wallace, Inc. Sec. Litig.*,
   220 F.3d 36, 39 (2d Cir. 2000) ................................................................................14

*In re CMS Energy Sec. Litig.*,
   403 F. Supp. 2d 625 (E.D. Mich. 2005) ...................................................................12

*In re Compuware Sec. Litig.*,
   386 F. Supp. 2d 913 (E.D. Mich. 2005) ...................................................................13

*In re Credit Acceptance Corp. Sec. Litig.*,
   50 F. Supp. 2d 662 (E.D. Mich. 1999) .......................................................................8

*In re Merrill Lynch & Co. Research Reports Secs. Litig.*,
   272 F. Supp. 2d 243 (S.D.N.Y. 2003) ................................................................15, 17

*Kahn v. Kohlberg, Kravis, Roberts & Co.*,
   970 F.2d 1030 (2d Cir.1992) .....................................................................................9

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001) ...............................................................................15, 16

*Lentell v. Merrill Lynch & Co., Inc.,*
  396 F.3d 161 (2d Cir. 2005) ........................................................................................8, 12

*Liberty Nat'l Ins. Holding Co. v. Charter Co.,*
  734 F.2d 545 (11th Cir. 1984) ....................................................................................12, 17

*Ling v. Deutsche Bank, AG,*
  No. 04 Civ. 4566(HB), 2005 WL 1244689, 2005 U.S. Dist. LEXIS 9998 (S.D.N.Y. May 26,
  2005)..........................................................................................................................11

*Melder v. Morris,*
  27 F.3d 1097 (5th Cir. 1994) ...........................................................................................16

*Montoya v. Mamma.com, Inc.,*
  2006 WL 770573 (S.D.N.Y. 2006) ...............................................................................14, 15

*Osofsky v. Zipf,*
  645 F.2d 107 (2d Cir. 1981) ............................................................................................13

*Pross v. Katz,*
  784 F.2d 455 (2d Cir. 1986) ............................................................................................11

*Rolf v. Blyth, Eastman Dillon & Co.,*
  570 F.2d 38 (2d Cir. 1978) ..............................................................................................14

*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.,*
  75 F.3d 801 (2d Cir. 1996) ..............................................................................................16

*SEC v. Zandford,*
  535 U.S. 813, (2002) ......................................................................................................11

*SEC v. Howey Co.,*
  328 U.S. 293 (1946) .........................................................................................................9

*Sharp v. Coopers & Lybrand,*
  649 F.2d 175 (3d Cir.1981), *cert. denied*, 455 U.S. 938 (1982)..............................................13

*Shields v. Citytrust Bancorp, Inc.,*
  25 F.3d 1124 (2d Cir. 1994). ...................................................................................14, 15, 17

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank,*
  250 F.3d 87 (2d Cir. 2001) ..........................................................................................7, 13

*Wentzka v. Gellman,*
  991 F.2d 423 (7th Cir. 1993) ...........................................................................................18

**Statutes**

U.S.C. § 78u-4(b)(1)................................................................................................8

15 U.S.C. § 78bb(a)................................................................................................13

15 U.S.C. § 78u-4(b)(1)..........................................................................................8

15 U.S.C. § 78u-4(b)(2)..........................................................................................14

28 U.S.C. § 1658(b)................................................................................................9

Fed. R. Civ. P. 9(b)................................................................................................8

v

Defendants Richard Siegal, Paul Howard, Palace Exploration Company ("Palace"), The Bistate Oil Management Corp. ("Bistate"), Oil and Gas Title Holding Corp. ("O&G"), and SS&T Holding Corporation (collectively, the "Palace Parties"), along with Defendants TAQ Drilling Company and TAH Drilling Company (the "Drilling Entities," together with the Palace Parties the "Moving Defendants"), respectfully submit this memorandum of law in support of their Motion to Dismiss Plaintiffs' First Amended Complaint (the "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).

## PRELIMINARY STATEMENT

Plaintiffs allege they were induced to invest in a series of general partnerships structured to acquire oil and gas properties by Defendants' false promise that these would allow for significant tax deductions related to intangible drilling costs ("IDCs") associated with exploiting those resources. Plaintiffs complain that returns they filed reflecting IDC deductions are presently being audited by the Internal Revenue Service (the "IRS"). This auditing activity, Plaintiffs' allege, reflects that Defendants' representations as to the propriety of their IDC deductions were false. Plaintiffs thus seek, by virtue of their Section 10(b) claim, damages for the potential loss they expect to incur in the event these IDC deductions are disallowed.

