UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**FILED ELECTRONICALLY**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

IRA NATHEL AND SHELDON NATHEL,

        Plaintiffs,

      - against -

RICHARD SIEGAL, GEORGE COLEMAN,
HARVEY JOSEPHSON, ROBERT A.
TREVISANI, PAUL HOWARD, RICHARD S.
GURALNICK, SCHAIN LEIFER GURALNICK,
BISTATE OIL MANAGEMENT
CORPORATION, SS&T HOLDING CO., LLC,
PALACE EXPLORATION COMPANY, TAH
DRILLING CO., INC., TAQ DRILLING CO.,
INC., OIL AND GAS TITLE, HOLDING
CORPORATION, JOHN DOES 1-20; JOHN DOE
CORPORATIONS 1-20; JOHN DOE LLCs 1-20;
and JOHN DOE LLPs 1-20,

        Defendants.

07 CIV. 10956 (LBS) (HBP)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## MEMORANDUM OF LAW OF DEFENDANTS GEORGE COLEMAN AND ROBERT A. TREVISANI IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

STILLMAN, FRIEDMAN &
SHECHTMAN, P.C.
425 Park Avenue
New York, NY 10022
(212) 223-0200

*Attorneys for Defendants George Coleman
and Robert A. Trevisani*

# TABLE OF CONTENTS

**PAGE**

Table of Contents.................................................................i

Table of Authorities............................................................iii

Preliminary Statement ..........................................................1

STATEMENT OF THE CASE .........................................................3

    A.    Plaintiffs' Purchase of the Partnership Interests.......................3

    B.    Plaintiffs' Various Partnership Investments
          Over Several Years....................................................4

    C.    Plaintiffs' Concern That the Expected
          Partnership Tax Benefits Might Not Be Realized ........................5

    D.    Plaintiffs' Allegations Concerning Coleman and Trevisani.............6

    E.    Plaintiffs' Claims....................................................8

ARGUMENT ......................................................................8

POINT I:    PLAINTIFFS' SECTION 10(b) CLAIM IS
            NOT WELL-PLEADED .........................................................9

    A.    The Allegations Fail to Meet Rule 9(b) Particularity
          Requirements for Pleading Securities Fraud Against
          Coleman and Trevisani.................................................9

    B.    The Complaint Fails to Plead Securities
          Fraud Committed By Coleman and Trevisani.............................11

          1.    Securities Fraud Allegations Must Be
               Defendant-Specific ................................................11

          2.    Plaintiffs Fail to Allege the Elements of
               Securities Fraud Specific to Coleman or Trevisani...................13

    C.    The Complaint Fails to Set Forth Actionable "Injury"
           From the Alleged Fraud................................................15

**PAGE**

POINT II:    PLAINTIFFS' STATE-LAW CLAIMS
SHOULD BE DISMISSED......................................................................19

    A.    Absent Subject-Matter Jurisdiction, the Court
Should Not Adjudicate the Common-Law Claims...................................19

    B.    The State-Law Claims Are Not Well-Pleaded .........................................19

        1.    Fraud........................................................................................19

        2.    Negligent Misrepresentation and Breach
of Fiduciary Duty......................................................................19

        3.    Breach of Contract....................................................................22

        4.    Legal Malpractice .....................................................................24

CONCLUSION ......................................................................................................25

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*ATSI Commc'ns., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ...................................9,10

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007).........................................................8, 9, 23

*Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171 (2d Cir. 2001) .............................................20

*Cave v. East Meadow Union Free School Dist.*, 2008 WL 183632 (2d Cir. Jan. 23, 2008) .............................................................................................................................................19

*D.E. & J. Ltd. P'ship v. Conaway*, 284 F. Supp. 2d 719 (E.D. Mich. 2003), *aff'd on other grounds*, 133 F. App'x 994, 2005 WL 1386448 (6th Cir. June 10, 2005) ............................................................................................................................................12

*Dover Ltd. v. A.B. Watley, Inc.*, 423 F. Supp. 2d 303 (S.D.N.Y. 2006).......................................20

*Dujardin v. Liberty Media Corp.*, 359 F. Supp. 2d 337 (S.D.N.Y. 2005).....................................20

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005)..................................................16, 17

*Fairchild, Arabatzis & Smith, Inc. v. Prometco (Produce & Metals) Co.*, 470 F. Supp. 610 (S.D.N.Y. 1979)..............................................................................................16, 17

*Freschi v. Grand Coal Venture*, 767 F.2d 1041 (2d Cir. 1985), *vacated on other grounds*, 478 U.S. 1015 (1986)....................................................................................16, 17

*Friedman v. Golden Arrow Films, Inc.*, 442 F.2d 1099 (2d Cir. 1971) ........................................23

*Frota v. Prudential-Bache Sec., Inc.*, 639 F. Supp. 1186 (S.D.N.Y. 1986) ..................................21

*Goldstein v. Pataki*, 2008 WL 269100 (2d Cir. Feb. 1, 2008) ........................................................9

*In re Advanta Corp. Sec. Litig.*, 180 F.3d 525 (3d Cir. 1999).......................................................15

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192 (S.D.N.Y. 2004) ...........................................................................................................................12

*In re Cardinal Health Inc. Sec. Litig.*, 426 F. Supp. 2d 688 (S.D. Ohio 2006).............................15

*In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367 (S.D.N.Y. 2004).......................................15

*In re Health Mgmt. Inc. Sec. Litig.*, 970 F. Supp. 192 (E.D.N.Y. 1997).......................................15

*In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358 (E.D.N.Y. 2003) .......................................15

*In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194 (S.D.N.Y. 1999) ................................10

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243 (S.D.N.Y. 2003) ........................................................................................................12

*In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611 (S.D.N.Y. 2007) ...................10, 14, 15

*Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005) ........................................18

*Longo v. Butler Equities II, L.P.*, 278 A.D.2d 97, 718 N.Y.S.2d 30 (1st Dep't 2000) ............................................................................................................................24

*Maalouf v. Salomon Smith Barney, Inc.*, 2003 WL 1858153 (S.D.N.Y. Apr. 10, 2003) ............................................................................................................................20

*Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655 (S.D.N.Y. 2007) ...................10, 11, 23

*Nanopierce Tech., Inc. v. Southridge Capital Mgmt. LLC*, 2003 WL 22052894 (S.D.N.Y. Sept. 2, 2003) ............................................................................................20

*OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 354 F. Supp. 2d 357 (S.D.N.Y. 2005)........20, 21, 22

*Pro Bono Invs., Inc. v. Gerry*, 2005 WL 2429787 (S.D.N.Y. Sept. 30, 2005)..............20

*Quintel Corp., N.V. v. Citibank, N.A.*, 589 F. Supp. 1235 (S.D.N.Y. 1984) ...........24, 25

*Reuben H. Donnelley Corp. v. Mark I Mkt. Corp.*, 893 F. Supp. 285 (S.D.N.Y. 1995) ............................................................................................................................22

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004).................................................20, 21

