UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x

IRA NATHEL and SHELDON NATHEL,

                                :    ECF Case
              Plaintiffs,

                                :    07-CIV-10956 (LBS) (HPB)
           - against -

                                :

RICHARD SIEGAL, GEORGE COLEMAN,
HARVEY JOSEPHSON, ROBERT A. TREVISANI, :
PAUL HOWARD, RICHARD S. GURALNICK,
SCHAIN LEIFER GURALNICK, BISTATE OIL      :
MANAGEMENT CORPORATION, SS&T
HOLDING CO., LLC, PALACE EXPLORATORY  :
COMPANY, TAH DRILLING CO., INC., TAQ
DRILLING CO., INC., OIL AN GAS TITLE       :
HOLDING CORPORATION, JOHN DOES 1-20,
JOHN DOE CORPORATIONS 1-20, JOHN DOE   :
LLCs 1-20, AND JOHN DOE LLPs 1-20,

                                :

            Defendants.
-------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT
## OF MOTION TO DISMISS CLAIMS
## <u>AGAINST DEFENDANT HARVEY JOSEPHSON</u>

**INGRAM YUZEK GAINEN CARROLL & BERTOLOTTI, LLP**
**250 Park Avenue**
**New York, New York 10177**
**(212) 907-9600**

**Attorneys for Defendant**
**Harvey Josephson**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ............................................................................................................ 3

**THE COMPLAINT SHOULD BE DISMISSED**
**BECAUSE IT DOES NOT ALLEGE FRAUD BY JOSEPHSON**
**WITH THE REQUIRED PARTICULARITY;**
**IT DOES NOT IDENTIFY A SINGLE FALSE STATEMENT**
**MADE BY JOSEPHSON TO PLAINTIFFS** ........................................................ 3

1.  **The Complaint Does Not Adequately Allege That Josephson**
    **Made Any False And Fraudulent Statements to Plaintiffs** ......................... 4

2.  **The Complaint Does Not Adequately Allege That**
    **Josephson Had *Scienter* To Defraud Plaintiffs** ....................................... 7

3.  **The Complaint Does Not Adequately Allege That**
    **Plaintiffs Justifiably Relied On Anything Josephson Said**
    **Or That Josephson's Alleged Statements Were Made**
    **In Connection With Plaintiffs' Purchase Of A Security** ........................... 7

4.  **The Complaint Suffers From Other Defects**
    **That Require That It Be Dismissed As To Josephson** ................................ 8

**CONCLUSION** ...................................................................................................... 9

i

# TABLE OF AUTHORITIES

Page

<u>**Cases**</u>

*ATSI Commc'ns, Inc. v. The Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)................................................................... 3, 7

*In re Crude Oil Commodity Litig.*,
    No. 06 Civ. 6677 (NRB), 2007 WL 1946553 (S.D.N.Y. Jun. 28, 2007).........................3

*In re Parmalat Sec. Litig.*,
    479 F. Supp. 2d 332 (S.D.N.Y. 2007)....................................................... 3, 4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    127 S. Ct. 2499 (2007)......................................................................3

<u>**Statutes**</u>

Fed. R. Civ. P. 9(b) ...........................................................................2, 7

Fed. R. Civ. P. 12(b)(1)........................................................................2

Fed. R. Civ. P. 12(b)(6)........................................................................1

Private Securities Litigation Reform Act of 1995 ...........................................2, 3, 4, 7

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

IRA NATHEL and SHELDON NATHEL,

                      Plaintiffs,

                - against -

RICHARD SIEGAL, GEORGE COLEMAN,
HARVEY JOSEPHSON, ROBERT A. TREVISANI,
PAUL HOWARD, RICHARD S. GURALNICK,
SCHAIN LEIFER GURALNICK, BISTATE OIL
MANAGEMENT CORPORATION, SS&T
HOLDING CO., LLC, PALACE EXPLORATORY
COMPANY, TAH DRILLING CO., INC., TAQ
DRILLING CO., INC., OIL AN GAS TITLE
HOLDING CORPORATION, JOHN DOES 1-20,
JOHN DOE CORPORATIONS 1-20, JOHN DOE
LLCs 1-20, AND JOHN DOE LLPs 1-20,

                      Defendants.

