UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------

IRA NATHEL and SHELDON NATHEL,

                        Plaintiffs,

        -against-

RICHARD SIEGAL, GEORGE COLEMAN,
HARVEY JOSEPHSON, ROBERT A. TREVISANI,
PAUL HOWARD, RICHARD S. GURALNICK;
SCHAIN LEIFER GURALNICK; BISTATE OIL
MANAGEMENT CORPORATION, SS&T
HOLDING CO., LLC, PALACE EXPLORATION
COMPANY, TAH DRILLING CO., INC., TAQ
DRILLING CO., INC., OIL AND GAS TITLE,
HOLDING CORPORATION, JOHN DOES 1-20;
JOHN DOE CORPORATIONS 1-20; JOHN DOE
LLCs 1-20; and JOHN DOE LLPs 1-20,

                     Defendants.

--------------------------------------------------

07 CV 10956 (LBS)(HBP)

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
CROSS-MOTION TO AMEND AND IN FURTHER SUPPORT OF MOTION
TO DISMISS THE FIRST AMENDED COMPLAINT BY DEFENDANTS
RICHARD S. GURALNICK AND SCHAIN LEIFER GURALNICK**

John H. Eickemeyer
Charles S. Caranicas
VEDDER PRICE P.C.
1633 Broadway – 47th Floor
New York, New York  10019
(212) 407-7700

*Attorneys for Defendants
Richard S. Guralnick and Schain Leifer Guralnick*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ....................................................................................................... 3

POINT I    PLAINTIFFS' FIRST AMENDED COMPLAINT MUST BE
DISMISSED AS AGAINST THE SLG DEFENDANTS BECAUSE
PLAINTIFFS HAVE WITHDRAWN ALL CLAIMS AGAINST THEM .......... 3

POINT II   PLAINTIFFS' CROSS-MOTION TO AMEND SHOULD BE DENIED
BECAUSE THEIR PROPOSED CLAIM FOR A DECLARATORY
JUDGMENT AGAINST THE SLG DEFENDANTS IS FUTILE ...................... 3

CONCLUSION.................................................................................................... 14

i

# TABLE OF AUTHORITIES

**Page**

## Cases

*AETNA Casualty and Surety Co. v. Aniero Concrete Co. Inc.*, 404 F.3d 566 (2nd Cir. 2005) ...... 4

*Albany Insurance Co. v. Esses*, 831 F.2d 41 (2nd Cir. 1987) *overruled on other grounds*, 865 F.2d 1370 (2nd Cir. 1989) ................................................................................................ 3

*Apotex Inc. v. Sanofi-Synthelabo*, 386 F. Supp. 2d 549 (S.D.N.Y. 2005), *aff'd* 175 Fed. Appx. 349 (Fed. Cir. 2006)................................................................................ 12

*Associated Indemnity Corp. v. Fairchild Industries, Inc.*, 961 F.2d 32 (2d Cir. 1992) ............. 7, 9

*Bank of New York v. Sasson*, 786 F.Supp. 349 (S.D.N.Y. 1992)................................................... 4

*Bernshteyn v. Feldman*, 2006 WL 2516514 (S.D.N.Y. August 29, 2006) ................................. 6, 9

*Carroll v. LeBoeuf, Lamb, Green & MacRae, LLP*, 392 F.Supp.2d 621 (S.D.N.Y. 2005) ........... 5

*Combustion Equipment Associates, Inc. v. United States Environmental Protection Agency*, 838 F.2d 35 (2d Cir. 1988) ...................................................................................................... 6

*Cuccolo v. Lipsky, Goodkin & Co.*, 826 F.Supp. 763, 772 (S.D.N.Y.1993) ................................ 5

*Daley v. Mathews*, 536 F.2d 519 (2d Cir. 1976)......................................................................... 6

*Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F.3d 357 (2d Cir. 2003) ....................................... 12

*Foman v. Davis*, 371 U.S. 178, 9 L.Ed.2d 222, 83 S.Ct. 227 (1962) ............................................ 3

*Hodgers-Durgin v. De La Vina*, 199 F.3d 1037 (9th Cir. 1999)................................................... 6

*Hodnik v. Baltimore & Ohio Railroad*, 54 F.R.D. 184 (W.D.Pa. 1972)....................................... 4

*Love v. N.Y. State Dep't of Environmental Conservation*, 529 F.Supp. 832 (S.D.N.Y. 1981) ...... 3

*Public Service Com'n of Utah v. Wycoff Co.*, 344 U.S. 237 (1952) ............................................ 13

*Seippel v. Jenkins & Gilchrist, P.C.*, 341 F.Supp.2d 363 (S.D.N.Y. 2004)........................... 7, 8, 9

*Swartz v. KPMG, LLC*, 401 F.Supp.2d 1146 (W.D. Wash. 2004)................................................ 7

*Texas v. United States*, 523 U.S. 296, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) .......................... 6

*The Limited, Inc. v. McCrory Corp.*, 683 F.Supp. 387 (S.D.N.Y. 1988)....................................... 5

*U.S. Underwriters Ins. Co. v. Kum Gang, Inc.*, 443 F. Supp. 2d 348 (E.D.N.Y. 2006) .............. 13

*Vulcan Society v. Fire Dep't of the City of White Plains*, 82 F.R.D. 379 (S.D.N.Y. 1979) .......... 4

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ........................................................................ 12

## Statutes

28 U.S.C. § 2201....................................................................................................................... 2, 12

## TABLE OF AUTHORITIES
### (continued)

Page

**Rules**

Fed.R.Civ.P. 12(b)(6)................................................................................................. 4

Fed.R.Civ.P. 15(a) .................................................................................................... 3

**Regulations**

26 C.F.R. § 1.704-1(b)(2)(iv)(c) .............................................................................. 11

Defendants Richard S. Guralnick ("Guralnick") and Schain Leifer Guralnick ("SLG")(collectively, the "SLG Defendants") submit this memorandum (1) in opposition to Plaintiffs' Cross-Motion to Amend the First Amended Complaint because the proposed Second Amended Complaint is futile with respect to the SLG Defendants, and (2) in further support of their motion to dismiss the First Amended Complaint.

## PRELIMINARY STATEMENT

As a threshold matter, Plaintiffs have expressly withdrawn all of their claims against the SLG Defendants in the First Amended Complaint. Therefore, this Court should grant the SLG Defendants' motion to dismiss the First Amended Complaint in its entirety as against them regardless of any other determinations the Court may make. (*See* Point I, *infra*)

Plaintiffs' motion to amend the First Amended Complaint based upon their proposed Second Amended Complaint should be denied, at least with respect to Plaintiffs' single proposed claim against the SLG Defendants, because the proposed amendment is futile. The sole purported claim that Plaintiffs seek leave to assert against the SLG Defendants (*see* proposed Second Amended Complaint ("SAC"), Twelfth Claim) requests a declaratory judgment that the SLG Defendants committed accounting malpractice and are therefore liable for potential penalties that may (or may not) be assessed against them by the IRS related to just one of the Partnerships involved in this lawsuit—the Hurricane Partnership.[1] Plaintiffs no longer allege that they were induced to invest in Hurricane by the SLG Defendants or that the SLG Defendants had any role in the marketing of Hurricane. Plaintiffs allege only that the SLG Defendants, in preparing the 2004 Forms K-1 for Hurricane, allocated deductions to Plaintiffs from the

---

[1] Plaintiffs also allege that they may be responsible for a portion of the costs of defending against the IRS audit insofar as they are related to the Hurricane Partnership—though Plaintiffs do not allege that they have as yet incurred any such costs.

inception of the partnership in August 2004 rather than some later date, thereby allegedly causing Plaintiffs to underpay their tax liability for that year.

However, Plaintiffs cannot demonstrate a practical likelihood that penalties will be imposed on them because the SLG Defendants supposedly allocated to them too large a share of the Hurricane deductions. On the contrary, the allegations of the proposed SAC indicate that the IRS inquiry into the Hurricane partnership has nothing to do with the allocation of the deductions to Plaintiffs but is instead centered on whether the intangible drilling costs ("IDCs") on which those deductions were based were properly deductible in the first place. Having abandoned any allegation that the SLG Defendants induced them to invest in Hurricane, Plaintiffs do not and cannot ascribe any fault to the SLG Defendants with respect to the non-deductibility of the IDCs.

