UNITED STATES DISTRICT COURT      **FILED ELECTRONICALLY**
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

IRA NATHEL AND SHELDON NATHEL,     :

         Plaintiffs,       :

     - against -       :

RICHARD SIEGAL, GEORGE COLEMAN,    :    07 CIV. 10956 (LBS) (HBP)
HARVEY JOSEPHSON, ROBERT A.
TREVISANI, PAUL HOWARD, RICHARD S.    :
GURALNICK, SCHAIN LEIFER GURALNICK,
BISTATE OIL MANAGEMENT        :
CORPORATION, SS&T HOLDING CO., LLC,
PALACE EXPLORATION COMPANY, TAH    :
DRILLING CO., INC., TAQ DRILLING CO.,
INC., OIL AND GAS TITLE, HOLDING     :
CORPORATION, JOHN DOES 1-20; JOHN DOE :
CORPORATIONS 1-20; JOHN DOE LLCs 1-20;
and JOHN DOE LLPs 1-20,       :

         Defendants.       :

                            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM OF LAW OF DEFENDANTS GEORGE COLEMAN
AND ROBERT A. TREVISANI IN FURTHER SUPPORT
OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED
COMPLAINT AND IN OPPOSITION TO PLAINTIFFS'
CROSS-MOTION TO FILE A PROPOSED SECOND AMENDED COMPLAINT**

STILLMAN, FRIEDMAN &
SHECHTMAN, P.C.
425 Park Avenue
New York, NY 10022
(212) 223-0200

*Attorneys for Defendants George Coleman
and Robert A. Trevisani*

## **TABLE OF CONTENTS**

                                                                    **PAGE**

Table of Contents.............................................................................. i

Table of Authorities......................................................................... ii

Preliminary Statement ....................................................................1

ARGUMENT .....................................................................................2

POINT I:     THE NEW AIDING AND ABETTING CLAIM IS
             NOT WELL-PLEADED (PROPOSED FOURTH CLAIM) ...................3

     A.      Plaintiffs Do Not Adequately Allege "Actual Knowledge".....................4

     B.      Plaintiffs Do Not Adequately Allege "Substantial Assistance" ...............8

POINT II:    THE NEW BREACH OF CONTRACT CLAIMS
             FAIL (PROPOSED FIFTH AND SIXTH CLAIMS)............................11

     A.      Plaintiffs Rely on a Nonexistent "Obligation" .........................................11

     B.      Plaintiffs Misstate and Ignore the Partnership Agreements ...................13

     C.      Plaintiffs Cannot Sue Coleman and Trevisani
             for Damages on a Partnership Agreement Breach...................................14

POINT III:   THE NEW BREACH OF FIDUCIARY DUTY CLAIMS ARE
             DEFICIENT (PROPOSED EIGHTH AND NINTH CLAIMS) .............16

CONCLUSION .................................................................................19

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page**

*Alpert v. Haimes*, 64 Misc. 2d 608, 315 N.Y.S.2d 332 (Sup. Ct. Queens Cty. 1970)...................12

*Armstrong v. McAlpin,* 699 F.2d 79 (2d Cir.1983).......................................................................10

*Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171 (2d Cir. 2001) ............................................17

*Cromer Finance Ltd. v. Berger*, 137 F. Supp. 2d 452 (S.D.N.Y. 2001) ........................................10

*Filler v. Hanvit Bank*, 339 F. Supp. 2d 553 (S.D.N.Y. 2004), *aff'd*, 156 Fed. App'x 413
  (2d Cir. 2005) .......................................................................................................................4, 7

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349
  (S.D.N.Y. 2007)............................................................................................................................ 9

*Friedman v. Golden Arrow Films, Inc.*, 442 F.2d 1099 (2d Cir. 1971) ........................................14

*Furman v. Cirrito*, 828 F.2d 898 (2d Cir. 1987) ............................................................................6

*Granite Partners, L.P. v. Bear, Stearns & Co., Inc.*, 17 F. Supp. 2d 275 (S.D.N.Y. 1998)..........17

*Greene v. Hanover Direct, Inc.*, 2007 WL 4224372 (S.D.N.Y. Nov. 19, 2007)...........................17

*Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2d Cir. 1995).....................................................6

*In re Bayou Hedge Fund Litig.*, 2007 WL 2319127 (S.D.N.Y. July 31, 2007) ............................17

*In re Yukos Oil Co. Sec. Litig.*, 2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006)................................6

*Int'l Audiotext Network, Inc. v. AT&T*, 62 F.3d 69 (2d Cir. 1995)..................................................6

*Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*, 475 F. Supp. 2d 456 (S.D.N.Y.
  2007)......................................................................................................................................13

*JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247 (S.D.N.Y. 2005) ................................10

*Lanzi v. Brooks*, 54 A.D.2d 1057, 388 N.Y.S.2d 946 (3d Dep't 1976), *aff'd*, 43 N.Y.2d 778,
  402 N.Y.S.2d 384 (1977)............................................................................................................5

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006) ...............................................................4

*Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243 (2d Cir. 2002).....................................................3

*Morris v. Crawford*, 281 A.D.2d 805, 722 N.Y.S.2d 296 (3d Dep't 2001) .................................14

*Nanopierce Tech., Inc. v. Southridge Capital Mgmt. LLC,* 2003 WL 22052894
  (S.D.N.Y. Sept. 2, 2003).............................................................................................................17