The Complaint fails to state a claim under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"): *First*, Plaintiffs' Section 10(b) claim is time-barred. Plaintiffs knew in January of 2002 that the IDC deductions they sought could be subject to IRS scrutiny. To the extent that the auditing activity now taking place evidences a fraudulent inducement -- which it does not -- the Exchange Act charges Plaintiffs with constructive notice of such fraud as of that date. Plaintiffs' claim expired two years later, in January 2004. *Second*, even assuming Plaintiffs' Section 10(b) claim is not time-barred, it is subject to dismissal because the Complaint fails to identify an actionable misstatement or omission attributable to Howard or Siegal, the

2

only two Moving Defendants against whom it is asserted. *Third*, the Complaint is devoid of any

causal link between the purported fraud and a harm Plaintiffs actually suffered. To the contrary,

it is based only on speculation that Plaintiffs' IDC deductions *may* be disallowed in the future:

proximate cause cannot be established in the absence of an injury. *Fourth*, the Complaint fails

to adequately plead scienter. No motive or opportunity for fraud is ascribed to Howard or Siegal,

and Plaintiffs identify no "red flags" from which the Court could infer recklessness. In the

absence of such allegations, a Section 10(b) claim does not lie.

Finally, because Plaintiffs fail to plead a violation of Section 10(b), this Court should

dismiss Plaintiffs' remaining state law claims against the Moving Defendants. There exists no

basis for this Court to exercise subject matter jurisdiction over these causes of action.

## FACTUAL BACKGROUND

To the extent it finds them to be well-pleaded, this Court should presume as true the

following facts alleged by the Complaint:

### A.    Plaintiffs' Introduction to the Investment Structure

Plaintiffs Ira Nathel and Sheldon Nathel are the principals of Nathel & Nathel Inc., a

wholesale fruit and vegetable distributor based in New York. In 2001, Plaintiffs retained a

certified public accountant, Defendant Harvey Josephson, to provide them with accounting

advice. (Compl. ¶ 47.)

A year into his employ, Josephson suggested that Plaintiffs[1] consider an investment

partnership purportedly promoted by Defendant Richard Siegal, a lawyer and accountant who

had worked in the "oil and gas exploration and development industry" since the 1970s. (Compl.

---

[1]    For the purposes of this motion, Defendants presume that Richard Byllott, Plaintiffs' corporate controller,
(*see* Compl. ¶ 47), is Plaintiffs' agent such that purported communications among him and Defendants are properly
attributed to his principals.

¶ 44.) Josephson made a series of representations regarding the rate of return Plaintiffs could expect as a result of investing in a so-called "Siegal Partnership."[2] He further indicated that Plaintiffs' participation in this investment partnership would result in a tax deduction equal to or in excess of the cash they contributed. (Compl. ¶¶ 48-49.) Such tax savings, Josephson stated, are derived in part from promissory notes to support costs related to drilling oil and gas properties for which the investment partnership would be obligor. Josephson added, however, that these promissory notes would not be exercised by the drilling entity holding them, and that no partnership investor would ever see them.[3] (Compl. ¶¶ 48, 50.)

In January 2002, Plaintiffs contacted Richard Siegal to "confirm Josephson's assessment of the propriety of the tax deductibility of the proposed investment." (Compl. ¶ 51.) Siegal told Plaintiffs that previous investment partnerships with which he was affiliated had been subject to the scrutiny of tax officials on prior occasion, but that none "had [ ]ever lost an audit." (Compl. ¶ 51.)

## B.    The Investment Proposals

Plaintiffs state they obtained from Siegal "Investment Proposals" in connection with the investment partnerships. (Comp. ¶ 53) According to the Complaint, the Investment Proposals contained a number of "promises and representations of present fact," including the following:

- An investment partnership "will be formed with a minimum of [number of] units for capitalization and would contract with a specific drilling company to drill a minimum number of wells [ ] on sites purchased" from Defendant Palace. Defendant O&G, as nominee, would "hold[ ] all the titles to [these] properties and

---

[2]    Plaintiffs utilize at various times the term "Siegal Partnerships" (Compl. ¶ 45), "Siegal partnership" (Compl. ¶¶ 45, 47, 50), and the "Partnerships" to describe this investment vehicle. (Compl. ¶¶ 45, 61).