*Scone Invs., L.P. v. American Third Mkt. Corp.*, 1998 WL 205338 (S.D.N.Y. Apr. 28, 1998) ....................................................................................................................19

*Stark v. Goldberg*, 297 A.D.2d 203, 746 N.Y.S.2d 280 (1st Dep't 2002) ....................23

*Stone v. Kirk*, 8 F.3d 1079 (6th Cir. 1993) ..................................................................17

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 128 S. Ct. 761 (2008) ........13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2504 (2007)...........12, 13

*Walzer v. UAL Corp.*, 2008 WL 87944 (S.D.N.Y. Jan. 2, 2008) ..................................12

*Winer Family Trust v. Queen*, 503 F.3d 319 (3d Cir. 2007) .........................................14

*Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998) ...................................12, 13

iv

## Statutes

15 U.S.C. § 78u-4(b)(1)..........................................................................................11

15 U.S.C. § 78u-4(b)(2)..........................................................................................11

15 U.S.C. § 78u-4(b)(4)..........................................................................................17

15 U.S.C. § 78bb(a)................................................................................................16

N.Y. Gen. Bus. Law Art. 23-A, § 352.....................................................................20

Defendants George Coleman and Robert A. Trevisani respectfully submit this Memorandum of Law in support of their motion to dismiss Plaintiffs' First Amended Complaint ("the Complaint") pursuant to Rules 9(b) and 12(b)(1) & (6) of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b) ("the PSLRA"). This Memorandum addresses the Complaint's pleading failures on the claim under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), as well as the state-law claims, as against Coleman and Trevisani.[1]

## Preliminary Statement

Plaintiffs are investors in several partnerships in the oil and gas industry allegedly involving the Defendants. Plaintiffs contend that from 2001 to 2005, they were fraudulently induced to invest in the partnerships based on "promises" that the investments would lead to future tax benefits and particular financial returns. They assert now that those expectations will not be realized -- even though an actual determination on the tax benefits has not yet been made - - and thus want to morph those unrealized expectations into Section 10(b) securities fraud. Having invoked this Court's jurisdiction based on Section 10(b), Plaintiffs rely on the same factual allegations to assert a variety of common-law claims as well. For their would-be "injury" from these possibly unrealized expectations, Plaintiffs allege several million dollars in

---

[1] Coleman and Trevisani respectfully incorporate by reference pertinent arguments in the supporting Memoranda on the previously filed dismissal motions of co-Defendants Richard Siegal, *et al.* (Doc. No. 35; filed 1/25/08 ["Siegal Mem."]) and Richard S. Guralnick/Schain Leifer Guralnick (Doc. No. 31; filed 1/25/08 ["Guralnick Mem."]). In particular, Coleman and Trevisani join in co-Defendants' showing that the Complaint fails adequately to plead proximate cause, actual damages, and a misrepresentation in connection with the purchase of securities, as well as the showing on the statute-of-limitations bar, all of which apply equally to Coleman and Trevisani. As co-Defendants also note, whether Plaintiffs' partnership interests constitute "securities" for purposes of bringing this action is also an issue, but the Court need not address it now, because the Section 10(b) claim fails on so many other grounds.

damages against the thirteen named individual and entity Defendants. They sue Coleman and Trevisani for one reason -- because they were supposedly the partnerships' "managing partners."

Plaintiffs' Complaint is rife with pleading failures, particularly as to Coleman and Trevisani. To sustain securities fraud, the Complaint must plead fraud with particularity, and the elements of the claim -- such as the actual misstatements or omissions, the required culpable state of mind, and Plaintiffs' own reliance on the deception -- must be properly set forth as to Coleman and Trevisani specifically. Significantly, however, Plaintiffs fail to allege that Coleman or Trevisani ever made *any misrepresentations* to them, or that Coleman or Trevisani otherwise played *any role* in connection with Plaintiffs' making their investments. Plaintiffs' attempts to avoid this basic pleading deficiency by asserting that "the Defendants" did something improper, or by invoking Coleman and Trevisani's "managing partner" status, are inadequate as a matter of law. (Point I.A., B. below) Likewise, because Plaintiffs fail to allege that the IRS has denied them the hoped-for tax deductions, or that expected financial returns have not been achieved, they fail to meet their obligation to plead injury and damages. (Point I.C.)

Plaintiffs' mirror-image common-law claims similarly fail against Coleman and Trevisani. Of course, subject-matter jurisdiction does not exist once the Section 10(b) claim is dismissed, and the favored and typical result is dismissal of the common-law claims. In any event, these claims also are not well-pleaded, for multiple reasons. Several fail precisely for the same reasons that the Section 10(b) claim fails (fraud and other claims); some are preempted as a matter of law (negligent misrepresentation and breach of fiduciary duty); and others fail even to set forth basic pleading requirements (breach of contract and legal malpractice). (Point II)

Simply put, the Complaint alleges no particularized facts showing that Coleman or Trevisani engaged in fraudulent conduct with an intent to deceive in connection with

2

Plaintiffs' investments, sets forth no actual harm from Plaintiffs' having invested, and contains numerous other obvious pleading deficiencies. It should be dismissed.

## STATEMENT OF THE CASE

**A.    Plaintiffs' Purchase of the Partnership Interests**

According to their pleading, in November 2001, Plaintiffs' accountant, Defendant Josephson, suggested that they "invest in a Siegal partnership." (Compl. ¶ 47) "Investment Proposals," which were allegedly "prepared by [Defendant] Siegal," described Siegal as an attorney and accountant engaged in the oil and gas industry since the 1970's and offered participations in the partnerships he devised and promoted. (¶¶ 44-45)

Josephson supposedly told Plaintiffs' representative that by making an investment in a Siegal partnership, Plaintiffs would be entitled to take a substantial tax deduction for intangible drilling costs ("IDC"). (¶ 48) He also told them that "if" a sufficient number of wells struck oil or gas, a contingency which Josephson allegedly "guaranteed," Plaintiffs would also earn a return on the investment from operational revenues. (¶ 49) Josephson further assured Plaintiffs that he had put other clients "in similar Siegal partnerships for years" and that these clients had taken the IDC tax deductions "without any problems" and had received "substantial cash on cash profits" from the investments. (¶ 50)

Plaintiffs further allege that in January 2002, their representative contacted Siegal, who said that his partnerships "'had never lost an audit.'" (¶ 51) Siegal and Josephson also allegedly assured Plaintiffs that Congress had made tax deductions available on investment in oil and gas ventures to promote domestic energy development. (¶ 51) Plaintiffs assert (on information and belief) that Josephson had a financial interest in Siegal's companies and partnerships and was compensated for getting Plaintiffs to invest. (¶ 52)

3

Siegal allegedly, at some unspecified time, provided Plaintiffs with the Investment Proposal as the offering memorandum for making an investment. (¶ 53) The Investment Proposal made various promises and representations "of [allegedly] present fact." (¶ 53)