------------------------------------------------------------------ x

:    ECF Case

:

07-CIV-10956 (LBS) (HPB)

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS CLAIMS
## AGAINST DEFENDANT HARVEY JOSEPHSON

### PRELIMINARY STATEMENT

        Plaintiffs' first amended complaint dated December 13, 2007 ("complaint") purports to

allege five claims against defendant Harvey Josephson:  (1) violations of Rule 10b-5; (2) common

law fraud based on alleged misrepresentations; (3) common law fraud based on alleged non-

disclosures; (4) negligent misrepresentation; and (5) breach of an alleged fiduciary duty to

plaintiffs.  Josephson respectfully moves, under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, to dismiss the complaint against him, because it does not state any claim against

Josephson on which relief can be granted.  And, if plaintiffs' first claim against Josephson based

on Rule 10(b)-5 is dismissed, then the Court should dismiss the remaining claims, which are based on state law, for lack of subject matter jurisdiction under Rule 12(b)(1).

Two groups of defendants, the so-called "Siegal defendants" and "Guralnick" or "SLG" defendants, have already moved to dismiss the complaint to the extent it asserts claims against them. Josephson joins in and incorporates the other defendants' arguments where applicable to the claims against him, as set forth below. This memorandum sets out bases for dismissal that are particular to the allegations against Josephson, and why the case for dismissing the complaint against Josephson is particularly compelling.

*          *          *

Josephson's alleged involvement in the events of which plaintiffs complain was that of an accountant for plaintiffs from late 2000 through 2001 who "approached Plaintiff's corporate controller . . . with a proposal to invest in a Siegal partnership" (¶ 47).[1] Plaintiffs allege that Josephson made certain statements to recommend the investment and to explain how it was supposed to work (¶¶ 48-51, 62-63).

With respect to Josephson, the complaint suffers from a total, and fatal, failure to plead any of the elements of fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act ("PSLRA"). The complaint does not even allege that anything Josephson said to plaintiffs was misleading by omission or false. We explain below.

---

[1] References to paragraphs (¶) are to the complaint, annexed to the accompanying affidavit of Daniel L. Carroll, sworn to February 27, 2008.

## ARGUMENT

### THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT DOES NOT DOES NOT ALLEGE FRAUD BY JOSEPHSON WITH THE REQUIRED PARTICULARITY; IT DOES NOT IDENTIFY A SINGLE FALSE STATEMENT MADE BY JOSEPHSON TO PLAINTIFFS

The analysis begins with the familiar requirement that fraud be pleaded with particularity. This means that the allegations must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."[2]  That requirement is sometimes articulated as requiring the plaintiff to identify the "time, place, speaker, and content" of the allegedly fraudulent statements.[3]  Where, as here, "multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."[4]

In actions under the PSLRA, with its "heightened pleading instructions," a private securities plaintiff alleging that a defendant made a false or misleading statement must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading" . . . .[5]  Too, "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."[6]

---

[2]  *ATSI Commc'ns, Inc. v. The Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

[3]  *In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677 (NRB), 2007 WL 1946553, at *6 (S.D.N.Y. Jun. 28, 2007).

[4]  *In re Parmalat Sec. Litig.*, 479 F. Supp. 2d 332, 332 (S.D.N.Y. 2007).

[5]  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2508 (2007).

[6]  *ATSI Commc'ns,* 493 F.3d at 99.

The complaint does none of that for Josephson.

Of the 157 paragraphs in the complaint, only ten mention Josephson: paragraphs 28, 47 through 52, 62, 63, and 137. For the Court's convenience, they are reproduced in their entireties on the appendix to this memorandum.