Thus, not only are the alleged damages contingent and not likely to occur, but even if penalties are assessed against Plaintiffs, the SAC's own allegations indicate that they will not have been caused by the allegedly faulty preparation of the K-1's by the SLG Defendants. The absence of the element of causation and the contingent nature of the potential damages require a finding that there is no justiciable controversy as required for this Court to exercise its jurisdiction under 28 U.S.C. § 2201. The amendment proffered by Plaintiffs, at least with respect to the proposed claim against the SLG Defendants, is futile and leave to amend should be denied. (*See* Point II, *infra*)

**ARGUMENT**

**POINT I**

**PLAINTIFFS' FIRST AMENDED COMPLAINT MUST BE DISMISSED
AS AGAINST THE SLG DEFENDANTS BECAUSE
PLAINTIFFS HAVE WITHDRAWN ALL CLAIMS AGAINST THEM**

Plaintiffs have essentially abandoned all of the claims asserted against the SLG Defendants in the First Amended Complaint (Plaintiffs' Memo of Law in Support of Cross-Motion to Amend the First Amended Complaint and in Opposition to Defendants' Motions to Dismiss ("Pl. Br.") at 6). Instead, Plaintiffs cross-move for leave to amend in order to assert, *inter alia*, a single declaratory judgment claim against the SLG Defendants which is entirely new. Since Plaintiffs have withdrawn all of their previously-asserted claims against the SLG Defendants, the First Amended Complaint must be dismissed in its entirety as against them.

**POINT II**

**PLAINTIFFS' CROSS-MOTION TO AMEND SHOULD BE DENIED
BECAUSE THEIR PROPOSED CLAIM FOR A DECLARATORY JUDGMENT
AGAINST THE SLG DEFENDANTS IS FUTILE**

Courts have repeatedly held that leave to amend a pleading should not be granted where the proposed amendments are futile or otherwise have no merit. Under Fed. R. Civ. P. 15, leave to amend should be "freely given" absent "any apparent or declared reason," including "futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182, 9 L.Ed.2d 222, 226, 83 S.Ct. 227 (1962). "[W]here the claims sought to be asserted are totally without merit and would result in a futile gesture, leave to amend should be denied." *Love v. N.Y. State Dep't of Environmental Conservation*, 529 F.Supp. 832, 845 (S.D.N.Y. 1981). "[T]he district court may deny leave to replead if the proposed amendments would be futile." *Albany Insurance Co. v. Esses*, 831 F.2d 41, 45 (2nd Cir. 1987) *overruled on other grounds*, 865 F.2d 1370 (2nd Cir. 1989)(quoting Fed.R.Civ.P. 15(a)). "If the [proposed amended] claims would be subject to dismissal under

Fed.R.Civ.P. 12(b)(6), the court should refuse to grant leave to amend rather than assent and then await a motion to dismiss." *AETNA Casualty and Surety Co. v. Aniero Concrete Co. Inc.*, 404 F.3d 566, 604 (2nd Cir. 2005)(quoting *Bank of New York v. Sasson*, 786 F.Supp. 349 (S.D.N.Y. 1992)).

> "To avoid a useless act, then, a proposed amendment must be measured in terms of its ability to withstand a motion to dismiss, and therefore, the legal sufficiency of the presently proposed amendment must be examined in that light."

*Vulcan Society v. Fire Dep't of the City of White Plains*, 82 F.R.D. 379, 387 (S.D.N.Y. 1979)(quoting *Hodnik v. Baltimore & Ohio Railroad*, 54 F.R.D. 184 (W.D.Pa. 1972)).

Plaintiffs' proposed claim for a declaratory judgment against the SLG Defendants would not withstand a motion to dismiss. The claim is premised entirely upon the *possibility* that the IRS *may* impose penalties on Plaintiffs for allegedly improper deductions in their 2004 tax returns. This possibility arises from an IRS audit of Plaintiffs' tax returns, which reflected deductions pertaining to a number of partnerships in which they had invested. (SAC ¶85) The SAC alleges that the IRS has informed Plaintiffs that it believes the partnerships did not own a working interest in any wells and that proceeds received from the partnerships may not have been based on revenues from sites drilled by the partnerships but rather from sites held by the "Siegal Companies," as defined in the SAC. (SAC ¶93) However, the SAC does not allege that any penalties have been assessed – or that any other assessments have been made – against Plaintiffs based on their investments in the partnerships.

4

The tax returns that are under audit were, in part, allegedly based on K-1 forms prepared by the SLG Defendants with respect to the Hurricane Partnership.[2]  Plaintiffs allege that, in preparing the K-1 forms, the SLG Defendants "improperly allocated a larger portion of tax deductible costs to the Plaintiffs than they were entitled to, causing a larger underpayment of taxes and *possible* greater penalties as a result, and as to which they seek a declaratory judgment" (Pl. Br. at 6)(emphasis added).  Specifically, Plaintiffs allege that the K-1's reflected IDC-related deductions as if they had acquired their interests in August 2004 when, they allege, they actually did not purchase their Hurricane partnership interests until December 2004. (SAC ¶183)  As a result, Plaintiffs allege, they underpaid their tax liability.

A claim for professional malpractice must allege a duty to plaintiff, a breach thereof, injury and "that injury resulted in recoverable damages." *Carroll v. LeBoeuf, Lamb, Green & MacRae, LLP*, 392 F.Supp.2d 621, 625 (S.D.N.Y. 2005)(Pl. Br., p. 33).  Plaintiffs, at the very least, cannot now state a claim against the SLG Defendants because they cannot allege any recoverable damages.  "To recover in a malpractice action, the plaintiff must have suffered *actual loss or damages* as a result of the defendant's negligence." *Cuccolo v. Lipsky, Goodkin & Co.*, 826 F.Supp. 763, 772, fn. 10 (S.D.N.Y.1993)(emphasis added).  "In the absence of properly alleged actual damages, plaintiff's allegations against [defendant] would be legally insufficient and must be dismissed." *The Limited, Inc. v. McCrory Corp.*, 683 F.Supp. 387, 392 (S.D.N.Y. 1988).

As noted above, Plaintiffs do not allege that the IRS—or any other taxing authority—has actually assessed any penalties with respect to the Hurricane Partnership.  "The only claim in the

---

[2]  Plaintiffs allege their proposed single claim against the SLG Defendants solely with respect to the Hurricane Partnership.  There is no claim against the SLG Defendants with respect to any of the other Partnerships referred to in the SAC.

(second) Amended Complaint against the Guralnick (SLG) Defendants is for a declaratory judgment that they are liable for penalties that *may be* assessed, and audit defense fees that *may be* incurred, in connection with the Hurricane partnership" (Pl. Br. at 33)(emphasis added). Plaintiffs allege that they "*will likely be* damaged as a result" of the SLG Defendants' alleged malpractice (SAC, ¶ 185)(emphasis added). Plaintiffs' claim against the SLG Defendants with respect to damages is entirely speculative and premature. As such, the claim "cannot form the basis for an award of damages under New York law." *Bernshteyn v. Feldman*, 2006 WL 2516514, *4 (S.D.N.Y. August 29, 2006). (A copy of the *Bernshteyn* decision is annexed to this brief as Exhibit 1.)

Since Plaintiffs cannot now maintain a malpractice claim against the SLG Defendants due to the absence of the requisite element of damages, they instead seek a judicial declaration that the SLG Defendants were negligent, without any showing that such negligence has caused or will cause Plaintiffs to suffer any actual damages. The Second Circuit has repeatedly stated, in declaratory judgment cases, that "courts will not and should not intervene unless the need for equitable relief is more than remote or speculative." *Daley v. Mathews*, 536 F.2d 519, 522 (2d Cir. 1976); see also *Combustion Equipment Associates, Inc. v. United States Environmental Protection Agency*, 838 F.2d 35, 37 (2d Cir. 1988)("accelerated judicial intervention creates the risk of burdening the courts and the litigants with disputes that were otherwise destined to disappear by themselves . . .").