*Nat'l Westminster Bank USA v. Weksel*, 124 A.D.2d 144, 511 N.Y.S.2d 626
  (1st Dep't 1987)..................................................................................................................8, 9, 10

*Rosner v. Bank of China,* 528 F. Supp. 2d 419 (S.D.N.Y. 2007) ....................................8

*Ryan v. Hunton & Williams,* 2000 WL 1375265 (E.D.N.Y. Sept. 20, 2000)................................8

*Superintendent of Ins. of State of New York v. Spira,* 289 A.D.2d 173, 736 N.Y.S.2d 1

(1st Dep't 2001)......................................................................................................10

*VTech Holdings, Ltd. v. PricewaterhouseCoopers, LLP,* 348 F. Supp. 2d 255

(S.D.N.Y. 2004).................................................................................................6, 8

*Yung v. Lee,* 432 F.3d 142 (2d Cir. 2005) ...................................................................6

## **Statutes**

28 U.S.C. § 1367(a)...............................................................................................3, 18

N.Y. P'ship Law §§ 40-45 (McKinney's 2006) ..........................................................13

Defendants George Coleman and Robert A. Trevisani respectfully submit this Memorandum of Law in further support of their motion to dismiss Plaintiffs' First Amended Complaint and in opposition to Plaintiffs' cross-motion to file a proposed Second Amended Complaint.

## Preliminary Statement

Faced with motions to dismiss their First Amended Complaint, Plaintiffs totally abandon it. Indeed, Plaintiffs offer no defense of their claims against Coleman, Trevisani and the other defendants. By that utter silence, and despite having come to court with serious allegations of wrongdoing, Plaintiffs now *admit* that they did not properly plead claims against Coleman and Trevisani.

Significantly, for example, Plaintiffs assert Section 10(b) securities fraud, common-law fraud and negligent misrepresentation without so much as alleging that Coleman or Trevisani made a single misrepresentation to them or otherwise played any role in Plaintiffs' making the investments in issue. Similarly, Plaintiffs assert legal malpractice against Trevisani by alleging nothing more than his being an attorney, failing entirely to offer well-pleaded facts that he provided legal services or even was Plaintiffs' lawyer. Plaintiffs also assert breach of fiduciary duty and breach of contract claims against Coleman and Trevisani that fail on many grounds. Confronted with these numerous, basic and glaring pleading failures, Plaintiffs now simply acquiesce, admitting that they filed a pleading that is indefensible.

Having conceded that the First Amended Complaint is a dead letter, Plaintiffs nonetheless "respond" to the dismissal motions by blithely seeking a "do-over" -- they now want to file a brand new pleading under the guise of cross-moving "to amend." As to Coleman and

Trevisani, Plaintiffs' proposed Second Amended Complaint omits entirely the currently-pleaded Section 10(b), fraud, negligent misrepresentation and legal malpractice claims. Those claims, so the cross-motion accepts, are not well-pleaded. Instead, Plaintiffs come up with three new proposed claims against Coleman and Trevisani -- aiding and abetting co-defendants' alleged fraud, breach of contract and breach of fiduciary duty. The proposed fiduciary duty/contract-breach claims advance completely different theories than the ones in Plaintiffs' current complaint, and the aiding and abetting claim is wholly new-found. Furthermore, Plaintiffs no longer try to allege any federal claim against Coleman and Trevisani, instead asserting only state law claims, while evidently premising subject-matter jurisdiction on supplemental jurisdiction. Plaintiffs also jettison much of the relief sought by the First Amended Complaint, again as a result of the (uncontested) showing that Plaintiffs do not properly allege injury.

Simply put, Plaintiffs' proposed amended pleading is an exercise in futility, proffering new but still deficient claims. The aiding and abetting claim fails to state essential elements properly. (Point I, below) The breach of contract claim is based on a nonexistent "obligation" and a clear misstatement of the partnership agreements; it also asserts a partnership accounting-like dispute that is not cognizable at law. (Point II) The breach of fiduciary duty claim is flat-out barred by preemption under New York's Martin Act, which covers the asserted "fraud." (Point III)

As Shakespeare wrote, "what's past is prologue." Plaintiffs' proposed new pleading can fare no better than its present, now-admittedly defective one.

## ARGUMENT

Because Plaintiffs make no effort to defend their First Amended Complaint, the only issue before the Court is whether they should be granted leave to file their proposed Second

2

Amended Complaint. "One appropriate basis for denying leave to amend is that the proposed amendment is futile. . . . An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citations omitted). Here, the Court should deny Plaintiffs leave to amend due to futility because none of the new claims against Coleman and Trevisani can withstand a pleadings dismissal.[1]

## POINT I

### THE NEW AIDING AND ABETTING CLAIM IS
### NOT WELL-PLEADED (PROPOSED FOURTH CLAIM)

Faced with the showing that their original common-law fraud claim fails (*see* Mem. at 19), Plaintiffs' proposed pleading drops the claim against Coleman and Trevisani. In its place, Plaintiffs proffer a claim that Coleman and Trevisani "aided and abetted" co-defendants' supposed fraud. As acknowledged (*see* Plaintiffs' Memorandum of Law, filed May 2, 2008 [Doc. No. 54; hereinafter "Pl. Mem."], at 29), to state this claim Plaintiffs must properly allege that: (1) an underlying fraud existed; (2) Coleman and Trevisani actually knew of the fraud; and