[3]    Plaintiffs do not explain what they understood this comment to mean.

wells for the investors' benefit." (Compl. ¶ 53 (g), (m).)

- Drilling in connection with the investment partnership's oil and gas acquisitions would be undertaken pursuant to a "Turnkey Drilling Contract"[4] with a drilling entity, and paid for by cash and with a "Turnkey Note" issued by the investment partnership. (Compl. ¶ 53(j).) This Turnkey Note would be secured by Subscription Notes executed by each general partner. (Compl. ¶ 53(p).)

- Bistate would distribute on a quarterly basis to each general partner his or her share of the investment partnership's revenues generated by oil and gas sales quarterly. (Compl. ¶ 53(n).) Such distributions would "be accompanied with a report of all sales of oil and gas by month and by well and a schedule of expenses paid on the owned wells and leases." (Compl. ¶ 53(o).)

## C.    **Plaintiffs' Investments**

Plaintiffs invested a cash total of $1,700,000 with eight investment partnerships over a period of four years commencing in 2001. (Compl. ¶ 66.) Documents received by Plaintiffs in connection with these contributions included a "Prospect Agreement," a "Turnkey Drilling Contract," a "Turnkey Note," a "Subscription Agreement," a "Subscription Note" and an "Assumption Agreement." (Compl. ¶ 56.) Plaintiffs complain that none of the signatures set forth by this contractual material was dated. (Compl. ¶ 57.)

During this same time period, Plaintiffs sought tax deductions in connection with the promissory note obligations incurred in connection with the investment partnerships' drilling

---

[4]    A turnkey drilling contract is a term of art in the oil and gas industry. In its most simple terms, it refers to an agreement in which a drilling contractor is paid a set fee to drill to an agreed depth (and sometimes to complete) the well or wells at issue. The drilling contractor runs all risk of cost overruns (i.e., costs exceeding the amount it was paid), and is required to furnish any materials and labor necessary, controlling the entire drilling process independently.

efforts.

**D.    Plaintiffs' Communications with the IRS**

In or about November 2006, Plaintiffs received a written notice from the IRS asking that they consent to an extension of the statute of limitation applicable to their returns, which were subject to audit. (Compl. ¶ 70.) Upon contacting the government to clarify the basis for this request, Plaintiffs spoke with IRS Agent Patrick Villarreal. (Compl. ¶ 70.)

According to the Complaint, and without having reviewed any of the promotional materials related to the investment partnerships, Agent Villarreal indicated to Plaintiffs that their "investments in the Siegal Partnerships were being audited, and that the Siegal Partnerships were aggressive tax shelters taking illicit tax deductions and that Plaintiffs were facing trouble." (Compl. ¶ 70.) He further requested Plaintiffs forward to him the promotional materials received in connection with their partnership interests. (Compl. ¶ 71.)

Plaintiffs thereafter contacted Paul Howard, controller for Bistate, to discuss the fact that the investment partnerships were under audit. Howard sought to "assure [Plaintiffs] that the audits were routine and would not lead to any problems." (Compl. ¶ 72.) According to the Complaint, however, when Plaintiffs told him of the IRS' request for promotional materials, his "demeanor changed." (Compl. ¶ 72-73.) Howard purportedly advised Plaintiffs that they should consider not complying with the IRS' request for promotional materials, but in the event that they did, the "first five pages" of the Investment Proposals should be removed because "the IRS is going to see something they [sic] don't like." (Compl. ¶ 73.)

Plaintiffs allege that, in March of 2007, they received notices from the managing partners of their investment partnerships notifying them of auditing activity. (Compl. ¶ 75.) These letters also advised that the IRS had "proposed" to disallow a large percentage of IDC deductions "taken by a partner in a similar partnership structure" to that employed by Plaintiffs' investment

6

partnerships.  (Compl. ¶ 76.)

Plaintiffs assert that this state of affairs was alarming, because they appeared to be facing "significant accuracy-related penalt[ies]" in connection with their tax returns.  (Compl. ¶ 81.)

### E.    The Purported Securities Fraud[5]

Plaintiffs state that the government audit related to their IDC deductions may conclude that some portion of the wells exploited by the investment partnerships were drilled prior to their investments.  (Compl. ¶¶ 89-90, 99-101, 107-108.)   Accordingly, Plaintiffs complain that some portion of the IDC deductions they have sought may be disallowed, and as a result, they may be the victims of a fraud.[6]  (Compl. ¶¶ 15, 17, 21; *see also* Compl. ¶¶  57, 65, 83, 90, 102.)