Investment in the partnerships, and their financing, involved various agreements and instruments among the investors, the partnerships and the development/operating entities. (¶¶ 56-61) The Complaint alleges that in inducing Plaintiffs to invest, Josephson and Siegal made other representations to them about the terms and obligations under the documents and about the future performance of the anticipated drilling ventures and the expected financial return. (¶¶ 62-64) The Complaint also alleges that "Defendants" did not adequately disclose the supposed requirement to register the partnerships as tax shelters and that the IRS, upon review, supposedly "would . . . disallow the IDC deductions." (¶ 65)

**B.    Plaintiffs' Various Partnership Investments Over Several Years**

Plaintiffs allege that they invested, "as limited partners," in "the Partnerships," relying on "Defendants' representations" and the representations in the Investment Proposal. (¶ 66) Despite having referred to only representations made in late 2001 and early 2002, the Complaint pleads that Plaintiffs invested in eight separate partnerships over a four-plus-year period, from August 2001 to December 2005. (¶¶ 66) Plaintiffs do not allege that *any* representations were made to them from July 2002 to late 2005, when they invested in six of the partnerships. Furthermore, Plaintiffs allege inducement to invest even though, inexplicably, their initial investment in August 2001 occurred *before* Josephson first suggested in November 2001 that they invest in a Siegal partnership. (*See* ¶¶ 47, 66)

The total amount Plaintiffs supposedly invested in the eight partnerships during these four-plus years was $1,700,000. (¶ 66)

4

C.   **Plaintiffs' Concern That the Expected**
     **Partnership Tax Benefits Might Not Be Realized**

      Plaintiffs allege that in November 2006, an IRS agent told their representative that the Siegal partnerships "were aggressive tax shelters" and that Plaintiffs "were facing trouble." (¶ 70)   Then, by a letter dated March 12, 2007, Coleman, as "tax matters partner," advised Plaintiffs that the IRS was auditing one of the investment partnerships (Condor Partnership) for tax year 2003.   (¶ 75)   Plaintiffs also received a similar letter from Trevisani, as "tax matters partner" for another partnership (Hurricane Partnership), advising that the IRS was auditing that partnership for tax year 2004.   (¶ 75)   Both letters said that these partnerships were "responding to IRS document requests" and were "cooperating fully with the audit."   (¶ 75)   The letters also stated that an IRS audit report for a similar partnership structure "proposed" to disallow a portion of IDC deductions and to impose an accuracy-related penalty.   (¶ 76)

      In July 2007, the New York State Department of Taxation informed one of the Plaintiffs that his tax returns "were to be reviewed" and that one of his partnership investments was "subject to audit."   (¶ 79)   As for the status of the IRS inquiry, Plaintiffs allege that (at an unspecified time) the IRS agent "deemed" that the partnerships did not own a working interest in any wells and "also indicated" that proceeds the partnerships received "may not" have been from revenues generated by the wells in which Plaintiffs had invested.   (¶ 80)

      Plaintiffs allege that after then obtaining documents relating to three of the partnerships, they determined that representations "made by Defendants verbally," as well as in the Investment Proposal and other materials, were false.   (¶ 83)   Plaintiffs similarly allege that material facts had been withheld from them, including "the propriety of deducting the IDC . . . from Plaintiffs' taxes."   (¶ 83)   They go on to allege misrepresentations related to the

documentation for three of the partnerships (Indian Village, ¶¶ 86-97; Condor, ¶¶ 98-105; and Hurricane, ¶¶ 106-110).

The Complaint does not set forth the conclusion of the IRS audits on the two partnerships supposedly being audited for two tax years. It also does not allege that the IRS had made inquiries or started audits concerning the other partnerships in which Plaintiffs invested from 2001 to 2005. Nor does it allege that the IRS (or the New York State Department of Taxation) has made any final determinations in respect of tax review for any of the Siegal partnerships in which Plaintiffs invested. Similarly, the Complaint does not allege the conclusion of any review or audit of Plaintiffs' own tax filings for the five years covering their investments. Thus, it does not plead that any tax deductions Plaintiffs claimed related to their investments in the Siegal partnerships have been disallowed; nor do Plaintiffs assert that they now owe back taxes or penalties due to tax authorities' determinations related to the investments.

**D.     Plaintiffs' Allegations Concerning Coleman and Trevisani**

Coleman and Trevisani are mentioned, either by name or title, in only 12 of the Complaint's 110 paragraphs of factual allegations. (¶¶ 9, 10, 29, 31, 39, 56 n. 4, 59, 60, 61, 75, 84 and 107) Specifically, Plaintiffs allege that:

- Coleman was the managing partner of seven of the partnerships and Trevisani of one (¶¶ 9, 56 n. 4, 107);

- the managing partners, per the partnership agreements, were granted all the power and authority to act for and manage the partnerships (so that Plaintiffs supposedly were only "de facto limited partners") (¶¶ 9, 59, 60);

- Coleman is a teacher who lives in New York State, and Trevisani an attorney who lives in Massachusetts, and thus they supposedly had "no professional background to qualify them to act" as the managing partners (¶¶ 29, 31, 84);

- Plaintiffs "placed their trust" in Coleman and Trevisani (and other Defendants) (¶ 10);

6

- various individual Defendants, including Coleman and Trevisani, committed tortious acts and breaches "described herein through [the] corporate Defendants" (¶ 39);

- the partnerships should be deemed "investment contracts" due to the expectation of profits derived from the efforts of Siegal, his entities, third parties and "the Managing Partners" (¶ 61); and

- on March 12, 2007, Coleman and Trevisani sent letters to Plaintiffs (as noted above) advising that the IRS was auditing two of the partnerships for two tax years (¶ 75).

This is the universe of the Complaint's factual allegations that relate to Coleman and Trevisani. There are no allegations that either Coleman or Trevisani played any role in causing Plaintiffs to invest in any of the partnerships. There are, thus, no allegations that either Coleman or Trevisani made any representations to Plaintiffs, or otherwise had any communication or contact with them, in connection with Plaintiffs' making any of the investments in issue. Nor do Plaintiffs allege that either Coleman or Trevisani prepared or reviewed the "Investment Proposal" that supposedly constituted an offering memorandum for the investments. Similarly, Plaintiffs do not allege that either Coleman or Trevisani prepared or reviewed any of the partnership-related agreements or instruments concerning the financing or operation of the partnerships. Likewise, they do not allege that, aside from having the title of "managing partner," Coleman or Trevisani actually played a significant role in the partnerships' activities or operations during the period in issue. The Complaint does not allege that Coleman or Trevisani benefited financially from the circumstances of Plaintiffs' investments in the partnerships. It also does not allege that they are contractual parties individually to most of the agreements with Plaintiffs or that Trevisani, while alleged to be an attorney, provided any legal services to Plaintiffs.

**E.     Plaintiffs' Claims**

The Complaint pleads seven claims. As the basis for subject-matter jurisdiction, the Complaint alleges that Coleman and Trevisani, together with other Defendants, committed securities fraud in violation of Section 10(b) of the Exchange Act (First Claim). Plaintiffs allege that their partnership interests constitute "securities" under the Exchange Act and that they acquired these interests in reliance on Defendants' misrepresentations and omissions.