Except for those references to Josephson, the complaint does not differentiate Josephson from other defendants. This type of "group pleading," to the extent that the Second Circuit recognizes it in actions under the PSLRA, is not available to plaintiffs for their allegations against Josephson. Group pleading allows a plaintiff to "circumvent the general pleading rule that fraudulent statements must be linked directly to the party accused of the fraudulent intent" by "rely[ing] on a presumption that statements in prospectuses, registration statements, annual reports, press releases, or group-published information, are the collective work of those individuals with direct involvement in the everyday business of the company."[7] "Alleging direct involvement in the company's everyday business is critical to support the presumption."[8] Fatally to plaintiffs, there is no such allegation here.

The inquiry is limited, therefore, to the allegations against Josephson specifically. They do not withstand examination under the tests outlined above. Each allegation suffers from multiple pleading deficiencies. Each of these deficiencies is fatal to plaintiffs' inclusion of Josephson in this lawsuit. Together, they defeat it overwhelmingly.

1.    **The Complaint Does Not Adequately Allege That Josephson Made Any False And Fraudulent Statements to Plaintiffs**

The complaint does not adequately identify *any* statements made by Josephson to plaintiffs. *First*, it omits one or more of the "time, place, speaker, and content" of every

---

[7] *Parmalat,* 479 F. Supp. 2d at 340.

[8] *Id.*

allegedly fraudulent statement.  This is important, because plaintiffs allege that they invested in eight partnerships over a four-year period, beginning on December 12, 2001 and ending on December 12, 2005 (¶ 66).  At the same time, the complaint alleges that Josephson was an accountant for plaintiffs only from late 2000 through 2001 (¶ 47).  The complaint does not have a single allegation that relates any alleged statement by Josephson to any particular investment made by plaintiffs.

*Second*, the complaint does not allege that any statement by Josephson was false.

The only paragraphs that clearly identify Josephson as the speaker are paragraphs 47 through 50.  Of those, the only one that even purports to identify the "time, place . . . and content" of a statement by Josephson to plaintiffs is paragraph 47; that paragraph alleges that Josephson, who had been retained as an accountant for plaintiffs the previous year, saw that "Plaintiffs' business was thriving," and, in November 2001, "approached Plaintiff's corporate controller, Richard Byllott, with a proposal to invest in a Siegal partnership."  Even if the Court were to assume (though the complaint does not so allege), that a "corporate controller" was an agent for these plaintiffs who have sued as individuals, the complaint certainly does not identify where that statement was made.  Just as surely, the complaint does not allege that Josephson said anything false or fraudulent in that "approach."

Paragraphs 48 and 49 likewise plead communications by Josephson to Byllott, in which, according to the complaint, Josephson explained to Byllott the basic structure of the so-called Siegal partnerships.  Paragraphs 48 and 49 omit not only the place or places where those statements were made, they also omit the times.  And again, the complaint does not allege that there was anything false about Josephson's explanation.

Paragraph 50 is the first paragraph to plead that Josephson said anything directly to plaintiffs, and one of the only two paragraphs in the complaint to clearly identify Josephson as the speaker to plaintiffs. (Paragraph 62 is the other.) Paragraph 50 alleges that Josephson told "Byllott and Plaintiffs" that other clients of his had invested in similar partnerships and had successfully taken IDC deductions and received cash profits. The complaint does not state when or where those statements were made. And, it does not allege that there was anything false or fraudulent about them.

Paragraph 51, to the extent it alleges any statement by Josephson, lumps him together with Siegal. It identifies them both as having told plaintiffs that Congress sought through tax deductions to encourage investment in the oil and gas industry to reduce dependence on foreign imports. It does not provide where they so stated, and its pleading of the time, "in or about January 2002," makes no sense; paragraph 51 refers to the investment as a "proposed investment" -- that is, one not yet made -- but the complaint identifies plaintiffs as having made their first investment in December 2001. In any event, there was nothing false about the statement, and plaintiffs do not plead that there was.