A declaratory judgment claim "is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999)(quoting *Texas v. United States*, 523 U.S. 296, 118 S.Ct. 1257, 1259, 140 L.Ed.2d 406 (1998)). "[T]o the extent that plaintiff seeks a

declaration that any tax penalties which he might be assessed in the future are the responsibility of defendant, his claim is subject to dismissal pursuant to 12(b)(6) . . . Any assessment of penalties against the Plaintiff by the IRS remains a future event which may not occur as anticipated, if at all." *Swartz v. KPMG, LLC*, 401 F.Supp.2d 1146, 1155 (W.D. Wash. 2004).

In the face of these authorities, Plaintiffs seek to rely on *Seippel v. Jenkins & Gilchrist, P.C.*, 341 F.Supp.2d 363, 371 (S.D.N.Y. 2004), for the proposition that a declaratory judgment action may be maintained even when liability is contingent. (Pl. Br. at 32). But *Seippel* presented a very different situation than this case. In *Seippel*, the plaintiffs had invested in the COBRA tax shelters and had, at the time of suit, already suffered assessments of unpaid tax, interest and penalties by a number of taxing authorities, with more assessment still possible in the future. The *Seippel* plaintiffs sued the attorneys and accountants who advised them with regard to the COBRA investment both for damages based on the assessment that already had been made and for a declaratory judgment with respect to liability for future assessments. The *Seippel* plaintiffs thus had suffered "immediate and definite" damages as a result of the defendants' conduct.[3] *Id.* at 371. The Court found that the contingent nature of the liability "does not necessarily defeat jurisdiction of a declaratory judgment action," and stated that the focus should be on "the practical likelihood that the contingencies will occur." *Id.* at 383, *quoting Associated Indemnity Corp. v. Fairchild Industries, Inc.*, 961 F.2d 32, 35 (2d Cir. 1992). Under the circumstances – with the COBRA shelter already having been found to be abusive and

---

[3]    These damages included actual tax penalties and interest already assessed and paid to the IRS, fees that had been paid to tax and legal advisors in order to "rectify [the] defendants wrongdoing" and substantial losses resulting from having liquidated assets "at fire sale prices" in order to timely meet the IRS-imposed tax obligations. *Seippel, supra*, 341 F.Supp.2d at 370.

numerous assessments already having been made – the Court found there was a "practical likelihood" that the contingencies, in the form of additional assessments, would occur.

By contrast, Plaintiffs here have yet to incur any actual damages. There have been no assessments of any kind against them. While an IRS agent has allegedly indicated that the IRS believes the IDC-related deductions were improper, the SAC does not allege any indication that penalties will be asserted against Plaintiffs – and certainly no indication that any penalties would be based on Plaintiffs having taken deductions for more of tax year 2004 than they were entitled to, which is the alleged error committed by the SLG Defendants. In short, there is no indication that the alleged damages for which Plaintiffs ask this Court to declare in advance that the SLG Defendants will be liable will ever come to pass – much less that there is a "practical likelihood" they will be suffered.[4]

Moreover, in *Seippel*, the plaintiffs alleged that the defendants had been engaged in the development and promotion of the tax shelters at issue and that they had conspired to defraud the plaintiffs and other investors. *Id.* at 367-368. In this case, Plaintiffs have expressly (and properly) abandoned any and all allegations that the SLG Defendants were involved in any way in developing or marketing the Hurricane Partnership or had any role with respect to Plaintiffs' investment decision. The factors that led the *Seippel* Court to find a "practical likelihood" that

---

[4] Plaintiffs also allege that the SLG Defendants should be declared liable for any expenses they incur in defending against the IRS audit to the extent the audit relates to their investment in the Hurricane Partnership. (SAC ¶185) However, the SAC's allegations contain no basis for an inference that the IRS audit is being conducted because the 2004 Hurricane deductions by Plaintiffs were not pro rated; rather, the IRS agents allegedly have suggested that the IDCs are not properly deductible at all. (SAC ¶93) If Plaintiffs in fact have incurred or will incur audit-related expenses, it will be due to their decision to invest in Hurricane in the first instance, as to which they no longer ascribe any fault to the SLG Defendants. The audit defense fees that Plaintiffs have incurred or may incur thus provide no basis for finding a justiciable case or controversy involving Plaintiffs and the SLG Defendants since, on the facts alleged, there is no causal link between those expenses and any conduct by the SLG Defendants.

8

the contingent liabilities would actually be suffered simply are not present here and so a different result is warranted.

Finally, the Second Circuit decision relied on by the *Seippel* court to support the proposition that a contingent liability does not necessarily preclude a declaratory judgment action – *Associated Indemnity Corp. v. Fairchild Industries, Inc., supra* – is completely inapposite. *Associated Indemnity* involved a dispute over insurance coverage, which is "the paradigm for asserting jurisdiction despite future contingencies that will determine whether a controversy ever actually becomes real." *Associated Indemnity, supra*, 961 F.2d at 35. In the applicable context of potential tax penalties, the *Seippel* contingent liability rule has not been followed or even addressed in any subsequent decision.

Not only does *Seippel* not support the existence of a justiciable case or controversy here, but this Court has expressly held that potential IRS penalty assessments do not give rise to a justiciable "case or controversy" of the type required for maintenance of a declaratory judgment action. In this Court's *Bernshteyn* decision, *supra*, the plaintiff alleged four separate sources of damages: "liability to the IRS, *potential* penalties to the IRS, *potential* liability to New York, and *potential* penalties to New York." *Bernshteyn, supra*, at *4 (emphasis added).

> "Three of these amounts—the potential IRS penalties and the potential New York liability and penalties—are admittedly conjectural and speculative. Plaintiffs do not allege that any of these three potentialities have come to pass, and accordingly it is a *legal certainty* that those three dollar amounts cannot form the basis for an award of damages under New York law."

*Bernshteyn, supra*, at *4 (S.D.N.Y. 2006)(emphasis added). As the IRS may ultimately impose no penalties on Plaintiffs,[5] their alleged damages fall so far short of being a "practical

---

[5] Even if the IRS does assess penalties against Plaintiffs in connection with the Hurricane Partnership, it is possible that those penalties may never be paid due to, for example, an

(continued...)

likelihood" that there is no justiciable case or controversy as to which this Court can properly render a declaratory judgment that would, in effect, hold the SLG Defendants liable for any penalties that might ultimately be imposed on Plaintiffs in connection with their investment in the Hurricane Partnership.

Moreover, even if the IRS does impose penalties, the SAC's allegations suggest that those penalties will not have been imposed due to any acts by the SLG Defendants.  In their proposed lone claim against the SLG Defendants, Plaintiffs allege that the SLG Defendants erred in preparing K-1's for their 2004 tax returns that gave them a deduction, based on Plaintiffs' proportionate interest, for all IDC's incurred by the Hurricane Partnership from its inception on August 1, 2004 to the end of that year.  Plaintiffs allege that only the portion of the IDC's relating to the period after Plaintiffs acquired their interest in Hurricane on or about December 9, 2004 was properly deductible (SAC ¶183).  But the SAC's allegation regarding the possible basis for an IRS disallowance of the IDC deductions makes no reference to any underpayment of tax based on the timing of Plaintiffs' investment.  Rather, paragraph 93 of the SAC alleges that the IRS was questioning the IDC deductions due to its opinion that (1) the Partnerships did not own a working interest in any oil and gas wells, and (2) proceeds received from the Partnerships may not have related to sites actually owned by the Partnerships.  Neither of these points relates to the "error" allegedly committed by the SLG Defendants—namely, the allocation of a full 2004

_____

(...continued)
agreement to abate penalties that may subsequently be negotiated by counsel either for the Partnership or for Plaintiffs.