---

[1]     As noted, Plaintiffs' proposed pleading does not even allege a federal claim against Coleman and Trevisani, so subject-matter jurisdiction over them on the would-be state law claims can exist only by exercising supplemental jurisdiction. To do so, the Court must conclude that the state law claims are so related to Plaintiffs' proposed Section 10(b) claim against other defendants (the only federal claim sought now to be alleged) "that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). Of course, with the failure of the Section 10(b) claim at this early juncture, as co-defendants show is warranted, the common-law claims should be dismissed also. (*See* Coleman and Trevisani's Memorandum of Law in Support of Their Motion to Dismiss, filed Feb. 27, 2008 [Doc. No. 42; hereinafter "Mem."], at 19) In any event, the Court need not resolve supplemental jurisdiction at this juncture (or could assume it *arguendo*) because it arises on Plaintiffs' cross-motion to amend, and that motion should be denied because amendment is futile due to the pleading deficiencies of the proposed claims.

3

(3) they provided substantial assistance to advance the fraud. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006). Plaintiffs' proposed new claim fails to meet these requirements.[2]

## A.    Plaintiffs Do Not Adequately Allege "Actual Knowledge"

The particularity requirement of Rule 9(b) applies to a claim of aiding and abetting fraud, and a plaintiff must allege facts sufficient to give rise to a "strong inference" that the aider and abettor had actual knowledge of the fraud. *Id.* at 292-93. Thus, *constructive* knowledge of the underlying fraud -- that is, having only "possession of information which would cause a person exercising reasonable care and diligence to become aware of the fraud" -- is insufficient for establishing liability. *Filler v. Hanvit Bank*, 339 F. Supp. 2d 553, 557 (S.D.N.Y. 2004), *aff'd*, 156 Fed. App'x 413 (2d Cir. 2005).

For the fraud here, Plaintiffs allege a laundry list of 10 supposed misrepresentations that the co-defendants allegedly made to them. (*See* Proposed Cmpl. ¶ 105(a)-(j)) But their proposed pleading does not allege that Coleman or Trevisani *were ever aware* that the co-defendants had made any of these supposed misrepresentations to Plaintiffs. (*See* Proposed Cmpl. ¶¶ 122-127) As such, Plaintiffs fail to allege that Coleman and Trevisani actually knew that co-defendants had supposedly defrauded Plaintiffs. "Aiding and abetting" liability fails on this omission alone.

Moreover, of the numerous asserted misrepresentations, Plaintiffs acknowledge that almost all do not relate to Coleman and Trevisani and would not be within their knowledge. The sole allegation of a misrepresentation that Plaintiffs seek to link to Coleman and Trevisani is that "[t]he drill sites will be carefully chosen by the Managing Partner of the Partnership

---

[2]    Co-defendants show that the first element, an underlying fraud, is not well-pleaded, and Coleman and Trevisani join in that showing. We focus here on Plaintiffs' failure to plead the other two elements. We also join in co-defendants' other dismissal arguments.

(Coleman and/or Trevisani)." (Proposed Cmpl. ¶ 42(e); *see* ¶¶ 43, 53, 124, 125) Thus, in seeking to justify the new aiding and abetting claim, Plaintiffs say only that co-defendants represented that Coleman and Trevisani had "expertise to select drilling sites carefully" and to "completely manage" the partnerships' affairs; that "Coleman and Trevisani knew they had no such expertise"; and that, nonetheless, Coleman and Trevisani "knowingly" permitted themselves to be named as managing partners. (Pl. Mem. at 29)

However, a "misrepresentation" premised on Coleman and Trevisani having expertise in selecting drilling sites is not actionable as a matter of law. Plaintiffs' allegations acknowledge that publicly available information and documents contradict this claimed misrepresentation, thus showing that Plaintiffs would or should have known when they invested about Coleman and Trevisani's now-claimed lack of expertise. Specifically, Plaintiffs allege, on information and belief, that neither Coleman nor Trevisani had expertise in the selection of oil and gas drill sites because Coleman was the CEO of a children's camp and Trevisani was an attorney -- premising this assertion entirely "upon [Coleman/Trevisani's] published employment and background." (Proposed Cmpl. ¶¶ 16, 17) If this information were deemed sufficient for Plaintiffs' current claim that Coleman and Trevisani lacked expertise, it was more than sufficient to have put them on notice as to Coleman and Trevisani's experience at the time they invested. As such, Plaintiffs' could not have justifiably relied upon any alleged contrary representation. "[I]n order to be actually deceived by a false representation, a party must not only reasonably believe that the representation is true, but he must also be justified in taking action in reliance thereon." *Lanzi v. Brooks*, 54 A.D.2d 1057, 1058, 388 N.Y.S.2d 946, 948 (3d Dep't 1976), *aff'd*, 43 N.Y.2d 778, 402 N.Y.S.2d 384 (1977).