## ARGUMENT

"When deciding a motion to dismiss under Rule 12(b)(6), [the court] must accept as true all well-pleaded factual allegations of the complaint and draw all inferences in favor of the pleader." *Gamble v. City of New York*, No. 2007 WL 2847221, at *2 (S.D.N.Y. Sept. 28, 2007). In order to avoid dismissal, a plaintiff must do more than plead mere '[c]onclusory allegations or legal conclusions masquerading as factual conclusions.'" *Id.* (citing *Gebhardt v. Allspect, Inc.*, 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000) (quoting 2 James Wm. Moore, Moore's Federal Practice ¶ 12.34[a] [b] (3d ed.1997)).  Instead, a complaint must set forth factual allegations sufficient to identify some basis for the relief sought that rises above "the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).

---

[5]    The Complaint alleges other acts of purported misconduct, but these relate to Plaintiffs' state law claims as opposed to the alleged securities fraud. *See, e.g., Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 99 (2d Cir. 2001) (While "[p]ost-stock-purchase corporate mismanagement or breach of fiduciary duty may be just as reprehensible as a misleading statement regarding the value of a security to be sold," "the former is not proscribed by § 10(b), while the latter is actionable."); *Arduini/Messina P'ship v. Nat'l Med. Fin. Serv. Corp.*, 74 F.Supp.2d 352, 362 (S.D.N.Y. 1999) (allegations of corporate mismanagement and breach of fiduciary duties cannot provide the basis for a securities fraud claim) (collecting cases).

[6]    While the Complaint suggests that promises regarding the return Plaintiffs are to receive were also false, (*see, e.g.,* Compl. ¶ 21), nowhere does the pleading suggest the expected returns went unachieved.

For the reasons set forth below, Plaintiffs' Section 10(b) claim does not satisfy this standard and should be dismissed. Plaintiffs' state law claims should likewise be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because, in the absence of an actionable federal securities violation, there is no basis for the Court's exercise of subject matter jurisdiction over those causes of action.

## I.    PLAINTIFFS' SECTION 10(B) CLAIM SHOULD BE DISMISSED.

The pleading standard set forth by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") is exacting. A plaintiff seeking relief under Section 10(b) must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1); *see also In re Credit Acceptance Corp. Sec. Litig.*, 50 F. Supp. 2d 662, 671 (E.D. Mich. 1999) (noting that, to properly allege fraud, a plaintiff need identify: "(1) the parties and the participants in the alleged fraud; (2) the time, place, and content of the representations; (3) each statement alleged to have been misleading; (4) the reason or reasons why the statement is misleading; (5) if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which the belief is formed; (6) the fraudulent scheme; (7) the fraudulent intent of the defendants; (8) reliance on the fraud; and (9) the injury resulting from the fraud.") (citation and quotation marked omitted); *see also Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 172 (2d Cir. 2005).

A complaint alleging securities fraud also must satisfy the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure, which provides that the circumstances constituting fraud must be stated with particularity. *See* Fed. R. Civ. P. 9(b). To satisfy Rule

9(b), a plaintiff must plead facts from which the Court may reasonably infer fraud as to each defendant. *See, e.g., Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 115 (2d Cir. 1982) (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 192 (1976).

### A.    Plaintiffs' Section 10(b) Claim is Barred By The Statute of Limitations.[7]

The statute of limitations for a Section 10(b) claim expires at the earlier of two years "after the discovery of the facts constituting the violation." 28 U.S.C. § 1658(b).[8] The period commences after a plaintiff obtains:  (i) actual knowledge of the facts giving rise to the action; or (ii) notice of facts, which in the exercise of reasonable diligence, would have led to actual knowledge. *In re AOL Time Warner Inc. Sec. Litig.*, 381 F. Supp. 2d 192, 209 (S.D.N.Y. 2004) (quoting *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1042 (2d Cir.1992)).  The latter of these is commonly referred to as "inquiry notice." *Id.*

At its core, Plaintiffs' securities claim rests on the notion that they were induced to participate in the investment partnerships by assurances as to the propriety of deductions arising, in part, from drilling cost obligations associated with the Turnkey and Subscription Notes. (*See, e.g.,* Compl. ¶¶ 21, 50-51, 53(j).)  The Complaint implies that such assurances were false because certain of their IDC deductions are presently subject to IRS audits, (*see* Compl. ¶ 83), which may, in turn, result in the disallowance or all or part of such deductions. (Compl. ¶¶ 89-90, 99-101, 107-108.)  To the extent the foregoing theory may be said to properly allege a fraud in the first place, Plaintiffs' Section 10(b) claim is time-barred.