Based on the same underlying factual allegations, the Complaint asserts common-law claims against Coleman and Trevisani, as well as other Defendants, for fraud; fraudulent non-disclosure; negligent misrepresentation; and breach of fiduciary duty (Second, Third, Fourth and Fifth Claims, respectively). Plaintiffs also assert breach of contract against Coleman and Trevisani (as well as the Siegal companies), premised on supposed conduct (like the alleged misrepresentations and omissions) in breach of various agreements involving the Siegal partnerships (Sixth Claim). Finally, Plaintiffs assert professional malpractice against Trevisani (together with Defendant Guralnick and his firm) based on his allegedly providing legal services and advice regarding the partnerships (Seventh Claim).

On each of these seven claims, Plaintiffs allege -- without specification -- that "[a]s a direct and proximate result" of the alleged misconduct or wrongdoing, they sustained damages in excess of $3,400,000. (¶¶ 116, 122, 129, 134, 143, 148, 157)

## ARGUMENT

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007). *Twombly* emphasized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief,'" as the Rule 8(a)(2) standard for stating a claim, "requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65. Thus, even assuming the truth of a pleading's allegations, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965 (internal citation omitted). A pleading must set forth "a 'showing,' rather than a blanket assertion, of entitlement to relief," so that plaintiff provides both "'fair notice' of the nature of the claim" and the "'grounds' on which the claim rests." *Id.* at 1965 n. 3. In short, a plaintiff must move its claims "across the line from conceivable to plausible." *Id.* at 1974. *See Goldstein v. Pataki*, 2008 WL 269100, at *4 (2d Cir. Feb. 1, 2008) (quoting and applying *Twombly*); *ATSI Commc'ns., Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007) (relying on *Twombly* in securities fraud case).

   Plaintiffs' claims against Coleman and Trevisani do not meet these pleading requirements.

**POINT I**

**PLAINTIFFS' SECTION 10(b) CLAIM IS NOT WELL-PLEADED**

**A. The Allegations Fail to Meet Rule 9(b) Particularity Requirements
  for Pleading Securities Fraud Against Coleman and Trevisani**

   "[A] complaint alleging securities fraud must satisfy Rule 9(b), which requires that 'the circumstances constituting fraud . . . shall be stated with particularity.'" *ATSI,* 493 F.3d at 99 (citations omitted). That means that for securities fraud based on misstatements, the complaint must set forth the specific allegedly-fraudulent statements; identify the speaker; state the time and place the statements were made; and explain why the statements were fraudulent. *Id.* "Allegations that are conclusory or unsupported by factual assertions are insufficient." *Id.* The heightened pleading standard of Rule 9(b) "serves to provide a defendant with fair notice of

9

a plaintiff's claim, safeguard his reputation from improvident charges of wrongdoing, and protect him against strike suits." *Id.* (citing *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004)).[2]

Significantly, where securities fraud is alleged against multiple parties,

> [t]he pleading must . . . give notice to *each opposing party* of its alleged misconduct. Thus, a claim may not rely upon blanket references to acts or omissions by all of the defendants, for *each defendant named in the complaint* is entitled to be appraised of the circumstances surrounding the fraudulent conduct with which *he individually* stands charged.

*In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 213-14 (S.D.N.Y. 1999) (emphasis added). Thus, to satisfy Rule 9(b), particularized fraud allegations must be set forth specific *to each defendant*. *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 641 (S.D.N.Y. 2007) ("[W]hen fraud is alleged against multiple defendants, a plaintiff must set forth separately the acts complained of by each defendant. A complaint may not simply clump defendants together in vague allegations to meet the pleading requirements of Rule 9(b).") (quotation marks & citation omitted).

Here, Plaintiffs' Section 10(b) claim evaporates based on one glaring pleading failure: Plaintiffs do not allege that either Coleman or Trevisani made any misrepresentation to them upon which they relied for any purpose. Indeed, the Complaint fails to allege that Coleman or Trevisani played any role in getting Plaintiffs to invest, or even that either Coleman or Trevisani had a significant role in connection with the offering memorandum or any other partnership-related documents. Rather, the Complaint in broad language constantly refers to the

---

[2] The Rule 9(b) requirements for a claim involving omissions, which seems to be what Plaintiffs assert as "fraudulent non-disclosure" for their Third Claim, are substantially the same as for an affirmative misstatements claim. The plaintiff must specify "(1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud." *Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655, 664 (S.D.N.Y. 2007) (quotation marks & citation omitted).

misrepresentations or improper conduct of "Defendants" as an undifferentiated group (*e.g.*, ¶¶ 2-7, 15, 20, 64-66, 83, 84, 91, 94, 97, 102, 105, 110, 113), or occasionally of another particular Defendant (*e.g.*, ¶¶ 47-51, 62, 63) -- but the Complaint never offers allegations of misrepresentations or omissions specific to Coleman or Trevisani. Indeed, the only statements or conduct ever attributed to Coleman or Trevisani are their March 2007 letters informing Plaintiffs about the audits (¶¶ 75-76), which occurred long after Plaintiffs had invested and are not alleged to contain any misrepresentations.

In short, the Complaint fails under Rule 9(b) because it does not offer any particulars for asserting that Coleman or Trevisani committed securities fraud and, quite simply, provides them with no notice whatsoever about their allegedly improper conduct. *See Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655, 664 (S.D.N.Y. 2007) ("bare allegation" that "defendants" acted improperly "neither describes any specific statements, states when or where such statements were made, nor identifies which of the several defendants made the allegedly fraudulent statements. As such, it fails to meet the pleading standards of Rule 9(b).").

**B.    The Complaint Fails to Plead Securities Fraud Committed By Coleman and Trevisani**

Numerous elements for imposing Section 10(b) liability -- which also must be pleaded as to each defendant specifically -- are not well-pleaded as to Coleman and Trevisani.

**1.    Securities Fraud Allegations Must Be Defendant-Specific**

Under the PSLRA, a private plaintiff alleging securities fraud must meet heightened pleading requirements. Plaintiff's complaint must specify "each statement" alleged to have been misleading and the reason why that statement is misleading. 15 U.S.C. § 78u-4(b)(1). The complaint must also "state with particularity" facts that give rise to "a strong inference that the defendant acted with the required state of mind," *id.* § 78u-4(b)(2) -- the

11

familiar scienter standard of a defendant's intention to deceive, manipulate, or defraud. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2504 (2007) (PSLRA "requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter").

Significantly, "a defendant *must actually make* a false or misleading statement in order to be held liable under Section 10(b)." *Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998) (emphasis added). As a result, to state a Section 10(b) claim against a particular defendant, "a complaint must identify each allegedly false or misleading statement or omission made *by that defendant.*" *D.E. & J. Ltd. P'ship v. Conaway*, 284 F. Supp. 2d 719, 730 (E.D. Mich. 2003) (emphasis added), *aff'd on other grounds,* 133 F. App'x 994, 2005 WL 1386448 (6th Cir. June 10, 2005); *see Walzer v. UAL Corp.*, 2008 WL 87944, at *3 (S.D.N.Y. Jan. 2, 2008) (dismissing complaint under PSLRA because it did not "specify which individual defendant did what when").