Paragraphs 62 and 63 are also fatally defective. Paragraph 62 identifies Josephson as the speaker of a single statement, that "none of the similar promissory notes financing Siegal's partnership structures had ever been exercised and that 'no one ever sees them.'" Neither paragraph 62 nor 63 otherwise identifies the speaker who allegedly told plaintiffs how the Siegal partnerships were intended to work; paragraphs 62 and 63 allege, respectively, that "Josephson and Siegal," and "Josephson and other yet to be identified defendants" provided those explanations. And, here again, the complaint does not plead when and where those statements

were made, and it does not allege that any of the statements attributed to Siegal, Josephson, and

unknown defendants were false, much less what was fraudulent about them.

The allegations against Josephson are deficient many times over under every applicable

test.  They neither approach the pleading standards of the PSLRA nor do they "provide

[Josephson] with fair notice of . . . plaintiff[s]' claim," a requirement of Rule 9(b) that "serves to

. . . safeguard [Josephson's] reputation from improvident charges of wrongdoing. . . ."[9]  These

defects require the dismissal of the complaint against Josephson on the pleadings.

2.     **The Complaint Does Not Adequately Allege That**
       **Josephson Had *Scienter* To Defraud Plaintiffs**

Josephson adopts and incorporates the arguments made by the SLG and Siegal

defendants about plaintiffs' failure to satisfy the legal requirements for pleading *scienter*.  We

add only that the complaint devotes a single paragraph -- paragraph 52 -- to alleging Josephson's

*scienter* to defraud plaintiffs.  Paragraph 52 pleads, "upon information and belief," that

Josephson "had a financial interest in the Siegal Companies and other Siegal Partnerships and

was compensated by Siegal and/or the Siegal Companies for securing Plaintiffs agreement to

invest in the Siegal Partnerships. . . ."  It does not provide a factual basis for plaintiffs' alleged

belief.  Under the authorities provided by the SLG and Siegal defendants, the allegation of

*scienter* is fatally deficient.

3.     **The Complaint Does Not Adequately Allege That**
       **Plaintiffs Justifiably Relied On Anything Josephson Said**
       **Or That Josephson's Alleged Statements Were Made**
       **In Connection With Plaintiffs' Purchase Of A Security**

Here too Josephson adopts and incorporates the arguments made by the SLG and Siegal

defendants.  Applied to Josephson, those arguments provide additional bases to dismiss the

---

[9]  *ATSI Commc'ns*, 493 F.3d at 99.

claims asserted against him.  As noted above, plaintiffs do not tie anything that they claim

Josephson said to any particular investment.  Moreover, paragraph 51 negates the alleged

connection between Josephson's alleged statements and plaintiffs' investments.  Paragraph 51

specifically pleads that Byllott, plaintiffs' "corporate controller," questioned Siegal about the

IRS's approval of the tax aspects of the investment structures, *"[i]n order to confirm*

*Josephson's assessment of the propriety of the tax deductibility of the proposed investment*

. . . ."[10]  This is another reason to dismiss the claims asserted against Josephson.


4.    **The Complaint Suffers From Other Defects**
      **That Require That It Be Dismissed As To Josephson**

The complaint suffers from other defects that require the dismissal of the claims it

purports to assert against Josephson.  These defects include that it is barred by the applicable

statutes of limitations, fails adequately to plead damages, and fails adequately to plead causation.

The motions filed by the SLG and Siegal defendants address these issues, and we adopt and

incorporate those defendants' arguments.

---

[10]  (Emphasis supplied.)

## **CONCLUSION**

For the reasons stated, it is respectfully requested that the Court grant this motion in all

respects, and dismiss all of the claims that the complaint purports to assert against Josephson.