NEWYORK/#195699.3

deduction to Plaintiffs rather than one based on the brief portion of that year after which Plaintiffs had paid for an interest in the Hurricane Partnership.[6]

Based on these allegations, there is no basis upon which this Court could now determine that any harm that Plaintiffs might ultimately suffer would actually have been caused by the SLG Defendants. Indeed, the allegations in the proposed SAC support the absence of the requisite element of causation rather than its presence. In effect, Plaintiffs ask this Court to declare that the SLG Defendants will be liable for any penalties imposed on Plaintiffs in connection with the Hurricane Partnership without any showing that the imposition of such penalties either will have been caused by the SLG Defendants or is at all likely. The absence of both actual damages and

---

[6]    Plaintiffs now contend that since they did not actually make their investments in Hurricane until December 9, 2004, they were only entitled to a pro-rated portion of the full IDC-related deductions for 2004. (SAC ¶¶183-85)  By reflecting a full, rather than a pro-rated, portion of the IDCs on their Forms K-1, Plaintiffs contend, the SLG Defendants caused them to underpay their federal income tax and exposed them to the possible imposition of penalties by the IRS. However, Plaintiffs indisputably entered into the Hurricane Partnership Agreement, which is effective as of August 1, 2004, and related documents described in paragraph 51 of the SAC. Pursuant to these documents, Plaintiffs assumed liability – as of August 1, 2004 – for their proportionate share of the Turnkey Note that was issued to finance drilling costs under the Turnkey Drilling Contract that the Partnership had entered into.  The Partnership Agreement provided that all items of partnership gains and losses for federal income tax purposes would be allocated among the partners based upon their proportionate shares.  Consistent with this provision – and with IRS regulations treating an assumption of partnership liabilities as a contribution to the partnership (26 C.F.R. §1.704-1(b)(2)(iv)(c)) – the SLG Defendants treated Plaintiffs as having acquired their interests as of the date they assumed partnership liabilities, *i.e.*, August 1, 2004.  The SLG Defendants were not free to select another starting date for Plaintiffs' assumption of such liability and thereby reduce the tax benefits Plaintiffs were entitled to receive under the Hurricane Partnership Agreement.  Indeed, had the SLG Defendants done so, they might well have been the subject of a claim by Plaintiffs for causing an overpayment of tax. Plaintiffs' proposed claim against the SLG Defendants thus not only fails to present a justiciable case or controversy, but would require this Court to find that the SLG Defendants were entitled to unilaterally deprive Plaintiffs of a contractual benefit for which they had bargained and paid substantial consideration.  Thus, even if Plaintiffs' proposed claim against the SLG Defendants were justiciable, it is most certainly not viable.

11

causation demonstrates that the issue of whether the SLG Defendants will have any liability to Plaintiffs is not now justiciable and that the declaratory judgment claim Plaintiffs seek leave to assert against the SLG Defendants is not viable. Leave to amend would therefore be futile and should be denied with respect to Plaintiffs' purported Twelfth Claim against the SLG Defendants.

The SLG Defendants also adopt the arguments contained in the memorandum of the Palace Defendants to the effect that 28 U.S.C. § 2201 cannot serve as an independent basis for federal subject matter jurisdiction. Moreover, even under 28 U.S.C. § 2201, the proposed declaratory judgment claim should not be entered as a matter of discretion. "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Apotex Inc. v. Sanofi-Synthelabo*, 386 F. Supp. 2d 549, 551 (S.D.N.Y. 2005) (declining jurisdiction over declaratory judgment claim), *aff'd* 175 Fed. Appx. 349 (Fed. Cir. 2006), *quoting Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). "In exercising its discretion, the Court considers '(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty'" *Apotex*, *supra*, 386 F. Supp.2d at 351, *quoting Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003). These factors weigh against an exercise of discretion to hear Plaintiffs' proposed declaratory judgment claim. Given the uncertainty over the existence, nature and basis of any future IRS penalty assessment, all of which are discussed above, it simply is not possible for this Court to settle any issues concerning possible liability for such penalties. These uncertainties will necessarily continue until the IRS actually makes a penalty assessment – if in fact it ever does.

12

For a declaratory judgment to be entertained, "[t]he disagreement ... must have taken a fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on its adversaries, and some useful purpose to be achieved in deciding them." *U.S. Underwriters Ins. Co. v. Kum Gang, Inc.*, 443 F. Supp. 2d 348, 352 (E.D.N.Y. 2006) (declining jurisdiction for declaratory judgment over apportionment of liabilities), *quoting Public Service Com'n of Utah v. Wycoff Co.*, 344 U.S. 237, 244 (1952). Since the existence, nature and basis of any future penalty assessment are inherently uncertain, so too is the shape of any possible dispute as to whether anyone, including the SLG Defendants, may be liable to Plaintiffs should such an assessment come to pass. For this additional reason, this Court should decline to exercise jurisdiction over the proposed – but entirely futile – proposed declaratory judgment claim, and leave to amend to assert such a claim against the SLG Defendants should be denied.

.

13

## CONCLUSION

For the foregoing reasons, Defendants Richard S. Guralnick and Schain Leifer Guralnick respectfully request an Order dismissing the First Amended Complaint as against them and denying Plaintiffs' cross-motion to serve a Second Amended Complaint for the purpose of asserting a declaratory judgment claim against them.

Dated:    New York, New York
          June 26, 2008

                        VEDDER PRICE P.C.


                        By:  _s/ John H. Eickemeyer_____
                            John H. Eickemeyer (JE 8302)
                            Charles S. Caranicas (CC 9244)
                            1633 Broadway – 47th Floor
                            New York, New York  10019
                            Tel:  (212) 407-7700
                            Fax:  (212) 407-7799

                            *Attorneys for Defendants*
                            *Richard S. Guralnick and*
                            *Schain Leifer Guralnick*

14

# EXHIBIT 1

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 2516514 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 2516514 (S.D.N.Y.))

Page 1

C
Bernshteyn v. Feldman
S.D.N.Y.,2006.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Mikhail BERNSHTEYN and Best Care Medical,
L.L.C., Plaintiff,
v.
Yan FELDMAN, Defendant.
No. 04 Civ. 1774(GEL).

Aug. 29, 2006.

Eric Wertheim and Val Mandel, Val Mandel, P.C.,
New York, NY, for Plaintiffs.
Robert Fierman, New York, NY, for Defendant.

**OPINION AND ORDER**

GERARD E. LYNCH, District Judge.
*1 Plaintiffs Mikhail Bernshteyn and Best Care
Medical, L.L.C. ("Best Care") bring this action
against defendant Yan Feldman, asserting various
claims relating to Feldman's alleged failure to pay
payroll taxes on behalf of Best Care during the time
Bernshteyn and Feldman were both involved in
Best Care's business affairs. On November 14,
2005, after the completion of discovery, plaintiffs
moved for summary judgment. However, while
plaintiffs' motion was sub judice, the parties re-
quested that the Court reserve decision to allow for
supplemental briefing regarding the Court's subject
matter jurisdiction over plaintiffs' claims. Supple-
mental briefing was completed on June 14, 2006,
and the matter is now ripe for decision. For the
reasons stated below, this Court lacks subject mat-
ter jurisdiction over plaintiffs' claims, and the case
will be dismissed.

**BACKGROUND**

Unless otherwise indicated, the following facts are
not in dispute. In the spring of 2001, Feldman hired
Bernshteyn, a licensed physician, to be the medical

director for three medical clinics then managed by
Feldman. To facilitate the management of these
clinics, Feldman and Bernshteyn formed Best Care,
a professional medical corporation, with Bern-
shteyn as the sole shareholder. As a physician,
Bernshteyn handled all medical management re-
sponsibilities, while Feldman handled the non-
medical aspects of the business. Bernshteyn and
Feldman opened a bank account for Best Care and
shared check signing authority. However, all bank
statements were sent to Feldman's personal resid-
ence in New Jersey.

In the course of his management responsibilities,
Feldman retained an accounting firm, Universal
Accounting, to prepare Best Care's payroll checks
and payroll tax returns. Universal Accounting was
once owned by Feldman, although it was sold to a
third party prior to Bernshteyn's involvement with
Best Care.

Plaintiffs allege that in May 2002, "unbeknownst to
Bernshteyn or Best Care, Feldman inexplicably
stopped paying payroll taxes, while continuing to
pay compensation to employees."(Am.Compl.¶ 11.)
Liability for Best Care's unpaid payroll taxes is at
the heart of the present dispute.