Indeed, the investment documents themselves similarly negate "misrepresentation" premised on Coleman and Trevisani's role. The Subscription Agreements on which Plaintiffs acquired the investments expressly *exculpate* Coleman and Trevisani for drilling-site selection, providing that "[t]he Managing Partner shall have no liability to any Partner with respect to the selection of such [drilling] properties for the Partnership . . . ." (*See* Subscription Agreements for Indian Village, Condor and Hurricane Partnerships, at p. 2 of each, attached as Exhibits 1-6 to the accompanying Declaration of Scott M. Himes [the "Himes Decl."]) "To be sure, a court is not required to accept as true allegations that are contradicted by documentary evidence that may be considered on a motion to dismiss." *VTech Holdings, Ltd. v. PricewaterhouseCoopers, LLP,* 348 F. Supp. 2d 255, 263 (S.D.N.Y. 2004); *accord In re Yukos Oil Co. Sec. Litig.*, 2006 WL 3026024, at *12 (S.D.N.Y. Oct. 25, 2006) ("The Court need not accept as true any allegations that are contradicted by documents deemed to be part of the complaint, or materials amenable to judicial notice.") (citing *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)).[3]

---

[3]    The Court can consider the Subscription Agreements on this motion (as well as the partnership agreements, discussed below) because Plaintiffs' proposed complaint incorporates them by reference, being part of the investment documents integral to Plaintiffs' proposed claims. *See Yung v. Lee,* 432 F.3d 142, 146 (2d Cir. 2005) ("In addition to the allegations in the complaint, we also consider on a Rule 12(b)(6) motion . . . 'any statements or documents incorporated in it by reference,' and any document not incorporated but that is, nevertheless, 'integral' to the complaint because the complaint 'relies heavily upon its terms and effect.'") (citations omitted); *Int'l Audiotext Network, Inc. v. AT&T,* 62 F.3d 69, 72 (2d Cir. 1995) ("[T]he complaint is deemed to include . . . any statements or documents incorporated in it by reference . . . . Moreover, when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (quotation marks & citations omitted); *Furman v. Cirrito,* 828 F.2d 898, 900 (2d Cir. 1987) (relying on partnership agreement, which was an "integral part[] of [plaintiffs'] claim and of the record before us," in affirming Rule 12(b)(6) dismissal).

6

Thus, publicly available information about Coleman and Trevisani's professional background was available to Plaintiffs, and the investment materials even informed Plaintiffs that Coleman and Trevisani could not be held responsible for site selection. Plaintiffs therefore cannot premise fraud on Coleman and Trevisani "falsely [holding] themselves out to Plaintiffs as having the expertise to choose drill sites carefully for the Partnerships" (Proposed Cmpl. ¶ 53); nor can Plaintiffs be deemed to allege that Coleman and Trevisani "knew" that the co-defendants had falsely represented that the managing partners would be responsible for site selection. Lacking justifiable reliance as a matter of law, Plaintiffs' proposed fraud claim premised on the alleged misrepresentation about Coleman and Trevisani's expertise and responsibilities for site selection is not well-pleaded -- and assuredly a claim for secondary liability premised on "knowledge" of that fraud is all-the-more deficient.[4]

The actual knowledge element is not well-pleaded for another reason. While Plaintiffs vaguely allege that Coleman and Trevisani, having signed partnership documents as managing partners, permitted false information to be included in the documents (*see* Proposed Cmpl. ¶¶ 53, 124-126), that allegation is, at most, "should have known" constructive knowledge; it is not a factual allegation that they *actually knew* the co-defendants had fraudulently induced Plaintiffs to invest based on the documents. *See Filler*, 339 F.Supp. 2d at 557. Indeed, any assertion that Coleman and Trevisani knew of the fraud simply because they were the managing partners who theoretically had access to partnership documents is insufficient as a matter of law

---

[4]     Similarly, the proposed pleading alleges that co-defendants improperly represented that Coleman and Trevisani generally had "expertise" to manage the partnerships and would "completely manage the affairs of the Partnership," but that Coleman and Trevisani "knew they would not perform" their managing partner duties. (Proposed Cmpl. ¶¶ 105(d), 107(f), 124, 125) These allegations are devoid of concrete facts, and they are far too conclusory to plead the requisite knowledge of a fraud with particularity.

to plead actual knowledge. *See, e.g., VTech Holdings,* 348 F. Supp. 2d at 269 (allegation that auditor had unlimited access to the books and records of the entity committing fraud not sufficient to plead actual knowledge); *Ryan v. Hunton & Williams*, 2000 WL 1375265, at *8-9 (E.D.N.Y. Sept. 20, 2000) (allegation that bank knew of "red flags" suggesting client was using its accounts for fraudulent activities not enough to allege actual knowledge); *Nat'l Westminster Bank USA v. Weksel*, 124 A.D.2d 144, 147-48, 511 N.Y.S.2d 626, 628-29 (1st Dep't 1987) (allegation that law firm had access to all of client's papers not sufficient to plead actual knowledge). Thus, merely alleging that Coleman and Trevisani signed documents that contained supposedly false statements -- particularly given Plaintiffs' inability to allege knowledge that the documents were used to perpetrate a fraud -- is legally insufficient to plead actual knowledge for aiding and abetting liability.

**B.    Plaintiffs Do Not Adequately Allege "Substantial Assistance"**

To establish "substantial assistance" for an aiding and abetting claim, a complaint must contain well-pleaded allegations showing that:  (1) a defendant "affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed"; and (2) the aider/abettor's actions "proximately caused the harm on which the primary liability is predicated." *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 426 (S.D.N.Y. 2007) (internal citations & quotation marks omitted; citing cases).