---

[7]    The Moving Defendants do not concede that Plaintiffs' partnership investments constitute securities. *See, e.g., SEC v. Howey Co.*, 328 U.S. 293 (1946).  Instead, they do not reach the issue because, even assuming this characterization is accurate, the Complaint fails to adequately plead a securities fraud.

[8]    The Exchange Act likewise provides for a statute of repose allowing for a claim five years "after [a securities fraud] violation."  28 U.S.C. § 1658(b)

Assuming, solely for the purposes of this motion, that the allegations of the Complaint are true, Plaintiffs were on inquiry notice of the fraud now alleged over six years ago.  Plaintiffs knew that a portion of the IDC deductions at issue were to be obtained from drilling costs supported by promissory notes.  (*See* Compl. ¶ 53(j).)  Plaintiffs' claim that, however, that they were told by Defendant Josephson that such promissory notes would never be exercised, and that, in fact, Plaintiffs would "never see" them. (Compl. ¶ 62.)  Further, in January 2002, Plaintiffs spoke with Siegal about the "propriety" of the deductions that could be obtained by their contributions to the investment partnerships. (Compl. ¶ 51.)  Siegal advised Plaintiffs that that similar partnership structures had, in fact, been subject to IRS scrutiny.  *Id.*

To the extent that the Complaint set forth an actionable fraud – which it does not – Plaintiffs were aware of facts sufficient to trigger inquiry notice of the scheme alleged. *See Hernandez v. Childers*, 736 F. Supp. 903, 908 (N.D. Ill. 1990) (noting that when a plaintiff obtains notice of facts that would arouse "suspicion or curiosity" a duty to investigate shall be imputed to it).  Plaintiffs never investigated the basis for auditing activity directed at investment partnerships similar to those in which they participated.  This is despite the fact that they were told that promissory notes that were to form a basis for their deduction would not be exercised and that they may never see them.  Constructive knowledge of the alleged fraud -- which is comprised only of facts which lead Plaintiffs to speculate that the government may disallow some portion of the IDC deductions sought -- is properly attributed to Plaintiffs. *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir. 1983) (where plaintiffs "shut[ ] [their] eyes to the facts which [should have called] for investigation, knowledge of [the alleged] fraud [discovered should be] imputed to [them].")  A two year statute of limitation is applicable to Plaintiffs' Section 10(b) claim, *see* 28 U.S.C. § 1658(b), which expired no later than January, 2004.

10

**B.    The Complaint Fails To Allege Misrepresentation Undertaken In Connection With A Purchase of Securities.**

Even if it is not time-barred, Plaintiffs' Section 10(b) claim fails because the Complaint

does not allege fraudulent activity "in connection with" the purchase or sale of securities. *SEC v.*

*Zandford*, 535 U.S. 813, 822 (2002). In order to fall within the purview of the Exchange Act, the

fraud in question must be "integral" to the transaction at issue. *Pross v. Katz*, 784 F.2d 455, 459

(2d Cir. 1986), quoted in *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25, 37

(2d Cir. 2005), *rev'd on other grounds*, 126 S.Ct. 1503, (2006). Fraudulent acts that are merely

incidental or tangentially related to the sale of securities does not meet Section 10(b)'s "in

connection with" requirement. *Ling v. Deutsche Bank, AG*, No. 04 Civ. 4566(HB), 2005 WL

1244689, at *6, 2005 U.S. Dist. LEXIS 9998, at *14 (S.D.N.Y. May 26, 2005). Upon

considering whether this standard is met, courts consider the temporal relationship existing

between a purported fraud and the security purchase or sale -- that is, courts evaluate whether

these two "coincide." *See SEC*, 535 U.S. at 822.

The Complaint does not identify any fraudulent act undertaken by either Siegal or

Howard "in connection with" Plaintiffs' purchase of a security. To the contrary, the only

representation that coincides with their contributions is Siegal's statement that the structure of

the investment partnership had been subject to scrutiny by taxing authorities but that they had not

lost an audit. (Compl. ¶ 51.)[9] The veracity of this statement, which also undermines the notion

that Siegal engaged in a material omission regarding the prospect for an audit, is not challenged

anywhere by the Complaint. It thus falls outside the purview of the Exchange Act, and does not

provide any basis for Plaintiffs' fraud claim. *See Liberty Nat'l Ins. Holding Co. v. Charter Co.*,

---

[9]    The Complaint further states Seigal told Plaintiffs that the government allows for tax deductions related to IDCs because of its interests in fostering domestic oil and gas exploration. (Compl. ¶ 51.) It appears this alleged statement is unrelated to Plaintiffs' securities claim; in any event, it likewise is not said to be untrue.