Similarly, because asserting fraud is so serious, particularly as against individuals, "facts must be alleged which particularize how and why *each defendant"* had the required culpable state of mind. *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 262 (S.D.N.Y. 2003) (emphasis in original; citation omitted); *see also Conaway*, 284 F. Supp. 2d at 742 ("scienter must be pled separately as to *each* defendant") (emphasis in original); *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 220 (S.D.N.Y. 2004) ("the scienter inquiry with respect to the individual defendants will be assessed on a case-by-case basis").

In *Tellabs*, 127 S. Ct. 2499, the Supreme Court set forth the requirements for pleading a "strong inference" of scienter against a particular defendant. The Court explained that

12

to determine whether a pleading's scienter allegations can survive, the lower court must "engage in a comparative evaluation" that considers "not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged." *Id.* at 2504. This means that a court must consider "plausible nonculpable explanations for the defendant's conduct." *Id.* at 2510. The Supreme Court held that to meet the "strong inference" standard under the PSLRA, "an inference of scienter must be more than merely plausible or reasonable -- it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 2504-05. Significantly, "omissions and ambiguities count against inferring scienter." *Id.* at 2511.

Finally, in addition to the PSLRA pleading mandate, "[r]eliance by the plaintiff *upon the defendant's* deceptive acts is an essential element of the § 10(b) private cause of action." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 128 S. Ct. 761, 769 (2008) (emphasis added). Reliance on a particular defendant's conduct follows from the requirement that a "misrepresentation must be attributed to that specific actor," so that "[r]eliance only on representations made by others cannot itself form the basis of liability." *Wright*, 152 F.3d at 175 (citation omitted).

### 2. Plaintiffs Fail to Allege the Elements of Securities Fraud Specific to Coleman or Trevisani

As already noted, the Complaint does not set forth *any facts* connecting Coleman and Trevisani to Plaintiffs' purchase of their partnership interests. As such, Plaintiffs fail to allege that Coleman or Trevisani made a false or misleading statement (or were responsible for an omission), or that they did anything else on which Plaintiffs relied in acquiring the partnership interests.

Similarly, the Complaint fails entirely to plead that Coleman or Trevisani acted with scienter. Because Plaintiffs are unable to allege that Coleman or Trevisani said or did

13

anything that led Plaintiffs to invest, Plaintiffs obviously fail also to plead facts that show a strong inference that Coleman or Trevisani acted with a culpable state of mind. Simply put, Plaintiffs allege *no facts at all* that bear upon state of mind for Coleman and Trevisani.

Instead, the Complaint resorts to a broad allegation that "Defendants knew" about the supposed impropriety of the tax deductions. (¶¶ 17, 91, 102, 114)  But that kind of conclusory group reference -- without pleading anything as to Coleman or Trevisani specifically -- cannot possibly establish *their* knowledge or state of mind for sustaining a securities fraud claim against them. Indeed, as *Tellabs* instructs, Plaintiffs' omission in alleging scienter-related facts specific to Coleman and Trevisani, as well as the ambiguity in the allegation that all "Defendants" had culpable knowledge, weigh against inferring scienter for Coleman and Trevisani. Particularly telling is the Complaint's absence of any facts to suggest that Coleman or Trevisani had any motive (such as financial gain) to defraud Plaintiffs. Similarly, the March 2007 after-the-fact letters which Plaintiffs cite -- and which are not alleged to be untruthful -- suggest *nonculpable* conduct that also cuts against scienter.[3]

---

[3] Plaintiffs cannot circumvent this scienter failure with the "group pleading" doctrine.  That doctrine recognizes a presumption that statements in group-published corporate documents "are the collective work" of those who have "direct involvement in the everyday business of the company" -- but it "has no effect on the PSLRA's scienter requirement." *Refco,* 503 F. Supp. 2d at 641, 645 (quotation marks & citation omitted). And aside from scienter, group pleading could not even be used to attribute statements to Coleman or Trevisani. While sometimes still recognized, numerous courts have held that group pleading is no longer viable after enactment of the PSLRA. *See Winer Family Trust v. Queen,* 503 F.3d 319, 334-37 (3d Cir. 2007) (discussing cases). Indeed, *Winer* noted that "[t]he only courts of appeals to have directly addressed the survival of the group pleading doctrine post-PSLRA have abolished the doctrine." *Id.* at 336 (citing cases). Furthermore, even when group pleading was viable for statement attribution, the defendant's "direct involvement" in everyday business was "critical to support the presumption." *Refco,* 503 F. Supp. 2d at 641. Here, the only documentation conceivably related to Plaintiffs' securities fraud claim is the offering material provided to Plaintiffs early on, and there are no allegations suggesting that Coleman or Trevisani was involved with the partnerships' everyday business at that time, or with that documentation itself, sufficient for invoking group pleading. *See id.* at 642 (recognizing group pleading only where defendants "prepared and approved the

Plaintiffs' case against Coleman and Trevisani boils down to the allegation that they served as the partnerships' managing partners. (¶¶ 9, 56 n. 4, 107)  However, it is settled law that "[a defendant's] position as an officer alone . . . is insufficient to support an inference of scienter." *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 382 (S.D.N.Y. 2004) (citing case law).  As one court made the point succinctly:

> Fraudulent intent . . . cannot be inferred merely from the Individual Defendants' positions in the Company and alleged access to information. . . . The Plaintiff's Complaint itself must allege specific facts or circumstances reflecting the Individual Defendants' knowledge.

*In re Cardinal Health Inc. Sec. Litig.*, 426 F. Supp. 2d 688, 724 (S.D. Ohio 2006) (quotation marks & citation omitted).[4]

In sum, the Complaint offers no allegations of fact specific to Coleman or Trevisani to meet the stringent requirements for pleading securities fraud against them.

## C.    The Complaint Fails to Set Forth Actionable "Injury" From the Alleged Fraud

For a private action under Section 10(b), the plaintiff -- to show the requisite injury resulting from the fraud -- must establish both "economic loss" and "loss causation."

---

allegedly fraudulent documents" and had "direct involvement in the daily affairs of the company") (internal quotations omitted).  Nor are there well-pleaded factual allegations to show that Coleman or Trevisani were involved in the partnerships' everyday operational activities so as make them jointly liable for any other documents.  Finally, group pleading does not apply to oral statements, *id.* at 645, which is mainly what Plaintiffs allege here.

[4] *See also In re Advanta Corp. Sec. Litig.,* 180 F.3d 525, 539 (3d Cir. 1999) ("allegations that a securities-fraud defendant, because of his position within the company, 'must have known' a statement was false or misleading are 'precisely the types of inferences which [courts], on numerous occasions, have determined to be inadequate to withstand Rule 9(b) scrutiny'") (citations omitted); *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 387 (E.D.N.Y. 2003) ("[p]laintiffs' allegations that defendants must be charged with knowledge of activities at [their company's subsidiary] by virtue of their high-level positions" were insufficient for scienter); *In re Health Mgmt. Inc. Sec. Litig.*, 970 F. Supp. 192, 204-05 (E.D.N.Y. 1997) (dismissing claim against Board member who "was responsible for monitoring the overall management and direction of [the company] and was also privy to inside information"; "[defendant's] senior management position is insufficient to establish the requisite scienter").