Dated: New York, New York
       February 27, 2008

**INGRAM YUZEK GAINEN CARROLL**
**& BERTOLOTTI, LLP**


By
       Daniel L. Carroll (DC-5553)
       Susan B. Ratner (SR-1446)
   250 Park Avenue, 6th Floor
   New York, NY  10177
   (212) 907-9600

   Attorneys for Defendant
    Harvey Josephson

APPENDIX

## APPENDIX

28.    Individual Defendant Josephson is a certified public accountant residing in the State of New York.

*          *          *

47.    In or about the end of 2000, Plaintiffs retained Harvey Josephson, a certified public accountant, to provide professional accounting services including assistance with tax reporting.  In or about November 2001, after providing Plaintiffs with professional accounting services for about a year and seeing that Plaintiffs' business was thriving, Josephson approached Plaintiff's corporate controller, Richard Byllott ("Byllott"), with a proposal to invest in a Siegal partnership.

48.    Josephson told Byllott that, instead of making four quarterly estimated tax payments, Plaintiffs could make only three and invest the fourth payment, together with an executed promissory note, in a Siegal partnership which would use the money and Notes to pay a related entity, namely Defendants SS&T, TAQ or TAH for a turnkey oil and gas drilling contract.  Plaintiffs could then take a tax deduction or [sic] an amount equal to the combined amount of cash and promissory notes on IDC and the purported tax savings would equal or exceed the cash investments.

49.    If a sufficient number of the drilled wells struck oil or gas, as was guaranteed according to Josephson, Plaintiffs would have the added benefit of earning a  return on their investment from revenues generated from the sale of the oil and gas.

50.     Josephson assured Byllott and Plaintiffs that he had been putting his clients in similar Siegal partnerships for years and that his clients had taken the IDC tax deductions without any problems with the Internal Revenue Service ("IRS") or any other taxing authorities. He informed Byllott and Plaintiffs that his clients had also received substantial cash on cash profits from their investments as oil and gas had been found in abundance.

51.     In order to confirm Josephson's assessment of the propriety of the tax deductibility of the proposed investment, in or about January 2002 Byllott spoke to Siegal by telephone and asked if the IRS had approved the tax aspects of the investment structures. Siegal informed Byllott that his partnerships "had never lost an audit".   At or about the same time, Siegal and Josephson also assured Plaintiffs that Congress had made the tax deductions available to encourage investment in the oil and gas industry because the United States government was anxious to promote oil and gas exploration internally to reduce the country's dependency on foreign imports.

52.     Upon information and belief, Josephson had a financial interest in the Siegal Companies and other Siegal Partnerships and was compensated by Siegal and/or the Siegal Companies for securing Plaintiffs agreement to invest in the Siegal Partnerships and hand over money to Siegal and/or the Siegal Companies

*          *          *

62.     As part of the inducement to enter into the Partnerships, Josephson and Siegal represented to Plaintiffs that, as a practical matter due to the economics of the transaction, Plaintiffs would not be required to pay the 8% interest on the Subscription Note after the first year.  All future payments due would be paid from cash flow from revenue generated by the sale of gas and oil from successfully drilled wells which, in turn, would pay down the Turnkey Notes. Josephson assured Plaintiffs that none of the similar promissory notes financing Siegal's partnership structures had ever been exercised and that "no one ever sees them."

63.     Josephson and other yet to be identified defendants assured Plaintiffs that funds generated by the oil and gas sales in excess of the amounts due quarterly on the Turnkey Note 'would be distributed to the Partnership and then to the partners except for any portion of the distributions the partners had assigned to the Partnerships to purchase marketable securities. These securities were assumed to increase in value to the point where they would eventually be equal to the value of the Turnkey Notes and could be used to pay off those Notes.

*          *          *

137.     Josephson, Guralnick and SLG were agents, and professional advisors placed in a positions of trust by Plaintiffs.