**DISCUSSION**

Plaintiffs assert that this Court has subject matter
jurisdiction over this action based on diversity of
citizenship, 28 U.S.C. § 1332, and the existence of
a federal question arising under an act of Congress
relating to internal revenue, 28 U.S.C. § 1331
(federal question); 28 U.S.C. § 1340 (internal rev-
enue). Neither basis is ground for jurisdiction in
this case.

*I. Federal Question Jurisdiction*

The Court does not have federal question jurisdic-
tion. Federal question jurisdiction exists "only

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 2516514 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 2516514 (S.D.N.Y.))

when a federal question is presented on the face of the plaintiff's properly pleaded complaint."*Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987). To meet this standard, a right created by federal law must be an essential element of one of plaintiffs' causes of action.*Greenblatt v. Delta Plumbing & Heating Corp.,* 68 F.3d 561, 568 (2d Cir.1995). In the usual case, "[a] suit arises under the law that creates the cause of action."*Am. Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260 (1916) (Holmes, J.). However, a case may also "arise under" federal law if "the vindication of a right under state law necessarily turn[s] on some construction of federal law."*Greenblatt,* 68 F.3d at 569.

**\*2** Plaintiffs' claims do not arise under federal law. Plaintiffs' amended complaint asserts seven causes of action-breach of contract, unjust enrichment, breach of fiduciary duty, malpractice, negligence, accounting, and contribution (Am.Compl.¶¶ 14-31)-none of which is based on a federal statute. Nor do plaintiffs' asserted state-law rights "necessarily turn[ ]" on the construction of federal law. The only federal issue mentioned in plaintiffs' complaint is the allegation that plaintiffs incurred liability to the IRS due to Feldman's failure to pay payroll taxes. (*Id.* ¶ 12.)On the face of the complaint, there is no claim or dispute that would require this Court to make a determination of federal law, such as the amount of taxes due or plaintiffs' own liability to the IRS. Rather, plaintiffs simply allege that the damages caused by their liability to the IRS are the fault of Feldman, and the existence of that fault turns completely on the state-law causes of action asserted in the complaint. Accordingly, no federal question is presented on the face of the complaint, and the Court lacks federal question jurisdiction.

## II. *Diversity Jurisdiction*

Nor does the Court have diversity jurisdiction. There is no dispute concerning the diversity of citizenship of the parties. Plaintiffs are both citizens of New York, and Feldman is a citizen of New Jer-

sey. (Am.Compl.¶¶ 1-3.) However, plaintiffs' claims fail to satisfy the statute's $75,000 amount-in-controversy requirement, 28 U.S.C. § 1332(a), because it is a legal certainty that plaintiffs cannot recover $75,000 in this action.

### A. *Legal Standards Governing the Amount-in-Controversy Requirement*

"A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount."*Tongkook Am., Inc. v. Shipton Sportswear Co.,* 14 F.3d 781, 784 (2d Cir.1994). However, the burden on plaintiffs is light, because there exists a "rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy."*WoldeMeskel v. Vocational Instruction Project Cmty. Servs., Inc.,* 166 F.3d 59, 63 (2d Cir.1999); *see also Scherer v. The Equitable Life Assurance Society,* 347 F.3d 394, 397 (2d Cir.2003).

To overcome this presumption, a party seeking to defeat jurisdiction "must show 'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold."*Scherer,* 347 F.3d at 397,*quoting St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288-89 (1938)."Where the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings."*Tongkook,* 14 F.3d at 785.

While the stringent "legal certainty" test often results in the conclusion that jurisdiction exists, *see*Charles Alan Wright et al., Federal Practice & Procedure § 3702 (3d ed.2006), the diversity statute's amount-in-controversy requirement is not completely without teeth. A plaintiff's mere mention of an amount greater than $75,000 is not a magic talisman that wards off a district court's inquiry into the actual amount at issue. When the asserted amount in controversy is based on a cause of action created by state law, "the federal courts must, of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 2516514 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 2516514 (S.D.N.Y.))**

course, look to state law to determine the nature and extent of the right to be enforced."*Horton v. Liberty Mut. Ins. Co.,* 367 U.S. 348, 352-53 (1961). Accordingly, if a plaintiff asserts a state-law cause of action seeking damages greater than the jurisdictional minimum, but the state law upon which the plaintiff's claims are based does not permit, as a matter of legal certainty, recovery of the amount claimed by the plaintiff, then § 1332's amount-in-controversy requirement is not satisfied and the district court lacks jurisdiction over the action.

**\*3** For example, in *Kahn v. Hotel Ramada,* the plaintiff brought a claim against the defendant hotel in connection with the hotel's loss of over $50,000 of the plaintiff's property. 799 F.2d 199, 200-01 (5th Cir.1986).[FN1] However, the state statute that created the plaintiff's cause of action limited the plaintiff's recovery to $750. *Id.* at 201-02.Accordingly, the plaintiff "could not recover more than $750" under the cause of action asserted in the complaint, and the action was dismissed for lack of jurisdiction. *Id.* at 203.

> FN1. The amount-in-controversy requirement at the time the case was filed was $10,000.

Similarly, in *Wiggins v. North American Equitable Life Assurance Co.,* the plaintiff's complaint was dismissed for lack of jurisdiction despite the fact that plaintiff sought over $100,000 in relief. 644 F.2d 1014 (4th Cir.1981). The plaintiff in *Wiggins* asserted claims for compensatory and punitive damages under Maryland law. However, the Fourth Circuit determined that under the Maryland law governing the plaintiff's claim, the plaintiff could not recover punitive damages "as a matter of 'legal certainty.' " *Id.* at 1017,*quoting St. Paul,* 303 U.S. at 289. Therefore, the *Wiggins* Court was "ineluctably led to conclude that plaintiff could not recover punitive damages as she claimed and that therefore the ... case involve[d] a controversy over only $9,000. It follow[ed] that the district court never had jurisdiction...." 644 F.2d at 1018.

Courts in this Circuit have reached the same conclusion in similar circumstances. The district court in *Pollack v. Trustmark Ins. Co.* recognized that because the plaintiff there sought damages for an alleged breach of contract, "the amount in controversy depends on the amount recoverable under [New York] contract law."367 F.Supp.2d 293, 297 (E.D.N.Y.2005).[FN2] After determining that New York law only permitted recovery up to an amount that made the plaintiff "whole," and that the plaintiff only alleged that he was owed $55,000 at the time of suit, the *Pollack* Court concluded that the case should be remanded. *Id.* at 298.[FN3]

> FN2.*Pollack* involved a case that had been removed to federal court. The plaintiff sought a remand to state court, which the defendant opposed. Because the defendant was the party asserting the Court's jurisdiction, the Court placed the burden on the defendant to "establish by a reasonable probability that the amount is over the threshold."367 F.Supp.2d at 296. This test is admittedly different than the "legal certainty" test that must be applied to the present matter. However, the *Pollack* Court's analysis remains instructive.

> FN3. A panel of our Court of Appeals has recently found that an asserted amount in controversy actually fell below § 1332's minimum based on the constraints of a state-law cause of action, albeit in an unpublished opinion. *See Nwanze v. Time, Inc.,* 125 F. Appx. 346 (2d Cir.2005). The plaintiff in *Nwanze* claimed that defendant Time, Inc. defrauded him of two prizes he was allegedly owed, and sought $2,550,112 of actual damages, an amount that "would appear to satisfy the requirements of federal subject matter jurisdiction based on diversity of citizenship."*Id.* at 347.However, the Court determined that it was a legal certainty that the plaintiff could not recover the actual damages he

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 2516514 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 2516514 (S.D.N.Y.))

sought, because New York law limits damages in fraud actions to out-of-pocket expenses.*Id.* at 348.Accordingly, while the plaintiff had claimed damages well above the jurisdictional requirement, the district court lacked jurisdiction because the plaintiff could not recover those damages under the state cause of action asserted. While the Second Circuit proclaims that such summary opinions lack precedential value, *see* 2d Cir. R. § 0.23, this Court must seek enlightenment as to the law where it can find it. The analysis of a distinguished panel of appellate judges comprising Judges Newman, Leval, and Cabranes is at least as persuasive as such commonly cited materials as the writings of law students in student-edited journals.