Plaintiffs' proposed pleading is devoid of well-pleaded facts for this showing. The universe of the "assistance" allegations is that Coleman and Trevisani "worked with Siegal" on the partnerships "by holding themselves out, and permitting Siegal to hold them out," as having expertise in the oil and gas industry; "allow[ed] their names to be utilized" and "permitted [themselves] to be named" as managing partners; "executed as Managing Partner" the

8

Partnership Agreements; and "agreed to be . . . used" by co-defendants to make the partnerships "appear legitimate." (Proposed Cmpl. ¶¶ 4, 46, 53, 124, 126)  But these sparse and conclusory allegations do not plead that Coleman and Trevisani acted affirmatively, actually concealed anything, or even failed to act in the face of some legal duty so as to have advanced the asserted fraud.

Even construing the allegations entirely in Plaintiffs' favor, they amount only to status-based generalities, suggesting simply that Coleman and Trevisani agreed to serve as managing partners.  Such allegations -- lacking any particularized *conduct* facts -- cannot be morphed into assisting others in committing fraud.

For example, while Plaintiffs refer to a supposed misrepresentation about Coleman and Trevisani in the Investment Proposal (*see* Proposed Cmpl. ¶¶ 42(e), 124-125), the proposed claim fails to allege that Coleman or Trevisani assisted in the preparation or dissemination of the document. *See Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 371 (S.D.N.Y. 2007) ("[I]n the context of an aiding and abetting claim, where the alleged primary violations consist of misrepresentations in a document, the defendant must be alleged to have given substantial assistance to the making and dissemination of that document."). Similarly, as in their prior pleading (*see* Mem. at 2, 6, 10-11, 13-14), the proposed Complaint lacks an allegation that Coleman or Trevisani played any role in Plaintiffs' making their investments or even that they had any dealings with Plaintiffs at that time.  As one court has observed, a complaint that "is barren of any allegation of even the most minimal contact or relationship" between a plaintiff and supposed aider-and-abettor defendant is unlikely to plead "substantial assistance" for liability.  *See Nat'l Westminster Bank*, 124 A.D.2d at 148, 511 N.Y.S.2d at 629.

9

Indeed, highlighting their failure to plead *facts* of substantial assistance, Plaintiffs offer the sophistry that Coleman and Trevisani "provided substantial assistance to advance the fraud" by "assisting the Siegal Defendants in perpetrating the fraud." (Proposed Cmpl. ¶ 126) Likewise, the allegations do not remotely show that Plaintiffs invested because Coleman and Trevisani undertook to serve as managing partners, thus also failing to plead the requisite proximate cause. *See Cromer Finance Ltd. v. Berger*, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001) (for substantial assistance proximate cause, "'[b]ut-for' causation is insufficient; aider and abettor liability requires the injury to be a direct or reasonably foreseeable result of the conduct").

Finally, the allegations that Coleman and Trevisani passively "allowed" themselves to be held out as oil and gas experts does not, as a matter of law, constitute "substantial assistance." *See Armstrong v. McAlpin,* 699 F.2d 79, 92 (2d Cir.1983) ("Awareness and approval, standing alone, do not constitute substantial assistance."); *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 258 (S.D.N.Y. 2005) ("Mere presence, and passive receipt of email, cannot, by definition, constitute affirmative assistance."); *Superintendent of Ins. of State of New York v. Spira,* 289 A.D.2d 173, 174, 736 N.Y.S.2d 1, 2 (1st Dep't 2001) (aider and abettor liability cannot be predicated on silence); *Nat'l Westminster Bank*, 124 A.D.2d at 148, 511 N.Y.S.2d at 629 ("We know of no case where mere inaction by a defendant has been held sufficient to support aider and abettor liability for fraud."). Having alleged nothing more than awareness and acquiescence in partnership matters (and involving circumstances which existed even before Plaintiffs invested, in a context thus lacking any duty-bound failure to act), Plaintiffs' proposed aiding and abetting claim fails adequately to plead substantial assistance.

10

**POINT II**

## THE NEW BREACH OF CONTRACT CLAIMS
## FAIL (PROPOSED FIFTH AND SIXTH CLAIMS)

On the original breach of contract claim, we showed that Plaintiffs sued based on numerous agreements to which neither they nor Coleman or Trevisani were parties and without even alleging the specific contractual terms supposedly breached. (Mem. at 22-23) Plaintiffs' proposed breach of contract claim is more of the same.

**A.     Plaintiffs Rely on a Nonexistent "Obligation"**

Plaintiffs now seek to allege a contractual breach with respect to the partnerships' financing structure.  According to the proposed complaint, the Investment Proposals on which Plaintiffs relied provided that instead of receiving distributions in full from the partnership's income, a partner at a certain point could assign a specified percentage of future distributions back to the partnership, which the partnership would use to purchase marketable securities; those securities, in turn, would be used eventually to pay off partnership debt. (Proposed Cmpl. ¶¶ 48, 68, 77, 83)  Plaintiffs seek to allege that Coleman and Trevisani breached the partnership agreements by failing to remit these distributions "under the guise of withholding them to purchase securities," while allegedly "no such securities were ever purchased." (Proposed Cmpl. ¶ 5; *see* ¶¶ 128-140 [Fifth Claim, Coleman] ¶¶ 141-152 [Sixth Claim, Trevisani])[5]

Plaintiffs base this new contract claim only on the partnership agreements, keying on a supposed obligation to pay distributions. (Proposed Cmpl. ¶¶ 129-133, 142-146) But it is crystal clear that any contractual obligation to pay distributions was *a partnership* obligation, not

---

[5]     Properly viewed, this claim asserts "mismanagement" of the business causing harm to the partnerships and therefore is a derivative claim, not one on which Plaintiffs can sue individually. (*See* Mem. at 23-24 n.10)  Nonetheless, we address the deficiencies of the claim even assuming *arguendo* that it sounds in contract.