11

734 F.2d 545, 555 (11th Cir. 1984) (observing that the "in connection with" element requires a linked deception and purchase or sale of a security).

**C.    The Complaint Fails to Adequately Plead Proximate Cause.**

It is axiomatic that, in order to state a claim under Section 10(b), a plaintiff is required to allege both transaction and loss causation. *See In re CMS Energy Sec. Litig.*, 403 F. Supp. 2d 625, 628 (E.D. Mich. 2005); *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 172 (2d Cir. 2005). Transaction causation has been likened to reliance; a plaintiff must plead that, but for the allegedly fraudulent misrepresentations and omissions, it would not have engaged in the transaction. *Id.*; s*ee also Emergent Capital Inv. Mgmt LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 196-97 (2d Cir. 2003). Loss causation has been likened to proximate cause; a plaintiff must plead that the fraudulent acts at issue are the direct cause of its harm. *Id.* Proximate cause is properly alleged only where a purported misrepresentation relates to the reason or reasons for claimant's actual pecuniary loss. *Huddleston v. Herman & MacLean*, 640 F.2d 534, 549 (5th Cir. 1981).

The Complaint assumes Plaintiffs' IDC deduction may be disallowed upon the conclusion of the current audit, and that accordingly, Plaintiffs "face substantial [potential] monetary losses due to unanticipated tax payments, interests and penalties." (Compl. ¶ 15.) It does not set forth, however: (i) a factual basis to confirm their presumption that these deductions will, in fact, be refused; (ii) whether the deductions will be disallowed in their entirety or in some portion; or even (iii) a causal connection between the anticipated potential disallowance and the fraudulent acts supposedly undertaken by Siegal or Howard. The reason for this is straightforward -- Plaintiffs have yet to suffer any harm.

Plaintiffs' effort at causation-by-prediction is precisely what the pleading standards set forth by the PSLRA are designed to eliminate. The is no nexus whatsoever between Plaintiffs'

claim of fraud and an "actual loss [Plaintiffs] suffered." *Suez Equity*, 250 F.3d at 95; *see also In re Compuware Sec. Litig.*, 386 F. Supp. 2d 913, 918-19 (E.D. Mich. 2005) ("[P]laintiffs are required to plead . . . that [the] misrepresentations proximately caused its loss − not merely to state that there is proximate causation between the two . . . . Plaintiffs are charged with pleading the connection, listing what it is . . . ."). This is fatal to Plaintiffs' Section 10(b) claim. *Id.*; *Dresner v. Utility.com, Inc.*, 371 F. Supp. 2d 476, 501 (S.D.N.Y. 2005) (dismissing Section 10(b) claim as it pertained to a particular financing because the pleading "contain[ed] no indication as to what loss was occasioned by" it).

Notably, granting Plaintiffs leave to amend so that might try to cure this defect at a later date will be futile. Anticipated, or "hoped-for"−but-disallowed tax benefits reflect a failed expectation, not damages falling within the purview of the Exchange Act. *See Freschi v. Grand Coal Venture*, 767 F.2d 1041, 1051 (2d Cir. 1985), *vacated on other grounds*, 478 U.S. 1015 (1986) ("compensation for hoped-for tax savings would be an impermissible award of damages" under the Exchange Act); *Sharp v. Coopers & Lybrand*, 649 F.2d 175, 190-91 (3d Cir.1981), *cert. denied*, 455 U.S. 938 (1982). Section 28(a) of the Exchange Act states, in relevant, part:

> no person permitted to maintain a suit for damages under the provisions of this chapter shall recover . . . a total amount in excess of his actual damages on account of the [fraudulent] act complained of.

15 U.S.C. § 78bb(a) (1981). This language means that only actual damages, or out-of-pocket loss, is subject to the protection afforded by Section 10(b). *See Osofsky v. Zipf*, 645 F.2d 107, 111-12 (2d Cir. 1981).