15

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). Relatedly, Section 28(a) of the Exchange Act limits a plaintiff to recovering only "actual damages" sustained from the fraud. 15 U.S.C. § 78bb(a). Plaintiffs' Complaint fails to allege these injury requirements.

First, Plaintiffs fail to plead economic loss, because the asserted financial harm from making the investments has not -- as the Complaint itself pleads -- actually occurred. While Plaintiffs contend that the IRS might disallow IDC tax deductions taken on their personal tax returns, due to audits of some of the partnerships for certain tax years, the Complaint is clear that the IRS to-date has not made any disallowance determination. (¶¶ 70, 75, 76, 79, 80) Despite this fact, Plaintiffs nonetheless aver that "they now face[] substantial monetary losses due to unanticipated tax payments, interest and penalties." (¶ 15) This conclusion of "losses" is mere speculation on the face of the Complaint, and thus economic loss is not well-pleaded. *See, e.g., Dura*, 544 U.S. at 343 (reviewing § 10(b)'s common-law fraud roots which require "actual injury"); *Freschi v. Grand Coal Venture*, 767 F.2d 1041, 1051 (2d Cir. 1985), *vacated on other grounds*, 478 U.S. 1015 (1986) (securities-fraud plaintiff can only be compensated for actual damages).

*Fairchild, Arabatzis & Smith, Inc. v. Prometco (Produce & Metals) Co.*, 470 F. Supp. 610 (S.D.N.Y. 1979), illustrates the Complaint's deficiency. Plaintiffs there asserted fraud related to their options trading through defendant-brokers. In applying the same injury concept under common-law fraud as exists for Section 10(b) liability, the court noted that plaintiffs asserted merely that they faced potential monetary damages if a government agency brought a successful enforcement action against them and from other possible proceedings. *Id.* at 618. The court held that such a claim was legally insufficient:

> It is clear, therefore, that plaintiffs have not yet suffered any injury as a result of defendants' actions; they merely seek to recover damages for speculative injuries

16

not yet incurred.  Absent a showing of *present out-of-pocket loss*, plaintiffs' fraud claim must fail.

*Id.* (emphasis added).  Like the *Fairchild* plaintiffs, Plaintiffs here fail to show "present out-of-pocket loss" -- or even *any* actual loss or injury -- making their claim deficient as a matter of law.

Moreover, even if Plaintiffs' IDC tax deductions had been disallowed, the Section 10(b) claim would still not be actionable.  As co-Defendants show, under the "actual damages" limitation of Section 28(a), "compensation for hoped-for tax savings would be an impermissible award of damages arising from an expectation interest." *Freschi*, 767 F.2d at 1051; *see* Siegal Mem. at 13-14; Guralnick Mem. at 14.  Likewise, interest and penalties on an IRS determination, which Plaintiffs also assert, are not recoverable, being "simply compensation to IRS for the use of money IRS would have had if the [plaintiff] had not wrongly withheld it." *Freschi*, 767 F.2d at 1051.  In short, the "damages" Plaintiffs try to assert -- amounting only to an expected but then unrealized tax benefit, with consequent tax-related costs once that benefit did not materialize -- would not be compensable as a matter of law.[5]

Second, Plaintiffs fail to plead loss causation --"*i.e.*, a causal connection between the material misrepresentation and the loss." *Dura*, 544 U.S. at 342; *see also* 15 U.S.C. § 78u-4(b)(4) (PSLRA's "loss causation" requirement).  The Complaint's total lack of allegations that Coleman or Trevisani made any misrepresentation to Plaintiffs, together with the absence of any existing economic harm, necessarily means that "misrepresentations" by Coleman or Trevisani cannot have "caused" a loss to Plaintiffs.

---

[5] *See also Stone v. Kirk*, 8 F.3d 1079, 1093 (6th Cir. 1993) (plaintiff-investors "are not entitled to recover as damages the taxes they had to pay on their 1981 and 1982 income. They did not expect to have to pay such taxes, to be sure, but expectancy damages -- damages designed to give the plaintiff the benefit of his bargain -- are simply not recoverable under the federal securities laws.").

Not surprisingly, Plaintiffs offer a formulaic loss-causation and damages recitation: that "[a]s a direct and proximate result of the aforesaid misconduct," they sustained damages "in excess of $3,400,000" in connection with purchasing their partnership interests and "are therefore entitled to recover damages they have suffered" due to "Defendants' violations of the Exchange Act and Rule 10(b)-5." (¶ 116) This is boilerplate that fails to give any clue of how the subject of some (nonexistent) misrepresentation or omission by Coleman or Trevisani caused Plaintiffs to incur damages in the (unexplained) amount of $3.4m.-plus. *See* Siegal Mem. at 12-13; Guralnick Mem. at 8-9, 13, 19-20. Indeed, common sense says that misrepresentations that supposedly induced Plaintiffs to *make* the investments in 2001-2005 could not possibly have *caused* Plaintiffs harm from being denied tax deductions in later years -- which could only be "harm" resulting from the *IRS's decision itself*, not from the asserted conduct of any of the Defendants. Plaintiffs' approach does not come close to meeting the loss-causation pleading requirement.[6]

---

[6] Plaintiffs' failure to allege that they relied on misstatements or omissions from Coleman or Trevisani in acquiring their partnership interests, as noted above, also means that Plaintiffs fail to plead transaction causation. *See Lentell v. Merrill Lynch & Co.,* 396 F.3d 161, 172 (2d Cir. 2005) ("Transaction causation is akin to reliance," requiring allegation "that 'but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction.'") (citation omitted). Similarly, while the Complaint often alludes to Plaintiffs' expectation of receiving a "promised" financial return as would-be injury (¶¶ 2, 4, 21, 49, 53(b), (f), 64, 92), there are no well-pleaded factual allegations showing that over the several years in issue, the various partnerships failed overall to achieve the supposedly guaranteed returns. And like the potential after-the-fact loss of tax benefits, the "harm" of unrealized financial returns could only result from the partnerships' actual operations, not from Defendants having allegedly induced Plaintiffs into investing in the partnerships in the first place.