The determination of whether a plaintiff's allegations satisfy the amount-in-controversy requirement considers the amount as of the date the complaint is filed. *Scherer,* 347 F.3d at 397. "Once jurisdiction has attached, it cannot be ousted by subsequent events."*Id.* However, while a drop in the amount in controversy following the filing of the complaint does not deprive the Court of jurisdiction, the eventual discovery of a fact that establishes that the plaintiff could not meet the jurisdictional amount *at the time of filing* will defeat jurisdiction. *Tongkook,* 14 F.3d at 785.

In *Tongkook,* the plaintiff, in good faith, alleged damages of $117,621.05 at the filing of the complaint. *Id.* at 782.However, until it was revealed during discovery, both the plaintiff and the defendant failed to realize that $80,760.00 of that amount had already been paid by the defendant, bringing the actual amount in controversy down to $36,861.05. *Id.* at 782-83.The plaintiff argued that its good-faith assertion at the time it filed the complaint should not be defeated by the subsequent discovery of evidence that the amount sought was in fact overstated. However, the Court of Appeals rejected this argument, stating that the plaintiff's good

faith was not the controlling factor when "from the outset, [plaintiff], to a legal certainty, could not recover the statutory jurisdictional amount."*Id.* at 785 (quotation marks omitted). Accordingly, the "'subsequent discovery of the true amount' in controversy, below the minimum statutory jurisdictional amount, require[s] dismissal for lack of subject-matter jurisdiction ."*Id.* at 786,*quoting Jones v. Knox Exploration Corp.,* 2 F .3d 181, 183 (6th Cir.1993).

### B. *Application to Plaintiffs' Claims*

**\*4** Plaintiffs seek compensatory damages from Feldman stemming from his alleged failure to pay payroll taxes on behalf of Best Care. These damages are sought pursuant to various tort and contract claims under New York law.[FN4] Therefore, New York law determines the extent of plaintiffs' right to recovery in this case.

> FN4. Both parties have proceeded on the assumption that New York law controls plaintiffs' state law claims. The Court will similarly assume, without deciding, that the parties' assumption is correct.

Under New York law, compensatory damages are just that-compensatory. A plaintiff may only recover damages for actual losses. *See Wai Ming Ng v. Tow,* 260 A.D.2d 574, 575 (N.Y.App. Div.2d Dep't 1999) ("an award of damages should place the plaintiff in the same position as he or she would have been in if the contract had not been breached"); 36 N.Y. Jur.2d Damages § 20 ("consequences which are contingent, speculative, or merely possible are not properly considered in ascertaining ... damages"). Put another way, a plaintiff cannot recover damages that are "remote, contingent or speculative," *Steitz v. Gifford,* 280 N.Y. 15, 20 (1939); *see also Wai Ming Ng,* 260 A.D .2d at 575 ("damages may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable" (internal quotations and citations omitted)), or based on conjec-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 2516514 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 2516514 (S.D.N.Y.))

ture, *ESPN, Inc. v. Office of the Comm'r of Baseball,* 76 F.Supp.2d 416, 418 (S.D.N.Y.1999). This is not to say that any uncertainty regarding damages defeats a plaintiff's claim under New York law. Rather, only uncertainty with respect to the *existence* of harm, not the *amount* of harm, is a bar to a plaintiff's recovery. *ESPN,* 76 F.Supp.2d at 418;*see also*N.Y. Jur.2d Damages § 16.

The complaint contains little information regarding the relief plaintiffs seek, and does not request a specific amount of damages. Instead, for each cause of action seeking compensatory damages, plaintiffs simply request "compensatory damages in an amount to be determined by the Court."(Am.Compl. pp. 7-8.) The only reference to any harm suffered by plaintiffs is found in plaintiffs' factual allegations, which claim that Feldman's actions (or inaction) caused (1) an "incurred liability" to the IRS "in the amount of approximately $200,000 with potential penalties of an additional $200,000 plus interest" (Am.Compl.¶ 12), and (2) "potential liability to the State of New York in the amount of approximately $50,000 with potential penalties of an additional $25,000 plus interest"(*id.* ¶ 13).

Plaintiffs fail to allege a compensable injury under New York law, and therefore they have failed to meet the required amount in controversy for diversity jurisdiction. Plaintiffs claim four separate sources of damages-liability to the IRS, potential penalties to the IRS, potential liability to New York, and potential penalties to New York. Three of these amounts-the potential IRS penalties and the potential New York liability and penalties-are admittedly conjectural and speculative. Plaintiffs do not allege that any of these three potentialities have come to pass, and accordingly it is a legal certainty that those three dollar amounts cannot form the basis for an award of damages under New York law.

*5 Similarly, plaintiffs' alleged liability to the IRS is not compensable under New York law. The complaint conspicuously omits any allegation that

plaintiffs have actually *paid* the IRS in satisfaction of this liability. In other words, plaintiffs do not allege that they have parted with any money, and therefore no damages are necessary to make them whole. In the absence of an allegation that they have suffered any actual financial harm, plaintiffs have failed to allege that they suffered any compensable injury traceable to Feldman.

This reading of plaintiffs' complaint is not merely literal or formalistic. Information disclosed during discovery confirms that plaintiffs' ambiguous wording, couched in possibility and speculation, was carefully intended, and reflected reality at the time it was drafted, for plaintiffs have not in fact paid anything close to $75,000 in taxes or penalties. If the allegations in plaintiffs' complaint left any doubt regarding the legal certainty that plaintiffs could not recover $75,000 from Feldman, subsequent revelations have "amplif[ied] the meaning of the complaint allegations."*Zacharia v. Harbor Island Spa, Inc.,* 684 F.2d 199, 202 (2d Cir.1982).

The parties' summary judgment submissions reveal that Bernshteyn has paid only "$20,000 to New York Sate on account of unpaid payroll taxes" (Pl. R. 56.1 Stmt. ¶ 14), and that plaintiffs owe exactly $138,127.09 to the IRS (*id.* ¶ 15). Plaintiffs admit that the IRS has chosen not to seek payment of that amount from Bernshteyn (Wertheim Aff. Ex. D), but claim that Best Care "remains liable for unpaid payroll taxes" (Pl.Mem.Summ. J. 4). However, plaintiffs further admit that the IRS has not commenced any action to collect the money owed by Best Care. (Pl. Supplemental Mem. 2.) [FN5] Accordingly, what was clear on the face of plaintiffs' complaint is confirmed by subsequent evidence: plaintiffs' total compensable losses amount to $20,000, the amount paid by Bernshteyn to the State of New York. New York law does not allow plaintiffs to recover from Feldman amounts of money that they admittedly have not lost, and may never lose, based simply on the possibility that the IRS or New York may some day seek to collect.[FN6]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 2516514 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 2516514 (S.D.N.Y.))

Page 6

FN5. It is unclear to what extent Best Care would be able to recover any of this amount from Feldman. Presumably, to the extent the amount owed reflects taxes that should have been but were not paid to the IRS, Best Care is and always has been liable to the IRS for that amount. Plaintiffs do not allege that Feldman appropriated for his own use money that Best Care should have paid to the federal government; they merely allege that he neglected to pay the taxes from Best Care's corporate funds. If that money was then expended for other corporate purposes, it represented a windfall for Best Care, and the only harm suffered would be the result of any interest or penalties assessed. However, the record is unclear regarding the composition of the money owed or the existence of any surplus funds from unpaid taxes, and the Court will not speculate about Best Care's ability to recover those amounts in a hypothetical action where jurisdiction existed.

FN6. New York's rule in this regard accords perfectly with common sense. If Bernshteyn or Best Care could recover from Feldman sums of money they have not yet paid to the federal or state tax authorities, plaintiffs would receive a windfall if the authorities never pursued their remedies against plaintiffs.

Under New York law, therefore, it is a legal certainty that the most plaintiffs can recover under the tort and contract claims asserted in the complaint is $20,000, the amount paid by Bernshteyn to the State of New York. Twenty thousand dollars is below § 1332's jurisdictional amount-in-controversy requirement. Accordingly, the Court does not have diversity jurisdiction over the action.