11

a managing partner's personal obligation.  Under the partnership agreements, the distributions paid to partners are the "cash revenues" remaining after payment of "the obligations incurred for drilling, operation and development of the Partnership Property," together with other partnership cost items.  (*See* Agreement and Certificate of Partnership of Indian Village Drilling Company, § 5.03; attached as Ex. 7 to the Himes Decl.)  Quite simply, a distribution due the partners is the partnership's cash remaining after its expenses are deducted from its revenues.[6]

As such, and as is common sense, the partnerships' obligation to pay distributions -- and the specific financing provision of withholding distributions for purchasing securities -- is not a managing partner's personal obligation in contract. *See Alpert v. Haimes*, 64 Misc. 2d 608, 610, 315 N.Y.S.2d 332, 336 (Sup. Ct. Queens Cty. 1970) (plaintiff-limited partners brought accounting claim, alleging "wrongful failure to distribute partnership profits"; court noted that "[t]he obligation to distribute partnership profits pursuant to the partnership agreement runs *from the partnership* to the individual limited partners") (emphasis added).

Plaintiffs' proposed complaint acknowledges this.  It alleges: "Pursuant to the Indian Village Investment Proposal regarding the withholding of distributions to the investors to buy securities to pay off the Subscription Note, Plaintiffs agreed *with the Partnership* through the Managing Partner to this partial withholding . . . ."  (Proposed Cmpl. ¶ 68 [emphasis added]; *see* ¶ 77 [same allegation concerning Condor])  In fact, Plaintiffs further assert that the arrangement of withholding distributions is not even based on the partnership agreements themselves, but rather on "related agreements" -- and ones where, again, "Plaintiffs agreed *with the*

---

[6]      The agreements for the Condor and Hurricane partnerships include substantially the same distribution provision as the Indian Village agreement.  (*See* Exs. 8 and 9 to Himes Decl., § 5.03.)

*Partnerships*" to the arrangement.  (Proposed Cmpl. ¶ 132 [claim against Coleman; emphasis added]; *see* ¶ 145 [same allegation in claim against Trevisani]; Pl. Mem. at 30 [asserting as contract damages distribution amounts withheld "by the partnerships"])

In short, Plaintiffs' proposed allegations repeatedly admit that any contractual obligation respecting the withholding of distributions for funding the securities purchases runs only to the partnerships.  Similarly, while New York law governs the partnerships (*see* Exs. 7, 8 and 9 to Himes Decl., at p. 1) and specifies partners' rights and obligations *inter se* (*see* N.Y. P'ship Law §§ 40-45 (McKinney's 2006)), Plaintiffs fail to invoke any Partnership Law provision as a basis for suing Coleman and Trevisani individually in contract.

**B.    Plaintiffs Misstate and Ignore the Partnership Agreements**

Undeterred by their own allegations or the law, Plaintiffs still seek to assert that Coleman and Trevisani were "required" to make distributions, referring to Section 6 of the partnership agreements.  (Proposed Cmpl. ¶¶ 133, 146)  But Plaintiffs invoke Section 6 without quoting or attaching it for the Court's consideration.  In truth, Section 6 does *not* contain any provision "requiring" or otherwise obligating the managing partners to make distributions.  (*See* Exs. 7, 8 and 9 to Himes Decl., § 6)  Having been forced to come forward with a specific contractual term supposedly breached, Plaintiffs resort to misstatement.[7]

---

[7]    Indeed, the closest that Section 6 comes to Plaintiffs' misstated allegation is the provision that a managing partner has "the power and authority" to "distribute Partnership income at such times as, and to the extent that the Managing Partner determines[,] there is sufficient cash on hand not needed for the Partnership requirements."  (Exs. 7 and 8 at 6.01(m), Ex. 9 at 6.01(*l*), to Himes Decl.)  Authorizing the managing partner to make distributions cannot possibly be construed to mean that the managing partner is himself contractually liable for the distributions. *See, e.g., Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*, 475 F. Supp. 2d 456, 461-62 (S.D.N.Y. 2007) (defendant who signed limited partnership agreement as "principal" could have fiduciary duty to limited partners but "did not assume such a duty as a contractual obligation").