It is only a "hoped for" tax benefit that forms the basis of Plaintiffs' Section 10(b) claim. Thus, even if they were to experience the harm that the Complaint now only anticipates, it will be one that cannot be redressed by the Exchange Act as a matter of law. *See Feldman v. Pioneer*

*Petroleum, Inc.*, 606 F. Supp. 916, 924 (W.D. Okla. 1985) ("Plaintiffs have failed to prove they have suffered actual loss even though the tax benefits promised in the Prospectus may not materialize.")

### D.   The Complaint Fails to Plead Scienter.

Finally, Plaintiffs' Section 10(b) claim must be dismissed because the Complaint fails to properly allege that either Defendant Siegal or Howard possessed the requisite scienter to commit fraud. A pleading involving the Exchange Act must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" to commit a securities fraud violation. 15 U.S.C. § 78u-4(b)(2); *see also Shields*, 25 F.3d at 1128. This scienter element to a Section 10(b) claim may be established in either of two ways: "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 267 (2d Cir. 1996) (citation omitted).

Motive and opportunity are established by setting forth a "concrete benefit" that defendant could have "realized by one or more of the [allegedly] false statements identified in the Complaint." *Montoya v. Mamma.com, Inc.*, 2006 WL 770573, at *5 (S.D.N.Y. 2006) (citation omitted); *see also Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1130 (2d Cir. 1994) (noting that plaintiff need allege more than the fact that defendant sought to further his own economic interest to allege motive for fraud). Recklessness "is, at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *In re Carter-Wallace, Inc. Sec. Litig.*, 220 F.3d 36, 39 (2d Cir. 2000) citing *Rolf v. Blyth, Eastman Dillon & Co.,* 570 F.2d 38, 47 (2d Cir. 1978)) (internal quotations omitted).

14

Notably, while a claimant could potentially engage in group pleading relative to the fraudulent representations forming the basis of its pleading, a strong inference of scienter must be alleged separately as to *each defendant*. *In re Merrill Lynch & Co. Research Reports Secs. Litig.*, 272 F. Supp. 2d 243, 262 (S.D.N.Y. 2003) ("[T]o establish scienter in misrepresentation cases, facts must be alleged which particularize how and why *each defendant* actually knew, or was reckless in not knowing, that the statements were false at the time made . . . .") (alteration and emphasis in original). That is, there is no such thing as a group pleading of scienter. *In re AFC Enters., Inc. Sec. Litig.*, 348 F. Supp. 2d 1363, 1371 (N.D. Ga. 2004) ("It is important to note that the group pleading doctrine allows attribution of statements to individual defendants; it has no application to the determination of scienter as to individual defendants.").

### 1. The Complaint Fails to Allege that Siegal or Howard Had The Opportunity or the Motive to Commit Securities Fraud.

The Complaint fails to identify a "concrete benefit" to be realized by Siegal or Howard reflecting a motive to commit fraud. *Montoya*, 2006 WL 770573, at *5 (citation omitted). This cannot be accomplished by a generalized assertion of economic interest in those Palace Parties contracting with Plaintiffs. *Id.; see also Shields*, 25 F.3d at 1130 (noting that more than an allegation that defendant acted in its economic self interest is necessary to allege motive to commit securities fraud). That Howard and Siegal may be salaried by or maintain share ownership in such entities is the type of motive that could be attributed to nearly every executive director or senior management officer the world over – and alone does not suggest motive for fraud. *Id.; see also Acito v. Imcera Group, Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) (executive compensation dependent on stock value could not, standing alone, suffice to show motive to defraud the public); *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001) ("[m]otives that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs

15

must assert a concrete and personal benefit to the individual defendants resulting from the fraud"); *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.,* 75 F.3d 801, 814 (2d Cir. 1996) (noting that if a generalized desire to maintain a high bond or credit rating qualifies as a sufficient motive for fraud, "virtually every company in United States that experiences a downturn in stock price could be forced to defend securities fraud actions.") (internal quotations omitted); *Melder v. Morris,* 27 F.3d 1097, 1102 (5th Cir. 1994) (holding that allegations of desire to have successful IPO were insufficient to establish motive).