**POINT II**

**PLAINTIFFS' STATE-LAW CLAIMS SHOULD BE DISMISSED**

A.    **Absent Subject-Matter Jurisdiction, the Court**
      **Should Not Adjudicate the Common-Law Claims**

With the failure of the Section 10(b) claim, subject-matter jurisdiction does not exist. "'Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.'" *Cave v. East Meadow Union Free School Dist.*, 2008 WL 183632, at *8 (2d Cir. Jan. 23, 2008) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

B.    **The State-Law Claims Are Not Well-Pleaded**

1.    **Fraud**

Plaintiffs' Second Claim asserts fraud against Coleman, Trevisani and all other Defendants based on the same misrepresentations underlying the Section 10(b) claim. (¶¶ 118-122)  Similarly, the Third Claim, characterized as "fraudulent non-disclosure" (¶¶ 123-129), duplicates the "omissions" allegations underlying the Section 10(b) claim and is conceptually the same as the fraud claim. "[T]he elements of [New York] common law fraud are essentially the same as those which must be pleaded to establish a claim under § 10(b) and Rule 10b-5." *Scone Invs., L.P. v. American Third Mkt. Corp.*, 1998 WL 205338, at *10 (S.D.N.Y. Apr. 28, 1998). Thus, Plaintiffs' failure to plead a Section 10(b) claim, as set forth above, means that these fraud claims fail as well. Likewise, the fraud claims fail for lack of pleading particularity under Rule 9(b) for the same reasons that the Section 10(b) claim fails under that Rule.

2.    **Negligent Misrepresentation and Breach of Fiduciary Duty**

Plaintiffs' Fourth and Fifth Claims are for negligent misrepresentation (¶¶ 130-134) and breach of fiduciary duty (¶¶ 135-143) premised on the allegations that Defendants induced Plaintiffs through misrepresentation to purchase the partnership interests. These claims

19

are barred because New York's blue sky law, the Martin Act (N.Y. Gen. Bus. Law Art. 23-A, §

352, *et seq.*), preempts negligent misrepresentation and breach of fiduciary duty claims asserted

in connection with securities transactions. *Nanopierce Tech., Inc. v. Southridge Capital Mgmt.

LLC,* 2003 WL 22052894, at *1-4 (S.D.N.Y. Sept. 2, 2003) (Sand, J.). The Martin Act gives the

Attorney General broad enforcement authority for fraudulent securities transactions, and thus a

private right of action under the Martin Act is impermissible; as a consequence, "allowing

private litigants to press common law claims 'covered' by the Martin Act would upset the

Attorney General's exclusive enforcement power in exactly the same way that it would upset the

exclusive enforcement power to allow private claims pleaded under the Martin Act itself." *Id.*, at

*2 (discussing cases).[7]

   Aside from preemption, these claims are not pleaded properly. The Rule 9(b)

particularity requirement applies wherever a claim "sounds in fraud." *Rombach v. Chang,* 355

F.3d 164, 167, 171 (2d Cir. 2004) ("claims that . . . rely upon averments of fraud are subject to

the test of Rule 9(b)"). Rule 9(b) therefore is applied to claims for negligent misrepresentation

and breach of fiduciary duty. *See OSRecovery, Inc. v. One Groupe Int'l, Inc.,* 354 F. Supp. 2d

357, 380 (S.D.N.Y. 2005) ("plaintiffs' negligent misrepresentation claim sounds in fraud and

therefore is subject to Rule 9(b)"); *Maalouf v. Salomon Smith Barney, Inc.,* 2003 WL 1858153,

---

[7] *Accord, Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 190 (2d Cir. 2001) ("sustaining a cause of action for breach of fiduciary duty in the context of securities fraud would effectively permit a private action under the Martin Act, which would be inconsistent with the Attorney-General's exclusive enforcement powers thereunder") (quotations marks & citation omitted); *Pro Bono Invs., Inc. v. Gerry,* 2005 WL 2429787, at *16 (S.D.N.Y. Sept. 30, 2005) (dismissing both breach of fiduciary duty and negligent misrepresentation claims based on Martin Act preclusion); *Dujardin v. Liberty Media Corp.*, 359 F. Supp. 2d 337, 355 (S.D.N.Y. 2005) ("concur[ring] with the analysis set forth in *Castellano, Nanopierce,* and the other decisions finding negligent misrepresentation and breach of fiduciary duty claims preempted" due to Martin Act); *Dover Ltd. v. A.B. Watley, Inc.*, 423 F. Supp. 2d 303, 330 (S.D.N.Y. 2006) ("courts have dismissed state law claims covered by the Martin Act on the grounds that permitting them to proceed would be equivalent to permitting a private claim under the Act") (quotation marks & citation omitted).

at *4 (S.D.N.Y. Apr. 10, 2003) ("Negligent misrepresentation is a type of fraud and, as such, is subject to Rule 9(b)'s heightened pleading standard."); *Frota v. Prudential-Bache Sec., Inc.*, 639 F. Supp. 1186, 1193 (S.D.N.Y. 1986) (dismissing breach of fiduciary duty claim for failure to comply with Rule 9(b)).

Plaintiffs' negligent misrepresentation and breach of fiduciary duty claims are based on the same allegations of fraudulent inducement that underlie the Section 10(b) and fraud claims. For example (and while incorporating their prior allegations; *see* ¶ 130), Plaintiffs' negligent misrepresentation claim alleges that "Defendants made multiple misrepresentations of present material facts" to Plaintiffs, doing so "without any reasonable basis for believing they were true" and with "the intention of inducing Plaintiffs to rely on the misrepresentations." (¶¶ 131-132) Similarly, Plaintiffs allege breach of fiduciary duty based on Defendants supposedly "fraudulently . . . steering Plaintiffs" into the investments; "misrepresenting" the investments' tax deductibility; "failing to disclose" and "failing to inform" Plaintiffs about aspects of the investments; and "misrepresenting Partnership activities" -- all of which allegedly was "intentional and deliberate" conduct, done "with fraudulent, wanton or evil motive in conscious disregard" of Plaintiffs' rights. (¶¶ 141, 142)

The substance of both these claims plainly sounds in fraud. *See Rombach*, 355 F.3d at 172 (allegations that statements were "misleading," contained "*untrue* statements of material facts" and were "materially *false* and *misleading*" "are classically associated with fraud"); *OSRecovery*, 354 F. Supp. 2d at 379 (allegations of defendant's "failure to disclose . . . 'motivated by greed' and 'in conscious and reckless disregard'" of defendant's obligations to plaintiffs, and that defendant "'was conscious of its wrongdoing,'" constituted a claim that "sounds in fraud"). As such, these claims are subject to the pleading-with-particularity mandate

21

under Rule 9(b) -- and they both fail for lack of particularity with Plaintiffs' other fraud-based claims.[8]

### 3.    Breach of Contract

On the Sixth Claim, for breach of contract, the Complaint alleges that "Plaintiffs, individually and as partners in the Siegal partnerships," entered into six agreements (as supposedly described in earlier allegations). (¶ 145) It then alleges that Coleman and Trevisani (as well as the Siegal Companies) breached "their contractual obligations" under the agreements due to various management failures, such as failing to ensure performance of the agreements, failing to acquire working interests in wells, failing to establish adequate operational reserves for the partnerships, and the like. (¶ 147)

However, other than possibly the partnership agreements, nowhere does the Complaint allege a basic requirement for a breach of contract claim -- that Plaintiffs and Coleman or Trevisani were actually *contractual parties* to these agreements. *See Reuben H. Donnelley Corp. v. Mark I Mkt. Corp.*, 893 F. Supp. 285, 290 (S.D.N.Y. 1995) (breach of contract requires allegation of "the existence of an agreement between the plaintiff and defendant"). Indeed, the factual allegations in the Complaint frequently show otherwise -- that is, that several of the agreements in issue were between one of the partnerships itself and various entity-defendants.[9] Plaintiffs therefore have no standing to sue for breach, and Coleman and

---

[8] Plaintiffs also fail to allege a necessary element for negligent misrepresentation -- that "the declarant *must express the words directly*, with knowledge or notice that they will be acted upon, to one to whom the declarant is bound by some relation or duty of care." *OSRecovery*, 354 F. Supp. 2d at 378-79 (quoting *Dallas Aero., Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003)) (emphasis added). As noted, the Complaint fails to allege that either Coleman or Trevisani made any statements directly to Plaintiffs.