C. *Plaintiffs' Claims for Punitive Damages and Attorneys' Fees*

In addition to seeking compensatory damages, plaintiffs seek punitive damages and attorneys' fees in connection with some of their causes of action. However, neither potential source of recovery is sufficient to satisfy the jurisdictional minimum.

A good faith claim for punitive damages can be considered in determining the relevant amount in controversy. *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir.1991). However, claims for punitive damages are reviewed with greater scrutiny than claims for actual damages when punitive damages serve to satisfy the jurisdictional requirement. *Zahn v. Int'l Paper Co.,* 469 F.2d 1033, 1034 n. 1 (2d Cir.1972). Here, plaintiffs merely request punitive damages-they provide no amount of punitive damages sought, nor any justification for the award of such damages. Given the "special judicial scrutiny" accorded to "the use of punitive damages to satisfy the jurisdictional amount,"*Graubart v. Jazz Images, Inc.,* No. 02 Civ. 4645, 2006 WL 1140724, at *4 (S.D.N.Y. Apr. 7, 2006) (internal citations and quotations omitted), plaintiffs' failure to explain or justify their claim for punitive damages defeats any attempt to include those damages in the calculation of the amount in controversy. *See id.*(refusing to include claimed punitive damages in amount-in-controversy calculation where plaintiff failed to support claim for damages in complaint, in briefing, or at argument). Accordingly, plaintiffs' baseless request for an indeterminate amount of punitive damages cannot serve to raise the amount in controversy above the minimum statutory requirement.

*6 Similarly, plaintiffs' claim for attorneys' fees does not bring the amount in controversy to $75,000. Attorneys' fees can be considered as part of the amount in controversy only where the claimed fees are recoverable "as a matter of right," either under the state-law cause of action or under a contract between the parties. *See Givens v. W.T. Grant Co.,* 457 F.2d 612, 614 (2d Cir.1972), *vacated on other grounds by*409 U.S. 56 (1972); *see also Oscar Gruss & Son, Inc. v. Hollander*, 337

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 2516514 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 2516514 (S.D.N.Y.))**

F.3d 186, 199 (2d Cir.2003) ( "Under the general rule in New York, attorneys' fees are the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule.") Here again, plaintiffs merely request an award of attorneys' fees without providing an amount sought or a justification for the award. Accordingly, plaintiffs have failed to show that they are entitled to attorneys' fees as a matter of right.

### III. *Plaintiffs' Motion for Summary Judgment*

The discussion above demonstrates that the Court lacks jurisdiction over this action, insofar as the action is determined by the allegations and causes of action asserted in plaintiffs' complaint. However, in their summary judgment papers, plaintiffs appear to move for summary judgment on a new cause of action. Completely ignoring (without explanation) the state-law causes of action asserted in the complaint, plaintiffs instead seek a summary declaratory judgment that "defendant Yan Feldman [is] liable for the unpaid state and federal payroll taxes of Best Care."(Pl.Mem.1 .) Feldman rightly interprets plaintiffs' claim as a "request for relief under the Declaratory Judgment Act, 28 U.S.C. § 2201."(Def.Mem.6.)

Plaintiffs' complaint, however, does not seek declaratory relief or mention the Declaratory Judgment Act ("DJA"), nor do plaintiffs seek leave to amend the complaint to add such a claim. Accordingly, plaintiffs' complaint can be dismissed without regard to their attempt to advance a new claim in their summary judgment briefing. However, in an abundance of caution, the Court will evaluate plaintiffs' newly advanced claim to determine whether that claim, if allowed, would provide a basis for jurisdiction over this action. For the reasons given below, it would not.

### A. *Plaintiffs Do Not Present a Justiciable Controversy with Feldman*

Plaintiffs' request for declaratory relief is predicated entirely on 26 U.S.C. § 6672 and its New York counterpart, N.Y. Tax Law § 685. Both statutes govern an individual's liability to the respective tax authorities for unpaid taxes owed by a corporation, and plaintiffs assert that under the statutes Feldman is accountable to the IRS and New York State for Best Care's tax liability. However, Feldman's liability to the federal or state governments is a matter between Feldman and those governments; it is not a justiciable dispute as between Feldman and plaintiffs.

*7 It cannot be denied that plaintiffs and Feldman hold different views regarding the parties' respective tax liabilities. However, the mere existence of a disagreement about a legal question does not create a justiciable issue proper for resolution by the federal courts. Rather, "the question is whether [the plaintiff] is a proper party to request an adjudication of a particular issue."*Flast v. Cohen,* 392 U.S. 83, 99-100 (1968). To be a justiciable dispute, the issue must "be definite and concrete, touching the legal relations of parties having adverse legal interests," and "a real and substantial controversy admitting of specific relief through a decree of a conclusive character."*Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 241-42 (1937).

Plaintiffs' request for a declaratory judgment involves Feldman's tax liabilities to federal and state tax authorities. That issue is between Feldman and those authorities, not between Feldman and plaintiffs. The statutes relied upon by plaintiffs do not create any liability on the part of Feldman in favor of plaintiffs, nor do they purport to create a cause of action in plaintiffs to compel Feldman to pay any sum he might owe to either government. The statutes merely create a right on the part of the respective governments to collect unpaid taxes from certain individuals. Accordingly, plaintiffs are not "proper part[ies] to request an adjudication" of liability under those statutes.*Flast,* 392 U.S. at 99.

The fact that Feldman's tax liability may, in some way, affect what plaintiffs wind up paying on Best

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 2516514 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 2516514 (S.D.N.Y.))

Care's tax liability does not make plaintiffs' newly-asserted claims justiciable. Feldman's tax liability may affect plaintiffs' tax liability, in that if some or all of the overdue payroll taxes are collected from Feldamn the tax authorities may not seek those sums from plaintiffs. The statutes in question, however, do not compel the tax authorities to look to Feldman, even if he is liable under their terms. The tax authorities may seek recovery of what is owed from Best Care, or from Bernshteyn, if he is liable under the statutes, even if Feldman is also liable. If plaintiffs wish to challenge their own liability to the IRS or New York State, they must do so in an action against those parties, not against Feldman; if plaintiffs believe that the tax authorities legally may and in their discretion should seek to recover from Feldman instead of from them, they are free to suggest that plan to the relevant government officials. But they cannot compel those officials to seek recovery from Feldman, even if he is in principle liable. As far as plaintiffs are concerned, Feldman's liability to the federal or state authorities is a purely hypothetical question.[FN7]

> FN7. Plaintiffs' request for a declaratory judgment can be framed in one of two ways, each of which is nonjusticiable. If plaintiffs seek a declaratory judgment regarding Feldman's liability to the tax authorities, plaintiffs are not proper parties to present that issue in this Court. Feldman's tax liability under the statutes relied upon by plaintiffs is to be decided between Feldman and the tax authorities, not between plaintiffs and Feldman. Alternatively, if plaintiffs seek a declaratory judgment regarding their own tax liability, that issue cannot be raised in this action either. Plaintiffs' tax liability is an issue between plaintiffs and the federal and state tax authorities, neither of which has been joined in this action. If plaintiffs wish to challenge their own tax liability, they must bring an action against the appropriate parties. See Fed.R.Civ.P. 19; see also

*Donovan v. Campion,* 85 F. 71, 72 (8th Cir.1898) ("Every indispensable party must be brought into court, or the suit will be dismissed.").

Accordingly, plaintiffs' request for a declaratory judgment would not raise a justiciable dispute capable of resolution by this Court.[FN8]

> FN8. It should be noted that plaintiffs do not seek, either in their complaint or in their summary judgment motion, a declaratory judgment regarding Feldman's liability *to them* under the *state-law* causes of action asserted in the complaint. As formulated in the summary judgment motion, plaintiffs' request for declaratory judgment in connection with their tax liability is predicated exclusively on 26 U.S.C. § 6672 and N.Y. Tax Law § 685. (Pl.Mem.5-8.) The Court expresses no opinion regarding its jurisdiction to adjudicate an action seeking a declaration of Feldman's state-law liability to plaintiffs for plaintiffs' tax liability to the federal or state governments, as plaintiffs have never sought such relief.