While Plaintiffs misstate Section 6, they also ignore its managing-partner exculpation provision. The partnership agreements provide that the managing partner "shall not be liable, responsible or accountable to any of the Partners" for any loss or damage resulting from a managing partner's error in judgment, or other acts or omissions for the partnership, done or omitted in good faith and reasonably believed to be within the scope of his authority, unless occurring with "gross negligence" or "willful misconduct." (Exs. 7, 8, and 9 to Himes Decl., § 6.04) Although it hardly matters, since the distribution obligation does not even apply to Coleman and Trevisani personally, Plaintiffs' proposed breach of contract claim also fails because it does not plead facts to overcome the high culpability requirements of this exculpation protection.[8]

## C.    Plaintiffs Cannot Sue Coleman and Trevisani for Damages on a Partnership Agreement Breach

Finally, the general rule is that "partners cannot sue each other at law for a breach of a partnership agreement or with reference to partnership affairs before there has been a final accounting of the partnership assets." *Friedman v. Golden Arrow Films, Inc.*, 442 F.2d 1099, 1107 (2d Cir. 1971); *see* Mem. at 23 n.10. As one New York appellate court put it: "this general rule reflects the judicial desire to avoid entering into the day-to-day management of the partnership and to avoid piece-meal adjustments of the amount due each partner." *Morris v. Crawford*, 281 A.D.2d 805, 806, 722 N.Y.S.2d 296, 298 (3d Dep't 2001) (quotation marks &

---

[8]    Moreover, under some of the partnership agreements, Coleman and Trevisani are specifically exculpated for liability to any partners if "any taxing authorities disallow or adjust deductions or credits in the . . . Partner's income tax returns." (Exs. 7 and 8, § 6.04) Despite this provision, Plaintiffs' now-abandoned First Amended Complaint sued Coleman and Trevisani for (still speculative) deduction disallowances on their tax returns. (*See* Mem. at 5-6, 15-18)

citation omitted). Plaintiffs here do not allege, as they cannot, that there has been a final accounting for any of the partnerships.

Predictably, Plaintiffs contend that they fall within an exception to this rule, asserting that only "one transaction" is involved and a complicated accounting therefore is not necessary. (Pl. Mem. at 30-31) However, the distribution amounts, as noted above, are determined from calculating the partnerships' revenues against its expenses, which entails a broad examination of partnership accounts; Plaintiffs sue on quarterly distributions for several partnerships for several years each; and they allege that the distributions actually received were reduced, at various threshold levels for the different partnerships, by unspecified amounts for supposedly never-purchased securities. (*E.g.*, Proposed Cmpl. ¶¶ 48, 49, 58, 68, 77, 83, 132, 135-137, 143, 148-150)

As a result, Plaintiffs' new contract claims would involve a detailed accounting-like process to calculate the "correct" distributions based upon the allegedly withheld securities purchases -- and that process would involve numerous distributions, over several years, for multiple partnerships. The general rule barring a claim for damages at law against a partner, rather than the equitable remedy of a partnership accounting, also warrants rejecting Plaintiffs' new contract claims.[9]

---

[9] As an immaterial tag-along, Plaintiffs seek to allege breach of contract due to Coleman and Trevisani supposedly failing to maintain adequate books and records to reflect the partnerships' transactions for withheld distributions. (Proposed Cmpl. ¶¶ 134, 138, 147, 150) These allegations would, at most, amount to mismanagement of the business that could injure only the partnerships; as Plaintiffs recognize (*see* Pl. Mem. at 30 n.4), they lack standing to assert individual claims on allegations of harm to the partnerships. (*See* Mem. at 23-24 n.10) Not surprisingly, Plaintiffs fail to allege that they suffered damages unique to them as investors from this books-and-records "breach," and indeed there could be none.

## POINT III

### THE NEW BREACH OF FIDUCIARY DUTY CLAIMS
### ARE DEFICIENT (PROPOSED EIGHTH AND NINTH CLAIMS)

For their original breach of fiduciary duty claim, Plaintiffs assert unsupported allegations of "mismanagement," "fraudulent inducement," "failure to disclose" and the like. (*See* Cmpl. ¶ 141)  In moving to dismiss, Coleman and Trevisani showed that this claim both failed under Rule 9(b) and was barred as a matter of law based on Martin Act preemption. (Mem. at 19-22)  Plaintiffs now do not defend it.

Instead, mirroring the breach of contract claim, Plaintiffs proffer a new breach of fiduciary duty claim against Coleman and Trevisani:  that they withheld from Plaintiffs a portion of the partnership distributions that were intended under the financing structure for funding the purchase of marketable securities but then failed to assure that these securities were purchased. (Proposed Cmpl. ¶¶ 159-162 [Eighth Claim, Coleman]; ¶¶ 164-167 [Ninth Claim, Trevisani]) Remarkably, however, Plaintiffs seek to advance this newly morphed claim without even addressing the preemption law that bars it.

As we showed initially, a private plaintiff in New York cannot maintain a breach of fiduciary duty claim based on a securities transaction because the Martin Act vests the State Attorney General with exclusive enforcement authority over securities fraud.  (*See* Mem. at 20 & n.7 (citing cases))  As the Second Circuit explained:  "The New York Court of Appeals has held that there is no implied private right of action under the Martin Act, . . . and other New York courts have determined that sustaining a cause of action for breach of fiduciary duty in the context of securities fraud would effectively permit a private action under the Martin Act, which would be inconsistent with the Attorney-General's exclusive enforcement powers thereunder."

*Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 190 (2d Cir. 2001) (quotations marks & citation omitted).  As a consequence, the Southern District judges -- including this Court -- have routinely dismissed breach of fiduciary duty claims pleaded in securities fraud cases.[10]

While Plaintiffs now have completely revamped their fiduciary-breach claim, this well-established law -- which Plaintiffs simply ignore -- still precludes it.  Plaintiffs acknowledge that their partnership interests resulted from the purchase and sale of securities in New York (*see* Proposed Cmpl. ¶¶ 3, 9, 10, 98, 99; Pl. Mem. at 20 n.3), and they plead their new breach of fiduciary duty claim from the would-be securities fraud.

Specifically, Plaintiffs repeatedly allege that statements about the financing arrangement of withholding distributions were part of the misrepresentations that caused them to invest.  (*See* Proposed Cmpl. ¶¶ 48, 68, 77)  Thus, they assert that certain co-defendants "knew *when the Investment Proposals were provided to Plaintiffs* that the Partnerships would not buy marketable securities with distributions withheld from Plaintiffs."  (Proposed Cmpl. ¶ 49; emphasis added)

Indeed, Plaintiffs allege -- for each investment -- that co-defendants "knew from the beginning" of the partnerships "that no such securities would ever be purchased and that, if there were any distributions to be withheld from Plaintiffs, they would be diverted."  (Proposed

---

[10]     *E.g., Nanopierce Tech., Inc. v. Southridge Capital Mgmt. LLC,* 2003 WL 22052894, at *1-4 (S.D.N.Y. Sept. 2, 2003) (Sand, J.); *Greene v. Hanover Direct, Inc.*, 2007 WL 4224372, at *5 (S.D.N.Y. Nov. 19, 2007) ("New York courts have long-recognized" Martin Act preemption of such claims) (Buchwald, J.); *In re Bayou Hedge Fund Litig.*, 2007 WL 2319127, at *16 (S.D.N.Y. July 31, 2007) ("concur[ring] with the analysis set forth in *Castellano, Nanopierce,* and a host of other state and federal decisions finding breach of fiduciary duty claims arising in the securities context to be preempted by the Martin Act") (McMahon, J.); *Granite Partners, L.P. v. Bear, Stearns & Co., Inc.*, 17 F. Supp.2d 275, 292 (S.D.N.Y. 1998) ("the Martin Act precludes common law claims . . . [for] breach of fiduciary duty that are predicated on securities transactions") (Sweet, J.).

Cmpl. ¶ 69 [Indian Village]; ¶ 78 [Condor]; ¶ 84 [Hurricane])  Allegedly, "[b]y the artifice of . . .

withholding promised distributions to purchase nonexistent 'securities,'" certain defendants

"planned from the beginning" to misuse the distributions.  (Proposed Cmpl. ¶¶ 69, 78, 84)

Likewise, to assert Section 10(b) liability, Plaintiffs allege:  "In inducing Plaintiffs to invest in

the Partnerships," certain defendants "misrepresented that withheld distributions would be

applied to purchase securities" to pay off debt.  (Proposed Cmpl. ¶ 100)  And trying in their

Memorandum of Law to defend the new securities fraud claim, Plaintiffs assert that

misrepresentation concerning these distributions was part of the fraudulent inducement.  (*See* Pl.

Mem at 11-12: "Yet another representation in the Investment Proposal was false.  This was the

representation that the partners could elect to have their distributions withheld after a certain

date, and have them assigned to purchase marketable securities . . . .")[11]

> In short, Plaintiffs' proposed claim -- that Coleman and Trevisani breached their

fiduciary duties by improperly withholding these distributions -- arises from the supposed

securities fraud.  It is therefore barred under preemption.

> Moreover, if the claim did not arise from the securities fraud alleged, it could not

be adjudicated.  If that were the case, the new claim would not be sufficiently related to the

Section 10(b) claim to be part of the "same case or controversy" for exercising supplemental

jurisdiction.  28 U.S.C. § 1367(a).  Whether preempted by the Martin Act, or outside of

supplemental jurisdiction, Plaintiffs' new breach of fiduciary duty claim fails.

---

[11]    *See also* Proposed Cmpl. ¶¶ 68, 77 (withholding of distributions to buy securities was "[p]ursuant to the [Indian Village/Condor] Investment Proposal"); ¶ 105(j) ("that marketable securities would be purchased with cash distributions Plaintiffs assigned for the purchases" was misrepresentation underlying fraud claim).

## CONCLUSION

The last sentence of Plaintiffs' opposing Memorandum is telling.  Anticipating the

pleading failure, Plaintiffs request leave to replead -- yet again -- if the Court determines that

their still-unfiled Second Amended Complaint "is deficient in some respect."  (Pl. Mem. at 34)

Enough is enough.  Plaintiffs acknowledge that their First Amended Complaint is defective, and

their now-proposed amended pleading also fails to set forth cognizable claims against Coleman

and Trevisani.  Plaintiffs' cross-motion to amend should be denied, and the First Amended

Complaint should be dismissed against Coleman and Trevisani with prejudice.

Dated: New York, New York
     June 26, 2008

                  STILLMAN, FRIEDMAN &
                  SHECHTMAN, P.C.


                  By:___s/Scott M. Himes_____
                      Scott M. Himes (SH-7712)
                      Daniel V. Shapiro (DS-7677)

                  425 Park Avenue
                  New York, NY 10022
                  (212) 223-0200

                  *Attorneys for Defendants George Coleman*
                    *and Robert A. Trevisani*