### 2.    The Complaint Fails to Allege that Siegal or Howard Acted Recklessly.

Because Plaintiffs fail to allege that Defendants possessed a motive to commit a fraud, the Complaint must set forth particularized facts reflecting "strong circumstantial evidence [that any material misrepresentation or omission resulted from] conscious misbehavior or recklessness." *Acito,* 47 F.3d at 52 (citation omitted).  When alleging conscious misbehavior or recklessness on the part of a securities defendant, "the strength of [Plaintiffs'] circumstantial allegations must be correspondingly greater" than those that would be sufficient to establish motive. *Beck v. Mfrs. Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir. 1987); *Kalnit,* 264 F.3d at 142 ("Where motive is not apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater.") (internal quotations omitted).  The Complaint must allege particularized facts from which a strong inference can be drawn that Defendants had "a state of mind approximating actual intent, and not merely a heightened form of negligence." *Fadem v. Ford Motor Co.,* 352 F. Supp. 2d 501, 517 (S.D.N.Y. 2005) (internal quotation marks and citation omitted).

The Complaint does not allege facts and circumstances reflecting that Howard or Siegal

16

knowingly or recklessly obscured the risks related to Plaintiffs' investments. To the contrary, Siegal specifically advised Plaintiffs that investment partnership structures similar to those in which they agreed to engage had been subject to government scrutiny. (Compl. ¶ 51.) Although Siegal added that none of these partnerships had lost an audit, this point is not alleged to be false. *Id.* Nor do Plaintiffs allege a "red flag" suggesting that Howard or Siegal turned a blind eye to the risk of a disallowed tax deduction. All that Plaintiffs do here is employ a "pleading technique [that] couple[s] a factual statement with a conclusory allegation of fraudulent intent" -- which is insufficient to "support the inference that the defendants acted recklessly." *Shields*, 25 F.3d at 1129.

Howard's alleged statement to Plaintiffs, in 2006, that the IRS would "not like" aspects of the Investment Proposals, does not change this result. (Compl. ¶ 73.) The PSLRA's requirements could not be clearer: Plaintiffs are required to allege facts evidencing scienter as to *each* defendant who purportedly undertook a false statement or a material omission *at the time of the securities transaction at issue. GSGSB, Inc., v. New York Yankees,* 862 F. Supp.1160,1177 (S.D.N.Y. 1994) (plaintiff is required to show that defendant "knew that [its] representations were false when made" ); *Liberty Nat'l Ins. Holding Co.*, 734 F.2d at 555 (Section 10(b) claim requires a causal relationship between the claimed deception and a subsequent purchase or sale). Howard himself is not alleged anywhere in the Complaint to have played a role in Plaintiffs' decision to acquire the securities at issue. Further, his comment (in any event made years after Plaintiffs' investments), is not probative of the state of mind of any other Section 10(b) Defendant. *In re Merrill Lynch & Co. Research Reports Secs. Litig.*, 272 F. Supp. 2d 243, 262 (S.D.N.Y. 2003) ("[T]o establish scienter in misrepresentation cases, facts must be alleged which particularize how and why *each defendant* actually knew, or was reckless in not knowing, that

the statements were false at the time made . . . .") (alteration and emphasis in original).

Plaintiffs' allegation as to Howard's statement hyperbolic and not evidence of scienter.

## II.    THIS COURT SHOULD DISMISS PLAINTIFFS' REMAINING STATE LAW CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION.

Because Plaintiffs' Section 10(b) must fail, the Complaint is left with only Plaintiffs' state law claims against the Moving Defendants. As the Second Circuit has instructed, these "should be dismissed so that [the appropriate] state court[] can, if so called upon, decide for themselves whatever questions of state law this case may present." *See Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001); *see also Wentzka v. Gellman*, 991 F.2d 423, 425 (7th Cir. 1993) ("[W]here a federal claim drops out before trial, a district court should not retain the state claims absent extraordinary circumstances."). The Moving Defendants therefore request that these causes of action, set forth at Counts II-VI, be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

## CONCLUSION

Plaintiffs' claim is based on nothing more than a fear of potential loss related to audits that have yet to conclude. They identify no fraudulent act or any reason to infer fraudulent intent on the part of any Defendant. The Complaint falls woefully short of pleading a fraudulent scheme. For the reasons set forth above, the Moving Defendants respectfully request that the Court dismiss the Complaint in its entirety.

18

Dated: New York, New York
        January 25, 2008

Respectfully submitted,

ARKIN KAPLAN RICE LLP

By:    /s/ Stanley S. Arkin
       Stanley S. Arkin (SA 1373)
       Michelle A. Rice (MR 4254)
       Lisa C. Solbakken (LS 8910)
       Justin M. Sher (JS 8379)
590 Madison Ave., 35th Floor
New York, New York  10022
(212) 333-0200 (phone)
(212) 333-2350 (fax)