[9] *See* ¶ 53(g) (partnership "would contract with a specific drilling company"); ¶ 56(b) ("Prospect Agreement [was] between the Partnership, Palace, Oil and Gas and Bistate"); ¶ 56(c) ("Turnkey Drilling Contract [was] between the Partnership and the proposed drilling company"); ¶ 56(d)

Trevisani have no performance obligations that could give rise to their liability, on contracts to which none of them are parties.

Similarly, the Complaint fails to set forth specific contractual terms to the particular agreements and the conduct of Coleman or Trevisani that supposedly breached those terms. Instead, Plaintiffs take the amorphous approach of reciting six agreements and then asserting that Coleman and Trevisani breached unspecified obligations "under the agreements," based on mismanagement allegations. (¶¶ 145-147) These generalized allegations do not meet even the threshold Rule 8(a)(2) pleading requirements and the basic Rule 12(b)(6) plausibility standard -- that is, they fail to give sufficient information for Coleman and Trevisani to understand the "breach of contract" which Plaintiffs complain about against them. *See, e.g.,* *Malmsteen,* 477 F. Supp. 2d at 666 (breach of contract not well-pleaded where plaintiff "fail[ed] to attach the contract between the parties or otherwise specify any of its terms and the way in which [defendant] breached those terms. . . . [Rule 8(a)(2)] requires allegations of, at a minimum, the terms of the contract, each element of the alleged breach and the resultant damages.") (quotation marks & citation omitted). Like Plaintiffs' other claims, the breach of contract claim is not even "plausible on its face." *Twombly,* 127 S. Ct. at 1974.[10]

---

("Turnkey Note [was] issued by the Partnership to the drilling company"); ¶¶ 99, 107 (Turnkey Drilling Contract for two partnerships was with Defendant TAH). Additionally, while referring to "Additional Collateral Agreements" as contracts on which Plaintiffs sue (¶ 145), the Complaint contains no factual allegations whatsoever about these purported agreements.

[10] Moreover, the breach of contract claim is not cognizable even if construed as limited to the agreements for the partnerships. "[T]he general principle of partnership law [is] that partners cannot sue each other at law for a breach of a partnership agreement or with reference to partnership affairs before there has been a final accounting of the partnership assets." *Friedman v. Golden Arrow Films, Inc.,* 442 F.2d 1099, 1107 (2d Cir. 1971); *see also Stark v. Goldberg,* 297 A.D.2d 203, 204-05, 746 N.Y.S.2d 280, 281 (1st Dep't 2002) ("It is well established that an action at law may not be maintained by one partner against another for any claim arising out of the partnership until there has been a full accounting," unless the claim involves a partnership transaction that can be determined without examining all partnership accounts). Under the

4.    **Legal Malpractice**

On the Seventh Claim, for legal malpractice, the Complaint alleges that Trevisani (and various "John Doe" Defendants) "were retained to provide legal services and advice regarding the Partnerships' activities, structures and tax aspects." (¶ 154) However, while alleging that Trevisani is an attorney (¶ 31), there are no well-pleaded factual allegations that Trevisani acted as an attorney with respect to the matters in issue or that he provided legal services on these matters to anyone. All the Complaint offers is the statement that Trevisani and unnamed others provided erroneous advice and failed to disclose material facts "regarding the legal and tax aspects of the Partnerships, the partnership interests and the deductibility of IDC" (¶ 156) -- a pure conclusory allegation that lacks any notice of the would-be malpractice. Indeed, the allegation provides no facts about the specifics or substance of the legal advice; when it was allegedly given; to whom; how; or the purposes and terms of the legal retention and who the "client" might have been.

In any event, there are no factual allegations, nor even any basis for a reasonable inference, that Trevisani was an attorney *for Plaintiffs*, such that he owed *them* a legal duty, as opposed to the partnerships or another client. A lawyer representing an entity, like a partnership, generally owes a duty only to the partnership entity itself, not to the partners. *Quintel Corp.,*

---

circumstances alleged here, and particularly given Plaintiffs' general allegations of breach arising from supposed multi-faceted mismanagement of the partnerships, Plaintiffs do not state a cognizable at-law claim for breach of a partnership agreement. Indeed, Plaintiffs also lack standing, individually, to assert a claim premised on mismanagement under the partnership agreements, because that claim involves injury only to the partnership itself, rather than injury to Plaintiffs distinct from harm to the partnership. *See Longo v. Butler Equities II, L.P.,* 278 A.D.2d 97, 98, 718 N.Y.S.2d 30, 32 (1st Dep't 2000) (dismissing investor-partner's claims because they "are derivative in nature and . . . plaintiff therefore lacks standing to bring them"; harm alleged affected plaintiff "only insofar as his pro-rata [partnership] share was concerned, without any direct injury to plaintiff independent of the injury caused to the partnership") (citations omitted).

*N.V. v. Citibank, N.A.*, 589 F. Supp. 1235, 1240 (S.D.N.Y. 1984). So even if Trevisani had provided legal advice in some capacity, Plaintiffs allege no facts to establish that he was their lawyer. As such, Plaintiffs have no standing to sue him for legal malpractice.[11]

## CONCLUSION

Plaintiffs' claims fail for numerous pleading deficiencies and amount only to speculative grounds for relief, particularly as to Coleman and Trevisani. The Complaint should be dismissed against them. Dismissal should be with prejudice because Plaintiffs have already amended once and the critical pleading failures cannot be cured.

Dated: New York, New York
       February 27, 2008

                                STILLMAN, FRIEDMAN &
                                SHECHTMAN, P.C.


                                By:    s/Scott M. Himes
                                    Charles A. Stillman (CS-0154)
                                    Scott M. Himes (SH-7712)
                                    Daniel V. Shapiro (DS-7677)

                                425 Park Avenue
                                New York, NY 10022
                                (212) 223-0200

                                *Attorneys for Defendants George Coleman*
                                  *and Robert A. Trevisani*

---

[11] An attorney for a partnership might owe a duty to a partner in the very limited circumstance where the attorney affirmatively assumed such a duty, so that it would be "reasonably foreseeable" that the partner would rely on the attorney to act as his counsel and protect his interests. *See Quintel*, 589 F. Supp. at 1240-42. Plaintiffs' Complaint does not allege facts sufficient to invoke that very narrow exception to the limited scope of an attorney's duty.

25