**B.** *Plaintiffs Cannot Adjudicate Tax Liabilities Under the DJA*

*8 Even if plaintiffs asserted their claims for declaratory relief against the proper parties, the Court would still be unable to grant the relief they seek. The DJA does not permit taxpayers to adjudicate their federal tax liability in this Court, and the Tax Injunction Act, 28 U.S.C. § 1341 ("TIA") applies that same bar with respect to plaintiffs' state tax liabilities.

*1. Plaintiffs' Federal Tax Claim*

Plaintiffs seek a declaratory judgment that Feldman is liable for Best Care's unpaid federal payroll tax because Feldman is a responsible person under 26 U.S.C. § 6672(a). Moreover, plaintiffs assert that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 2516514 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 2516514 (S.D.N.Y.))

Page 9

"Feldman is the *[o]nly* [i]ndividual [l]iable for Best Care's [u]npaid [t]axes."(Pl. Reply 3; emphasis added.) The relief plaintiffs seek would require this Court to determine the liability of either Bernshteyn or Feldman or both with respect to the IRS, a determination that is not permitted under the DJA.

The DJA explicitly exempts claims "with respect to Federal taxes" from its general creation of a cause of action. 28 U.S.C. § 2201. "Every court which has considered the question has ruled that suits to restrain the collection of assessments under § 6672... are prohibited."*Botta v. Scanlon,* 314 F.2d 392, 393 (2d Cir.1963). Plaintiffs recognize this prohibition, but argue that their action does not seek to restrain the collection of assessments by the IRS. Rather, they assert that they seek to do just the opposite-obtain a declaration that the IRS *can* assess Best Care's taxes against Feldman. (Pl. Supplemental Resp. 3.)

This argument fails for two reasons. First, plaintiffs seek a declaration that Feldman is the "[o]nly" individual liable for Best Care's taxes. (Pl.Reply.3.) Such a declaration would effectively restrain the IRS's ability to assess taxes against individuals other than Feldman, such as Bernshteyn. Second, while a determination in plaintiffs' favor that Feldman *is a* responsible person would not frustrate the IRS's ability to assess taxes against Feldman, the applicability of the DJA's prohibition against resolving federal tax matters is not dependant upon which side is ultimately victorious. A determination by the Court that Feldman *is not* a responsible person under 26 U.S.C. § 6672 would certainly frustrate the collection of taxes by the IRS, and therefore the matter is beyond the relief allowed under the DJA. The statute does not state that it exempts matters involving federal taxes, unless the Court resolves the matter in favor of the IRS.

The Court of Appeals's decision in *Bullock v. Latham,* 306 F.2d 45 (2d Cir.1962), does not compel a contrary conclusion. *Bullock* involved two natural persons and a corporation, each of whom owed money to the IRS. *Id.* at 45-46.In connection with the individuals' tax liability, the IRS seized real and personal property belonging to the individuals. Plaintiffs argued that some of the property that was credited to the corporation's tax liability should have been credited to their liability, because the property at issue belonged to them. Defendant, the Commissioner of the IRS, argued that the Court could not hear the claim because of the DJA's exemption for claims involving federal taxes. The Court rejected this argument, concluding that the DJA's exclusion was not so broad as to apply to any claim that involved federal taxes in any way. The Court concluded that the DJA permitted plaintiffs' claim, because the "only real question is whether [a plaintiff] or [the corporation] owned the machinery and fixtures [at issue]."*Id.* at 46.Notably, plaintiffs did not seek a declaration regarding any party's liability to the IRS. Rather, each party's liability was conceded. The only question for the court was who owned certain seized property (and thus whose liability should have been offset by the seizure).

*9 In the present matter, plaintiffs assert that it "is certainly no concern of the IRS' [s] that plaintiffs seek compensation from defendant for tax liabilities that arose as a result of defendant's malfeasance or misfeasance."(Pl. Supplemental Resp. 3.) That statement is correct with respect to those state-law causes of action that plaintiffs actually asserted in the complaint. However, the declaratory judgment plaintiffs seek in their summary judgment papers does not concern the relationship between plaintiffs and Feldman. Rather, plaintiffs seek a declaration-based on 26 U.S.C. § 6672, which governs the liability between Feldman *and the IRS*-that Feldman, and not Bernshteyn, is the only individual to whom the IRS can look for Best Care's unpaid payroll taxes. The DJA does not vest the Court with the power to address that liability in this action.

Accordingly, the DJA would not provide plaintiffs with a cause of action for their claim regarding Feldman's liability to the IRS under § 6672.

*2. Plaintiffs' State Tax Claim*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 10
Not Reported in F.Supp.2d, 2006 WL 2516514 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 2516514 (S.D.N.Y.))**

The DJA's exemption discussed above applies only to federal taxes, and therefore the above conclusion with respect to the DJA would not bar plaintiffs' request for a declaratory judgment with respect to Feldman's state tax liability. However, irrespective of the DJA, the TIA deprives the Court of jurisdiction over plaintiffs' request.

"[T]he [TIA] prohibits a federal district court, in most circumstances, from issuing an injunction enjoining the collection of state taxes."*Grace Brethren Church v. United States,* 457 U .S. 393, 408 (1982).[FN9] Here, plaintiffs do not seek to enjoin the collection of state taxes, but seek a declaratory judgment regarding Feldman's tax liability. However, because the purpose of the TIA is to "divest[ ] the federal courts of jurisdiction to interfere with state tax administration,"*id.* at 410 n. 22, the TIA "prohibits declaratory as well as injunctive relief,"*id.* at 411.However, unlike the DJA's exemption for federal taxes, which simply removes federal tax matters from the DJA's creation of a cause of action, the TIA's prohibition entirely deprives this Court of jurisdiction over state tax matters. *See id.* at 408.Therefore, the above discussion regarding this Court's inability to grant the relief plaintiffs seek with respect to federal tax liability applies a fortiori to plaintiffs' claims with respect to state tax liability.

> FN9. The TIA's bar does not apply if the state does not provide in appropriate remedy in state court. *Hattem v. Schwarzenegger,* 449 F.3d 423, 427 (2d Cir.2006). Plaintiffs do not allege that New York State does not provide them with an appropriate forum to dispute their tax liability.

Accordingly, the Court lacks jurisdiction over plaintiffs' request for declaratory relief regarding Feldman's state tax liability.

## CONCLUSION

Because the Court does not have jurisdiction over

this action, defendant's motion to dismiss is granted and the complaint is dismissed. The Clerk of the Court is respectfully directed to close plaintiffs' and defendant's motions (Doc.23, 43) for purposes of all internal reports, and to close the case.

SO ORDERED.

S.D.N.Y.,2006.
Bernshteyn v. Feldman
Not Reported in F.Supp.2d, 2006 WL 2516514 (S.D.N.Y.)
END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IRA NATHEL and SHELDON NATHEL,

                Plaintiffs,

       -against-

RICHARD SIEGAL, GEORGE COLEMAN,
HARVEY JOSEPHSON, ROBERT A. TREVISANI,
PAUL HOWARD, RICHARD S. GURALNICK;
SCHAIN LEIFER GURALNICK; BISTATE OIL
MANAGEMENT CORPORATION, SS&T
HOLDING CO., LLC, PALACE EXPLORATION
COMPANY, TAH DRILLING CO., INC., TAQ
DRILLING CO., INC., OIL AND GAS TITLE,
HOLDING CORPORATION, JOHN DOES 1-20;
JOHN DOE CORPORATIONS 1-20; JOHN DOE
LLCs 1-20; and JOHN DOE LLPs 1-20,

                Defendants.

07 CV 10956 (LBS)(HBP)

**CERTIFICATE OF SERVICE**

I, John H. Eickemeyer, declare, pursuant to 28 U.S.C. 1746, under penalty of perjury that on the 26th day of June, 2008, I caused a copy of the **Memorandum in Opposition to Plaintiffs' Cross-Motion to Amend and in Further Support of Motion to Dismiss the First Amended Complaint by Defendants Richard S. Guralnick and Schain Leifer Guralnick** to be served upon all counsel who have made appearances in the above-captioned action by electronically filing same, thereby ensuring that counsel to each such party received same, as registered e-filers who are registered to receive e-notices in this case.

                                      s/ John H. Eickemeyer
                                    JOHN H. EICKEMEYER