UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

IRA NATHEL and SHELDON NATHEL,                          :
                                                        :
                            Plaintiffs,                 :
                                                        :
        -against-                                       :
                                                        :       07-CIV-10956 (LBS)
RICHARD SIEGAL, GEORGE COLEMAN, HARVEY                   :
JOSEPHSON, ROBERT A. TREVISANI, PAUL                    :
HOWARD, RICHARD S. GURALNICK, SCHAIN                    :
LEIFER GURALNICK, BISTATE OIL                           :
MANAGEMENT CORPORATION, SS&T HOLDING                    :
CO., LLC, PALACE EXPLORATION COMPANY,                   :
TAH DRILLING CO., INC., TAQ DRILLING CO.,               :
INC., OIL AND GAS TITLE HOLDING                         :
CORPORATION, JOHN DOES 1-20, JOHN DOE                   :
CORPORATIONS 1-20, JOHN DOE LLCs 1-20, and              :
JOHN DOE LLPs 1-20                                      :
                                                        :
                            Defendants.                 :
                                                        :
-------------------------------------------------------------------x

## MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO FILE A SECOND AMENDED COMPLAINT ON BEHALF OF DEFENDANTS RICHARD SIEGAL, PAUL HOWARD, BISTATE OIL MANAGEMENT CORPORATION, SS&T HOLDING CO., LLC, PALACE EXPLORATION COMPANY, TAH DRILLING CO., INC., TAQ DRILLING CO., INC., AND OIL AND GAS TITLE HOLDING CORPORATION

Stanley S. Arkin (SA 1373)
Michelle A. Rice (MR 4254)
Sean R. O'Brien (SO 2318)
Justin M. Sher (JS 8379)
590 Madison Ave., 35th Floor
New York, New York 10022

**ARKIN KAPLAN RICE LLP**

590 Madison Avenue
New York, New York 10022

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................(ii)

PRELIMINARY STATEMENT .........................................................................1

FACTUAL BACKGROUND...............................................................................2

     A.    The Nathels' First Two Complaints ......................................................2

     B.    The Nathels Withdraw Their Complaint And File The SAC ..................3

ARGUMENT......................................................................................................6

I.     THE LEGAL STANDARDS GOVERNING PLAINTIFFS' SECURITIES FRAUD CLAIM........................................................................................6

II.    THE NATHELS FAIL TO ADEQUATELY PLEAD LOSS CAUSATION .....................8

III.   THE NATHELS FAIL TO ALLEGE FACTS ESTABLISHING THAT THE PALACE DEFENDANTS ACTED WITH SCIENTER..........................................11

IV.   THE NATHELS FAIL TO ALLEGE REASONABLE RELIANCE ...............14

V.    THE ALLEGATIONS CONCERNING THE FAILURE TO PURCHASE SECURITIES DO NOT CONSTITUTE CONDUCT "IN CONNECTION WITH" THE PURCHASE OR SALE OF SECURITIES .................................................16

VI.   PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS ......17

VII.  THIS COURT SHOULD DISMISS PLAINTIFFS' STATE LAW CLAIMS.................20

     A.    The Court Lacks Subject Matter Jurisdiction For The State Law Claims............20

     B.    Plaintiffs' Fraud Claim Fails for the Same  Reasons as the Claim of Securities Fraud ...................................................................................21

     C.    The Claim for Declaratory Judgment Is Not Ripe................................21

     D.    The Claims for Tortious Interference with Contractual  Relations and Aiding and Abetting Breach of Fiduciary Duty Fail for the Reasons Set Forth by Trevisani and Coleman..............................................................23

VIII.  THE PALACE DEFENDANTS JOIN IN AND INCORPORATE THE OTHER DEFENDANTS' ARGUMENTS..................................................................24

IX.   THE PLAINTIFFS SHOULD NOT BE PERMITTED TO REPLEAD...........................24

CONCLUSION ................................................................................................24

## TABLE OF AUTHORITIES

**Cases**

*131 Maine Street Assocs. v. Manko,*
  179 F. Supp. 2d 339 (S.D.N.Y.), *aff'd*, 54 Fed. Appx. 507 (2d Cir. 2002) ................................. 6

*Alexandra Global Master Fund, Ltd. v. Ikon Office Solutions, Inc.,*
  2007 WL 2077153 (S.D.N.Y. July 20, 2007) .......................................................................... 20

*Arduini/Messina P'ship v. Nat'l Med. Fin. Serv. Corp.,*
  74 F. Supp. 2d 352 (S.D.N.Y. 1999) .................................................................................... 13

*ATSI Communications, Inc., v. Shaar Fund, Ltd.,*
  493 F.3d 87 (2d Cir. 2007) .............................................................................................. 7, 8

*Bell Atlantic Corp. v. Twombly,*
  127 S.Ct. 1955 (2007) ......................................................................................................... 6

*BOUSA, Inc. v. United States,*
  2007 U.S. Dist. LEXIS 27346 (S.D.N.Y. April 11, 2007) ...................................................... 20

*Chavin v. McKelvey,*
  25 F. Supp. 2d 231 (S.D.N.Y. 1998) .................................................................................... 14

*Chinese Automobile Distributors of America LLC v. Bricklin,*
  2008 WL 2019727 (S.D.N.Y. May 09, 2008) ......................................................................... 9

*Conner v. Burford,*
  836 F.2d 1521 (9th Cir. 1988) ............................................................................................ 15

*Correspondent Services Corp. v. First Equities Corp. of Florida,*
  442 F.3d 767 (2d Cir. 2006) .............................................................................................. 22

*Dresner v. Utility.com, Inc.,*
  371 F. Supp. 2d 476 (S.D.N.Y. 2005) .................................................................................. 10

*Dura Pharms, Inc. v. Broudo,*
  544 U.S. 336 (2005) ............................................................................................................ 8

*Ernst & Ernst v. Hochfelder,*
  425 U.S. 185 (1976) ............................................................................................................ 7

*Falwell v. American Shale Resources, LLC,*
  2007 U.S. Dist. LEXIS 87278 (E.D. Ark. November 28, 2007) ............................................. 14

*FDIC v. Linn,*
  671 F. Supp. 547 (N.D. Ill. 1987) ....................................................................................... 15

*Fezzani v. Bear, Stearns & Co.,*
   384 F. Supp. 2d 618 (S.D.N.Y. 2004) ...................................................................17

*Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for*
   *Southern Cal.,*
   463 U.S. 1 (1983) .....................................................................................................22

*Freschi v. Grand Coal Venture,*
   767 F.2d 1041 (2d Cir. 1985) ....................................................................................1

*Garber v. Legg Mason, Inc.,*
   537 F. Supp. 2d 597 (S.D.N.Y. 2008) ......................................................................9

*Gates v. Hernandez,*
   810 N.Y.S.2d 73 (1st Dep't 2006)............................................................................23

*Granite Partners, L.P v. Bear Stearns & Co. Inc.,*
   58 Supp. 2d 228 (S.D.N.Y. 1999) .....................................................................14, 15

*Greene v. Hanover Direct, Inc.,*
   2007 WL 4224372 (S.D.N.Y. Nov. 19, 2007)...........................................................6

*In re Aegon N.V. Sec. Litig.,*
   2004 WL 1415973 (S.D.N.Y. June 23, 2004) .........................................................12

*In re Compuware Sec. Litig.,*
   386 F. Supp. 2d 913 (E.D. Mich. 2005) ....................................................................8

*In re Glaxo SmithKline PLC Sec. Litig.,*
   2006 U.S. Dist. LEXIS 73893 (S.D.N.Y. October 6, 2006).....................................17

*In re Guardianship of Chantel Nicole R.,*
   34 A.D.3d 99, 821 N.Y.S.2d 194 (1st Dep't 2006).................................................22

*In re Merrill Lynch & Co. Research Reports Sec. Litig.,*
   2008 WL 2019680 (S.D.N.Y. May 08, 2008) .....................................................9, 21

*In re Merrill Lynch & Co. Research Reports Sec. Litig.,*
   2008 WL 2324111 (S.D.N.Y. June 4, 2008) .......................................................6, 20

*In re Monster Worldwide, Inc. Sec. Litig.,*
   2008 U.S. Dist. LEXIS 34520 (S.D.N.Y. April 29, 2008) .........................................6

*Internet Law Library, Inc. v. Southridge Capital Management, LLC,*
   2007 U.S. Dist. LEXIS 30672 (S.D.N.Y. April 25, 2007) .........................................8

*Joffee v. Lehman Bros., Inc.,*
   410 F. Supp. 2d 187 (S.D.N.Y. 2006) ...................................................................8, 9

*Joffee v. Lehman Bros., Inc.,*
    2005 WL 1492101 (S.D.N.Y. June 23, 2005) ........................................................21

*John v. Blackstock,*
    664 F.Supp. 1426 (M.D. Fla. 1987) .........................................................................16

*Joyce v. Bobcat Oil & Gas, Inc.,*
    2008 WL 919724 (M.D. Pa. April 3, 2008) ..............................................................10

*KPMG Peat Marwick v. Texas Commerce Bank,*
    976 F. Supp. 623 (S.D. Tex. 1997) ..........................................................................23

*Lentell v. Merrill Lynch & Co., Inc.,*
    396 F.3d 161 (2d Cir. 2005) ....................................................................................18

*Louros v. Kreicas,*
    367 F. Supp. 2d 572 (S.D.N.Y. 2005) ......................................................................15

*Luce v. Edelstein,*
    802 F.2d 49 (2d Cir. 1986) .........................................................................................7

*Michtavi v. New York Daily News,*
    2008 WL 754694 (S.D.N.Y March 12, 2008) ...........................................................20

*New York Mercantile Exchange, Inc. v. IntercontinentalExchange, Inc.,*
    497 F.3d 109 (2d Cir. 2007) ...............................................................................20, 21

*O'Kane v. Walker,*
    561 F.2d 207 (10th Cir. 1977) .................................................................................14

*Osofsky v. Zipf,*
    645 F.2d 107 (2d Cir. 1981) .......................................................................................9

*OSRecovery, Inc., v. One Groupe Intern., Inc.,*
    229 F.R.D. 456 (S.D.N.Y. 2005) ...............................................................................7

*Prince v. O'Brien,*
    234 A.D.2d 12, 650 N.Y.S.2d 157, 158 (1st Dep't 1996) ........................................19

*Rich v. Maidstone Financial, Inc.,*
    2002 WL 31867724 (S.D.N.Y. December 20, 2002) .................................................21

*Schlaifer Vance & Co. v. Estate of Andy Warhol,*
    119 F.3d 91 (2d Cir. 1997) .......................................................................................15

*Seippel v. Sidley, Austin, Brown & Wood, LLP,*
    399 F. Supp. 2d 283 (S.D.N.Y. 2005) ......................................................................22

*Sharp v. Coopers & Lybrand,*
  649 F.2d 175 (3d Cir.1981), *cert. denied,* 455 U.S. 938 (1982)....................................1

*Shields v. Citytrust Bancorp, Inc.,*
  25 F.3d 1124 (2d Cir. 1994) .........................................................................12

*Starr v. Georgeson Shareholder, Inc.,*
  412 F.3d 103 (2d Cir. 2005) ........................................................................14

*Sterling v. Sterling,*
  21 A.D.3d 663, 800 N.Y.S.2d 463 (3d Dep't 2005)......................................18

*Stryker v. Stelmak,* 06 Civ. 1322 (DC),
  2006 U.S. Dist. LEXIS 83218 (S.D.N.Y. Nov. 14, 2006).............................18

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank,*
  250 F.3d 87 (2d Cir. 2001) ...........................................................................13

*Target Oil & Gas Corp. v. Commonwealth,*
  2006 Ky. App. LEXIS 156 (Ky. App. May 26, 2006) .................................14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
  127 S.Ct. 2499 (2007)..............................................................................7, 8

*Tricontinental Industries, Ltd. v. PricewaterhouseCoopers, LLP,*
  475 F.3d 824 (7th Cir. 2007) .........................................................................8

*Wilson v. Parson,*
  77 B.R. 541 (Bankr. N.D. Tex. 1987) .........................................................14

*Xerion Partners I LLC v. Resurgence Asset Management, LLC,*
  474 F. Supp. 2d 505 (S.D.N.Y. 2007) .........................................................12

## Other Authorities

15 U.S.C. § 78bb(a) ...........................................................................................9

15 U.S.C. § 78u-4(b) ...................................................................................passim

28 U.S.C. § 1367 .............................................................................................22

28 U.S.C. § 2201 .............................................................................................22

Fed. R. Civ. P. 12(b)(6). .....................................................................................6

Fed. R. Civ. P. 9(b)............................................................................................4

N.Y. C.P.L.R. § 3001 .......................................................................................22

Defendants Richard Siegal, Paul Howard, Palace Exploration Company, The Bistate Oil Management Corp., Oil and Gas Title Holding Corp., SS&T Holding Corporation, TAQ Drilling Company and TAH Drilling Company (collectively, the "Palace Defendants"), respectfully submit this memorandum of law in opposition to the Cross-Motion of Plaintiffs Ira Nathel and Sheldon Nathel (the "Nathels" or "Plaintiffs") to File a Second Amended Complaint (the "Proposed SAC") and in further support of the Palace Defendants' Motion to Dismiss.

## PRELIMINARY STATEMENT

No matter how hard the Nathels look for a claim of securities fraud in their dealings with the Palace Defendants, they cannot find one. In their first two complaints, the Nathels alleged that they were induced to invest in general partnerships on the basis of a promise that the investments would generate significant tax savings. They complained that their taxes were being audited by the Internal Revenue Service (the "IRS"), and they therefore sought damages for the potential loss they expected to incur in the event their sought-after deductions were disallowed. Yet the Defendants demonstrated that such allegations could not support a claim of fraud because, among other things, the Plaintiffs had not even suffered the supposed loss that they complained of, and because a failure to obtain hoped-for tax savings does not constitute a cognizable damage under the securities laws.[1]

In response to those motions, the Plaintiffs have withdrawn their First Amended Complaint and have recast their pleading in the hopes of establishing some sort of claim. In so doing, however, they have merely moved from one horn of their dilemma to the other: Their "securities fraud" claims still fail because they cannot identify an actual economic harm that has

---

[1]    Anticipated tax benefits – even if not achieved – reflect a failed expectation and do not constitute damages falling within the purview of the Securities Exchange Act of 1934, as amended (the "Exchange Act"). *See Freschi v. Grand Coal Venture*, 767 F.2d 1041, 1051 (2d Cir. 1985) (holding that "compensation for hoped-for tax savings would be an impermissible award of damages" under the Exchange Act), *vacated on other grounds*, 478 U.S. 1015 (1986); *Sharp v. Coopers & Lybrand*, 649 F.2d 175, 190-91 (3d Cir.1981), *cert. denied*, 455 U.S. 938 (1982).

resulted from any act of the Defendants, or indeed any economic harm at all.  In addition, because the Nathels challenge as fraudulent an array of conduct that they have long known about and indeed participated in, their claims are all barred by the statute of limitations.  Furthermore, as sophisticated businesspersons who obtained independent advice and guidance in connection with their investments and chose to perform no due diligence whatsoever, the Nathels could not have reasonably relied upon the representations they claim to challenge.  More generally (but just as importantly), the Nathels fail to allege with particularity facts that demonstrate the falsity of any representations made to them, or that any Palace Defendant acted with *scienter*.  Instead, they have cobbled together a series of complaints about the manner in which their investments were managed and seek to turn them into a claim of fraud.  As set forth below, the law does not countenance such a claim.

The Nathels have now had three opportunities to state a claim for relief, and they remain utterly unable to do so.  Accordingly, the Proposed Second Amended Complaint should be rejected and their case dismissed with prejudice.

## FACTUAL BACKGROUND

### A.    The Nathels' First Two Complaints

The Nathels filed their original complaint in this action on December 3, 2007.  On December 13, 2007, they filed a First Amended Complaint (the "FAC").[2]  In the FAC, the Plaintiffs alleged that they had been persuaded to make investments with the Defendants based upon the recommendation of their own financial advisor, Defendant Josephson, as well as by the Palace Defendants.  (FAC ¶¶ 47-52.)  They alleged that they were told that the investments were capable of generating significant tax deductions, and that investors in similar partnerships had

---

[2]    A copy of the FAC is attached as Exhibit A to the Affidavit of Sean R. O'Brien In Opposition to Plaintiffs' Motion to File a Second Amended Complaint ("O'Brien Aff."), submitted herewith.

been audited but had never lost those audits. (*Id.* at ¶ 51.) The Nathels alleged that their investments had become subject to scrutiny by the IRS, and that they therefore believed that they had been defrauded. (*Id.* at ¶¶ 70-85.)

The Palace Defendants moved to dismiss, arguing that the claims in the FAC were time-barred, and also that the Plaintiffs had failed to sufficiently allege loss causation or damages. In particular, the Palace Defendants pointed out that the Nathels had not even alleged that they had suffered any loss, and to the extent that their alleged future loss was based upon hoped-for tax deductions, it failed as a matter of law. (Motion To Dismiss The First Amended Complaint By Richard Siegal, Paul Howard, Bistate Oil Management Corporation, SS&T Holding Co., LLC, Palace Exploration Company, TAH Drilling Co., Inc., TAQ Drilling Co., Inc., and Gas Title Holding Corporation ("Palace Motion to Dismiss") at 12-14.) The Palace Defendants also argued that the Nathels' claims were barred by the statute of limitations, and that the Nathels had failed to plead *scienter*.

### B.    The Nathels Withdraw Their Complaint And File The SAC

Rather that address those arguments, the Nathels withdrew the FAC and submitted yet another amended complaint (hereinafter the "Proposed SAC" or "SAC").[3] Notably, the Nathels have not made any major changes to their *factual* allegations. Instead, they have simply tried to shoehorn those same allegations into new and different claims for relief.

The Nathels allege that they are the principals of Nathel & Nathel Inc., a wholesale fruit and vegetable distributor based in New York. (SAC ¶ 1.) In 2000, they allegedly retained a certified public accountant, Defendant Harvey Josephson, to provide them with accounting advice. (*Id.* ¶ 29.) Josephson allegedly suggested in or about July 2001 that the Nathels should

---

[3]    The SAC is attached as Exhibit B to the O'Brien Affidavit.

consider an investment partnership run by Defendant Richard Siegal. (*Id.* ¶ 32.) Josephson stressed that such an investment would provide the Nathels with significant tax benefits. (*Id.* ¶¶ 6, 31, 32.) Josephson also allegedly stated that "if a sufficient number of the drilled wells struck oil or gas, Plaintiffs would have the added benefit of earning a return on their investment." (*Id.* ¶ 33.)

According to the Nathels, at or about the same time an individual named Richard Byllott, who was the controller of the Nathels' company and their personal agent for business affairs and taxes, contacted Siegal and Defendant Paul Howard by phone, at which time they "confirm[ed] the representations of Josephson." (*Id.* ¶¶ 30, 38.)[4] Beginning in 2001, the Nathels made "investments in the Partnerships with a view toward tax savings." (*Id.* ¶¶ 1, 32, 40). The Nathels also allege that they obtained from Siegal and Howard "Investment Proposals" in connection with the investment partnerships, which allegedly contained "false promises and representations" (SAC ¶ 42), namely that:

- Investors could redeploy tax dollars into investments and create income and cash flow. Rates of return could unquestionably be earned on redeployed money (SAC ¶ 42(a)-(b));

- Partners would receive a substantial tax loss (SAC ¶ 42(c));

- The partnership could expect an average annual cash flow of 10-15% of cash funds invested. It was reasonable to expect the cash flow to continue for 10-12 years. Drill sites would be carefully chosen by the Managing Partners (SAC ¶ 42(d)-(e));

- Interest payable on investors' Subscription Notes would be 8%, fully tax deductible, and the investor would only be required to pay interest during the first year of the Partnership (SAC ¶ 42(f)); and

- The Turnkey Note Holder would subordinate its right to collect the 8%

---

[4]    Notably, in the FAC, the Nathels alleged that Byllot only asked Siegal about the *tax aspects* of the investment. (FAC ¶ 51.) It is likely that the vaguer formulation set forth in the Proposed SAC is merely a matter of artful pleading, and that the more limited description in the original complaint is more accurate. In its current form, the allegation manifestly does not meet the specificity requirements of Fed. R. Civ. P. 9(b) or of the PSLRA.


interest ((SAC ¶ 42(g)).

The Nathels allege that they invested a cash total of $3,400,000 with eight investment partnerships over a period of four years commencing in 2001, including $1,400,000 in the three partnerships which are the subject of their claims in this case – Indian Village, Condor, and Hurricane. (SAC ¶¶ 54, 65, 74, 81.) In connection with those partnerships, the Nathels allege that the documentation inaccurately represents when the partnerships were formed and when they made their initial investments, and also that some of the wells drilled in connection with those partnerships were unsuccessful and should not have been made part of their investments. (SAC ¶¶ 43, 54-55.) Finally, the Nathels allege that in 2005, they agreed to permit the Palace Defendants to withhold funds from their distributions in order to purchase securities that would be used to pay off their Subscription Notes, but that the securities were never purchased. (SAC ¶ 68.)

The Nathels do not specify their supposed damages or loss in the Proposed SAC. In fact, they admit that they received quarterly distributions from the three partnerships that are at issue, but they fail to specify the amounts that they received. (SAC ¶¶ 58, 66, 76, 83.) The Nathels do not allege that they have been unable to make payments on the Subscription Notes. And while the Nathels state that their investments in the three partnerships at issue have "virtually" all been lost (SAC ¶¶ 65, 74, 81), they include no allegations as to the actual extent of that loss, or the alleged reasons for the loss.

## ARGUMENT

"If [a] proposed amended complaint is futile, then the motion for leave to amend will be denied." *131 Maine Street Assocs. v. Manko*, 179 F. Supp. 2d 339, 345-46 (S.D.N.Y.), *aff'd*, 54 Fed. Appx. 507 (2d Cir. 2002). Accordingly, a proposed amended complaint is properly "scrutinized as if defendant's objections to the amendments constituted a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 2008 WL 2324111, at *4 (S.D.N.Y. June 4, 2008). Try as they might in their latest pleading, the Nathels simply cannot allege facts that sustain any claim against the Palace Defendants, and their motion to amend must therefore be denied.

## I.     THE LEGAL STANDARDS GOVERNING PLAINTIFFS' SECURITIES FRAUD CLAIM

"In considering the defendants' 12(b)(6) motion to dismiss, we accept as true the facts alleged in the amended complaint, and draw all reasonable inferences in favor of [Plaintiffs]." *Greene v. Hanover Direct, Inc.*, 2007 WL 4224372, at *3 (S.D.N.Y. Nov. 19, 2007) (citations omitted). To survive dismissal, however, the Plaintiffs must allege facts that "raise the right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007); *see also Greene*, 2007 WL 4224372, at *3.

"The elements of a private securities fraud claim for violation of Section 10(b) and Rule 10b-5 are: (1) a material misrepresentation (or omission); (2) scienter, i.e., a wrongful state of mind; (3) in connection with the purchase or sale of a security; (4) reliance . . .; (5) economic loss; and (6) 'loss causation,' i.e., a causal connection between the material misrepresentation and the loss." *In re Monster Worldwide, Inc. Sec. Litig.*, 2008 U.S. Dist. LEXIS 34520, at *9-*10 (S.D.N.Y. April 29, 2008) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42

6

(2005).)  In order to allege these elements in a manner that will overcome a motion to dismiss, a plaintiff must meet a rigorous set of pleading requirements:

*First*, a complaint alleging securities fraud must satisfy Federal Rule of Civil Procedure 9(b), which requires that "the circumstances constituting fraud ... shall be stated with particularity."  As interpreted by the Second Circuit, Rule 9(b) requires that a securities fraud complaint (i) specify the statements that the plaintiff contends were fraudulent, (ii) identify the speaker, (iii) state where and when the statements were made, and (iv) explain why the statements were fraudulent. *ATSI Communications, Inc., v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).  Allegations that are conclusory or that are unsupported by facts are insufficient to satisfy Rule 9(b).  *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986); *OSRecovery, Inc., v. One Groupe Intern., Inc.*, 229 F.R.D. 456, 458 (S.D.N.Y. 2005).

*Second*, private securities fraud plaintiffs must also independently satisfy the PSLRA's "exacting" pleading requirements. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2504 (2007); 15 U.S.C. § 78u-4(b)(3)(A).  Under the PSLRA, "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  In this case brought under Section 10(b), the required state of mind is *scienter*, *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 194 n.12 (1976), which equates to intentional deception or highly reckless conduct that is likely to mislead, *see ATSI,* 493 F.3d 87 at 99 n.3. For an inference of *scienter* to be "strong," a reasonable person must deem it "cogent" and "at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs,* 127 S.Ct. at 2504; *see also ATSI*, 493 F.3d at 99.  Moreover, "in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must consider the Complaint as a whole and

7

must take into account plausible opposing inferences." *Id.* Any ambiguities and omissions in the pleading militate against an inference of *scienter. See Tellabs,* 127 S.Ct. at 2551.

    *Third,* if the plaintiff alleges a false statement or omission, the PSLRA requires that the complaint specify (i) each statement alleged to have been misleading, (ii) the reason or reasons why the statement is misleading, and (iii) if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed. *See* 15 U.S.C. § 78u-4(b)(1); *ATSI,* 493 F.3d at 99.

    As set forth below, the Nathels have failed to allege required elements of their claims, or to satisfy the heightened pleading standards, in numerous independent respects.

## II.    THE NATHELS FAIL TO ADEQUATELY PLEAD LOSS CAUSATION

    In a Section 10(b) case, "the loss actually sustained [must] be foreseeable and [must] be caused by the materialization of the concealed risk." *Internet Law Library, Inc. v. Southridge Capital Management, LLC*, 2007 U.S. Dist. LEXIS 30672, at *10 (S.D.N.Y. April 25, 2007). The Supreme Court's decision in *Dura Pharms, Inc. v. Broudo*, 544 U.S. 336 (2005), holds that in such cases there must be a causal connection "between the material misrepresentation and the loss," and that it is not enough that an alleged misrepresentation merely "touches upon" a later economic loss. *See Tricontinental Industries, Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 843 (7th Cir. 2007) (affirming dismissal of 10b-5 claim for failure to plead loss causation).

    In terms of pleading, therefore, a Plaintiff "must adequately allege *facts* showing loss causation . . . ." *Joffee v. Lehman Bros., Inc.*, 410 F. Supp. 2d 187, 190 (S.D.N.Y. 2006) (emphasis added) (dismissing 10b-5 claim for failure to allege loss causation), *aff'd*, 209 Fed. Appx. 80 (2d Cir. 2006); *see also In re Compuware Sec. Litig.*, 386 F. Supp. 2d 913, 918-19 (E.D. Mich. 2005) ("[P]laintiffs are required to plead . . . that [the] misrepresentations proximately caused its loss – not merely to state that there is proximate causation between the

8

two . . . . Plaintiffs are charged with pleading the connection, listing what it is . . . ."). These requirements are not met by perfunctory allegations, and suits are therefore frequently dismissed for failure to plead loss causation. *See Chinese Automobile Distributors of America LLC v. Bricklin*, 2008 WL 2019727, at *3-*4 (S.D.N.Y. May 09, 2008); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 2008 WL 2019680, at *10 (S.D.N.Y. May 08, 2008); *Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 617 (S.D.N.Y. 2008).

In light of the foregoing principles, the SAC must be dismissed for failure to allege loss causation. In this respect it is significant that the Nathels have specifically withdrawn any claim for damages based upon lost tax deductions. (*See* Plaintiffs' Memorandum of Law in Support of the Cross-Motion to Amend the First Amended Complaint and in Opposition to Defendants' Motions To Dismiss, dated May 2, 2008 ("Cross-Motion") at 5.) As a consequence, any alleged misrepresentations on the subject of the hoped-for tax treatment cannot, as a matter of law, have been the cause of their damages.

Given this concession, the only damages that the Nathels could recover would be an actual loss of their investments in the Indian Village, Condor, and Hurricane partnerships. *See* 15 U.S.C. § 78bb(a) (limiting damages in securities cases to "actual damages"); *Osofsky v. Zipf*, 645 F.2d 107, 111-12 (2d Cir. 1981). But the SAC is utterly deficient in alleging loss causation – or indeed any loss at all – as to those partnerships. The Nathels admit that they received distributions checks from each partnerships (*See* SAC ¶ 58), but provide no factual allegations as to the amount of those distributions. Nor do they include any allegations concerning the value of the oil wells in which they have invested through those entities. Accordingly, it is impossible even to conclude that the Nathels have lost money on the three investments that are at issue in this case, and the SAC fails on that ground alone. *See Joffee*, 410 F. Supp. 2d at 192 ("[L]oss

9

causation requires Plaintiffs to allege facts indicating the economic loss they claim to have suffered."); *Dresner v. Utility.com, Inc.*, 371 F. Supp. 2d 476, 501 (S.D.N.Y. 2005) (dismissing Section 10(b) claim where pleading "contain[ed] no indication as to what loss was occasioned").

Second, and even more importantly, the Nathels do not allege facts connecting any such loss to the challenged representations. In particular, they do not allege facts showing that they lost money because the Palace Defendants lacked experience; they do not allege facts showing that they lost money because funds advanced to them derived from other investors instead of oil and gas revenues; and they do not allege that they lost money because their funds were not used to purchase securities for them. Accordingly, the Nathels have failed to allege facts showing that the materialization of the supposedly concealed risks caused them damages, and therefore have failed to adequately allege loss causation.

In this respect, *Joyce v. Bobcat Oil & Gas, Inc.*, 2008 WL 919724 (M.D. Pa. April 3, 2008), is highly instructive and demonstrates why the SAC must be dismissed. In *Bobcat Oil*, Plaintiff alleged he had been induced by false representations and omissions to invest in oil and gas interests. The alleged misstatements were quite similar to those alleged here, except they were more numerous and more detailed: The Bobcat Oil Plaintiffs alleged that the Defendants who presented the investment had failed to point out risks involved in oil and gas investments; had failed to advise regarding the tax consequences of his investments; had undercapitalized drilling operations; had placed the investors in wells that had been previously drilled or partially drilled or were only marginally productive; and lacked geologic data relating to the wells. *Id.* at *4. Plaintiff further pleaded that "[t]he value of the working interest in the oil and gas wells … was worth, at the time that [plaintiff] purchased such investments, substantially less than [the

amount he paid for them]" and that plaintiff "has suffered monetary damages as a result of the misrepresentations." *Id.* at *7.

Despite these allegations – which are far stronger and more detailed than what the Nathels have alleged – the Court dismissed the 10b-5 claim. *Id.* at *15. It pointed out that all plaintiff's allegations amounted to was the claim that, due to defendants' alleged misrepresentations and omissions, he paid a higher price for the oil and gas interests than they were worth. *Id.* at *8. The court explained that the plaintiff was essentially relying on transaction causation to prove the separate element of loss causation. *Id.* at *7-8. Because Plaintiff provided no causal connection between the alleged loss and the particular content of the alleged misrepresentations and omissions, its claim was deficient as a matter of law and properly dismissed. *Id.* The same result must obtain here.

## III.    THE NATHELS FAIL TO ALLEGE FACTS ESTABLISHING THAT THE PALACE DEFENDANTS ACTED WITH SCIENTER

The SAC also fails to sufficiently allege that the Palace Defendants acted with *scienter*. Indeed, by giving up their reliance on their tax-related allegations and hoping to transform their securities claim to a loss on their investment, the Nathels are left with a classic "fraud by hindsight" complaint. The entire thrust of the Proposed SAC is that the partnerships were unsuccessful and that the Palace Defendants knew in advance this would be so. *See* SAC ¶ 43 (Siegal and Howard "knew that Investors could not recover their investments"), ¶ 45 (they "knew that Plaintiffs could not expect a return of 10-15 per cent or that it was reasonable to expect that return for 10-12 years"), ¶ 49 (they "knew ... that the Partnerships would not buy marketable securities with distributions withheld from Plaintiffs"), ¶ 69, ¶ 78, ¶ 84, ¶ 100. Even before enactment of the PSLRA, Courts routinely dismissed complaints which simply "record[ed] statements by defendants predicting a prosperous future and holds them up against

11

the backdrop of what actually transpired." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994). It is now well established that "[t]o satisfy Rule 9(b) and the PSLRA, the Plaintiffs must plead particular facts supporting their theory that the Defendants' [alleged misconduct] was due to something nefarious, rather than simply imperfect economic forecasting." *In re Aegon N.V. Sec. Litig.*, 2004 WL 1415973, at *8 (S.D.N.Y. June 23, 2004).

Despite this obvious defect in their claims, in their Cross-Motion the Nathels identified a number of items that they claim support an inference of *scienter*. (*See* Cross-Motion at 23.) But these items, taken singly or even together, fail to raise a "compelling" inference that the Palace Defendants acted with improper state of mind. The Nathels note, for example, that that Siegal organized and promoted the partnerships, but this can hardly be considered evidence of *scienter* – if it were, every promoter of a business venture would automatically have scienter and the requirement would be meaningless. The allegations regarding the alleged lack of qualifications of other Defendants are also inadequate, given that the Nathels do not challenge the qualifications of the Palace Defendants. The supposed issues concerning the discrepancies in the timing of the investments and the creation of the partnerships were, as set forth below, all known to the Nathels from the outset of their relationship with the Defendants, and those issues simply do not call into question the legality of the partnerships or the Nathels' investments. *See infra* at 18 & n.7. In addition, absent an allegation that the Palace Defendants obtained any particular benefit from this alleged conduct, this allegation has no bearing on the existence of *scienter*. Notably, the Nathels' allegation that the advances were made with funds taken from other investors is made only on "information and belief," without any supporting facts. The allegation therefore is plainly deficient under the PSLRA. (*See* 15 U.S.C. § 78u-4(b)(1); *Xerion Partners I LLC v. Resurgence Asset Management, LLC*, 474 F. Supp. 2d 505, 519 (S.D.N.Y. 2007) (holding

12

that allegations pled on information and belief only, without any particularized facts, failed to state a claim of securities fraud.) In fact, all of these allegations concern, at the very best, mismanagement of the partnerships, which does not give rise to an inference of fraud.[5]

Nor are the allegations regarding events that took place long prior to the Nathels' investments sufficiently particularized or relevant. All the SAC alleges is "Siegal sued the investors [in partnerships promoted in the 1980's through Skava Oil Distribution Corporation] to enforce the subscription notes they signed" (SAC ¶ 45), and that "Siegal companies had been embroiled in multiple prior lawsuits in the 1990s in which investors had not received the distributions they had been led to expect or which were even possible" (SAC ¶ 50). Yet without information regarding the number of these lawsuits as a proportion of the number of investors, the grounds of the suits, and their outcomes, this information cannot give rise to any inference of wrongdoing by Siegal. The allegation that Siegal managed other partnerships in the 1980s that generated revenues for less than twelve years is equally deficient. If every business that had had some bad years could never predict good ones to come, few companies would escape securities fraud suits. The only inference that arises from these allegations concerning past events is that the Palace Defendants – who the Nathels admit have been in the oil and gas drilling business for years – have had their share of successes and failures, some of which resulted in litigation.

In sum, the Nathels' allegations do not give rise to any inference of *scienter*. They are instead the makeweight allegations of investors who hoped to – and did – obtain substantial tax benefits and hope now to obtain additional economic return by alleging fraud.

---

[5]  *See Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 99 (2d Cir. 2001) ( "[P]ost-stock-purchase corporate mismanagement or breach of fiduciary duty … is not proscribed by § 10(b) . . . ."); *Arduini/Messina P'ship v. Nat'l Med. Fin. Serv. Corp.*, 74 F. Supp. 2d 352, 362 (S.D.N.Y. 1999) (allegations of corporate mismanagement and breach of fiduciary duties cannot provide the basis for a securities fraud claim).

## IV.    THE NATHELS FAIL TO ALLEGE REASONABLE RELIANCE

In addition to loss causation, a 10b-5 plaintiff must allege that he reasonably relied on the alleged misrepresentation in making his investment. *Chavin v. McKelvey,* 25 F. Supp. 2d 231, 235 (S.D.N.Y. 1998); *Granite Partners, L.P* v. *Bear Stearns & Co. Inc.*, 58 Supp. 2d 228, 260-61 (S.D.N.Y. 1999) (holding that lack of reasonable reliance may be decided on motion to dismiss). In particular, "[a]n investor may not justifiably rely on a misrepresentation if, through minimal diligence, the investor should have discovered the truth." *Starr v. Georgeson Shareholder, Inc.*, 412 F.3d 103, 109 (2d Cir. 2005) (affirming dismissal of 10b-5 cause of action for lack of reasonable reliance). Here, the alleged misrepresentations are principally statements about future expected returns from the oil and gas drilling. (*See* SAC ¶ 100.) Notably, the Nathels admit that by the time they made the investments challenged here they had at least two years of experience in investing in oil and gas partnerships (SAC ¶ 54), and were aided and represented by their own personal business agent in their dealings with the Defendants (SAC ¶ 30). The Nathels nonetheless seek to establish the reasonableness of their reliance by alleging that they had no experience in oil and gas investments. (*See* SAC ¶ 28).

The law is clear, however, that even a lack of experience does not make thoughtless reliance justifiable, and that the Nathels acted thoughtlessly by making no effort to determine the risks involved in their investments. The uncertainties of the oil business are well established. Courts repeatedly refer to "the notoriously risky business of oil and gas exploration." *Target Oil & Gas Corp. v. Commonwealth*, 2006 Ky. App. LEXIS 156, at *2 (Ky. App. May 26, 2006); *see Wilson v. Parson*, 77 B.R. 541, 551 (Bankr. N.D. Tex. 1987) (ruling that investors who "had never before been involved in an oil and gas investment" were nevertheless the "risk takers in these ventures"); *O'Kane v. Walker*, 561 F.2d 207, 212 (10th Cir. 1977) (referring to "the speculative nature of investments in oil and gas leases"); *Falwell v. American Shale Resources,*

14

*LLC*, 2007 U.S. Dist. LEXIS 87278, at \*22 (E.D. Ark. November 28, 2007) ("the speculative nature of oil and gas exploration"); *FDIC v. Linn*, 671 F. Supp. 547, 560 (N.D. Ill. 1987) ("[T]o explore for oil and gas [is] a highly speculative business venture in the best of economic times."); *cf. Conner v. Burford*, 836 F.2d 1521, 1531 n.21 (9th Cir. 1988) ("Less than 10 percent, on average, of non-competitive leases yield an oil strike and less than 2 percent lead to actual development.")

Even putting aside the speculative nature of the oil and gas business, it is simply not reasonable for a plaintiff to rely on the assumption that he will not lose money. In *Louros v. Kreicas*, 367 F. Supp. 2d 572 (S.D.N.Y. 2005), for example, the plaintiff alleged a claim of securities fraud based on a broker's "assurance that [plaintiff] could make money with no risk." *Id.* at 591. The Court held plaintiff could not reasonably rely on such an assurance, noting that "[t]he relationship between risk and return is one of the fundamental features of all commercial and financial dealings." *Id.* Finally, a plaintiff does not act reasonably if he fails to perform basic due diligence into the challenged investment. "If the plaintiff has the means of knowing, by the exercise of ordinary intelligence, the truth, or the real quality of the subject of the representation, he must make use of those means or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations." *Schlaifer Vance & Co. v. Estate of Andy Warhol*, 119 F.3d 91, 98 (2d Cir. 1997); *see also Granite Partners*, 58 F. Supp. 2d at 260-61 (dismissing complaint on ground that lack of diligence precluded reasonable reliance).

These principles compel the dismissal of the Nathels' case. By mid-2003, certainly, the Nathels could not reasonably have relied on alleged assurances that their investments in oil drilling were certain to generate a level of revenue. Even assuming that the Nathels were completely unaware of the uncertain nature of oil drilling prior to meeting the defendants in

2001, the Subscription Agreement that they signed required them to acknowledge that they "must be prepared to bear the economic risk of such investment for an indefinite period because of . . . the nature of oil and gas exploration and development . . ." (O'Brien Aff., Ex. C at 2.) Even more importantly, the slightest effort on the part of the Nathels or their business advisor, Byllott, would have alerted them to the impossibility of guaranteeing successful returns on investments of this nature.  Indeed, by the *Nathels' own admission*, "an investigation [] would have readily disclosed that the representations regarding the investments were inaccurate and could not be confirmed." (SAC ¶ 36.)  As set forth above, the ability to uncover supposed misrepresentation by due diligence precludes reasonable reliance, and for this reason the Proposed SAC must be rejected.

## V. THE ALLEGATIONS CONCERNING THE FAILURE TO PURCHASE SECURITIES DO NOT CONSTITUTE CONDUCT "IN CONNECTION WITH" THE PURCHASE OR SALE OF SECURITIES

To the extent that Plaintiffs seek to premise a separate claim for securities fraud on the supposed failure by the Palace Defendants to purchase securities for them (SAC ¶ 48, 68, 77), this claim fails for an additional reason: These allegations cannot make out a claim of securities fraud because – according to the Nathels – there was *no* purchase or sale of securities in connection with the withheld distributions. That is, "plaintiffs are asserting a Rule 10b-5 claim on the basis of an *attempt* to invest in securities and not in connection with the purchase and sale of securities." *John v. Blackstock*, 664 F.Supp. 1426, 1428 (M.D. Fla. 1987) (emphasis in original). In *John*, defendant's employee took money from plaintiffs allegedly to invest in securities but instead converted it for his own use.  The Court held that plaintiffs failed to state a

claim under 10b-5 because there was no purchase or sale of a security. *Id.* Thus, the SAC's allegations concerning the supposed failure to purchase securities cannot state a claim for relief.[6]

## VI.    PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

The Nathels were on notice of the allegedly fraudulent conduct on which they have based their claims – and indeed participated in that conduct – well over two years before they filed this case. Their claims are therefore time-barred.

"[T]he statute of limitations for [a 10b-5] claim is the shorter of five years from the occurrence or two years from the time plaintiff had actual or inquiry notice of the claim.... [T]he two-year period begins to run as soon as circumstances would suggest to an investor of ordinary intelligence the probability that she had been defrauded." *In re Glaxo SmithKline PLC Sec. Litig.*, 2006 U.S. Dist. LEXIS 73893, at *23-*24 (S.D.N.Y. October 6, 2006) (citing 28 U.S.C. § 1658(b).).

The original complaint in this case was filed on December 3, 2007. Recognizing that the five-year limitations period began to run "on the date that the parties have committed themselves to complete the purchase or sale transaction," *Fezzani v. Bear, Stearns & Co.*, 384 F. Supp. 2d 618, 631 (S.D.N.Y. 2004), Plaintiffs have limited their claims to partnerships they agreed to after December 3, 2002 – namely, Indian Village, Condor, and Hurricane. However, they continue to cite statements made well before that date, such as statements allegedly made in a telephone conversation in 2001. (*See* SAC ¶¶ 31, 38.) Plainly, any act or investment decision based upon these alleged misrepresentations is time-barred.

---

[6]    In connection with these allegations, the Nathels have suggested that the Defendants' alleged refusal to provide them with documentation concerning the purchase of securities constitutes an admission that no securities were purchased. (*See* SAC ¶¶ 68, 83.) This argument has no basis in law and indeed conflicts directly with the PSLRA. The whole point of the stay of discovery while a motion to dismiss is pending instituted by the PSLRA, 15 U.S.C. § 78u-4(b)(3)(B), is precisely that plaintiffs must meet their pleadings requirements *before* they are entitled to discovery. Plaintiffs cannot evade that mandate by seeking a presumption that failure to provide them with voluntary discovery satisfies those very pleading requirements.

Even the claims that fall within the five-year limitation period, though, must still meet the two-year period for inquiry notice, and thus are barred if they were discoverable with reasonable diligence prior to December 3, 2005. "The statute of limitations starts to run when the plaintiff has actual or constructive notice of its cause of action." *Stryker v. Stelmak*, 06 Civ. 1322 (DC), 2006 U.S. Dist. LEXIS 83218, at *11 (S.D.N.Y. Nov. 14, 2006) (quotations omitted). "The limitations period begins to run after the plaintiff obtains actual knowledge of the facts giving rise to the action or notice of the facts, which in the exercise of reasonable diligence, would have led to actual knowledge. Inquiry notice . . . gives rise to a duty of inquiry when the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded." *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 167-168 (2d Cir. 2005) (citations omitted).

Assuming *arguendo* that a securities fraud was perpetrated on Plaintiffs in the manner that they describe, they had numerous signals alerting them to these issues well prior to December of 2005. For example, the Nathels claim that a fraud is shown by the fact that the partnership agreements were not dated on the dates that they invested. They allege that for *all* partnership investments starting in 2001, "[t]he designated dates of the commencement of the Partnerships set forth in the Partnerships agreements were invariably months before Plaintiffs each actually invested cash in the Partnerships." (SAC ¶ 54.) According to Plaintiffs, this meant "the Partnerships were not properly constituted until well after the dates on the Partnership Agreements." (SAC ¶ 55.) Yet the Nathels, of course, were fully aware of the dating issue from the moment they signed each one of the partnership agreements.[7] Moreover, each tax year from

---

[7]    The Siegal Defendants deny that there is anything improper about the dating of these agreements or the constitution of the partnerships. There is no Statute of Frauds for partnership agreements – an oral partnership agreement is fully enforceable. *Sterling v. Sterling*, 21 A.D.3d 663, 665, 800 N.Y.S.2d 463, 465 (3d Dep't 2005) ("[T]he statute of frauds [is] no bar to this oral partnership agreement."); *Prince v. O'Brien*, 234 A.D.2d 12, 12, 650

18

2001 the tax forms prepared for Plaintiffs by "Guralnick, Siegal's longtime accountant ... made no allocation between the partners to take into account the dates they entered in the Partnerships." (SAC ¶ 57; *see also* SAC ¶¶ 61, 75.)  Again assuming – as the Nathels appear to – that these facts are indicia of fraud, Plaintiffs were thus on inquiry notice regarding the alleged fraudulent implications of the dating issues from 2001 or 2002.

Plaintiffs also allege that distributions from the Partnership were made from "advances," not from oil and gas revenues as required by the Partnership Agreements.  (SAC ¶ 44.)  They allege these advances came in part from "investments made by other partners in unrelated partnerships promoted by Siegal," *i.e.,* a Ponzi scheme.[8]  Plaintiffs admit, though, that they received quarterly written communications with their distributions (SAC ¶ 58), and that these reports reported when "advances" were made (SAC ¶¶ 66, 83).  With respect to Condor, in which they invested on December 12, 2003 (SAC ¶ 54), Plaintiffs allege that "[t]en out of twelve quarterly distributions ... were in large part financed by 'advances' to the Partnership from unknown sources."  (SAC ¶ 76.)  Given that there are only four quarters per year, the only reasonable inference from these allegations is that more than one of the quarterly distributions from Condor must have predated December 3, 2005, some by several months or even up to a year.  And this reasonable inference is indeed borne out by the documentary evidence:  On January 28, 2005, a distribution report was sent to the Nathels that disclosed that an "advance"

---

N.Y.S.2d 157, 158 (1st Dep't 1996) ("An oral agreement to form a partnership for an indefinite period creates a partnership at will and is not barred by the Statute of Frauds.").  Hence Plaintiffs were partners as of the date of their agreement to become partners, regardless of when they signed the Partnership Agreements or invested their money.  Plaintiffs notably omit any allegations as to when they committed to make their investments. *See also* Memorandum of Law In Opposition To Plaintiffs' Cross-Motion to Amend and in Further Support of Motion To Dismiss the First Amended Complaint By Defendants Richard S. Guralnick and Schain Leifer Guralnick.

[8]    As noted above, Plaintiffs made this allegation "on information and belief," but provide no specific factual basis for it, as required by the PSLRA, 15 U.S.C. § 78u-4(b)(1).  However, given that the Nathels construe advances as a fraudulent practice, the allegation is relevant as it bears upon of inquiry notice.

had been made to them. (O'Brien Aff. ¶ 6, Ex. D, at last page.)[9]  Again, accepting the Nathels'

position that advances demonstrated fraud, the Nathels were plainly on inquiry notice of this

issue in early 2005, well over two years before they filed their case.[10]

By their own admission, the Nathels made no inquiries regarding the business side of

their investments and the alleged fraud between 2001 and the origins of this suit. Yet also by

their own admission, "an investigation [] would have readily disclosed that the representations

regarding the investments were inaccurate and could not be confirmed." (SAC ¶ 36.) Plainly,

the two-year limitations period ran long before this suit was filed, and the Proposed SAC is

properly rejected on grounds of futility. *BOUSA, Inc. v. United States*, 2007 U.S. Dist. LEXIS

27346, at *16 (S.D.N.Y. April 11, 2007) ("Where claims are barred by the statute of limitations,

they are subject to dismissal, and an amendment to add such claims is therefore futile.").

## VII.    THIS COURT SHOULD DISMISS PLAINTIFFS' STATE LAW CLAIMS

### A.    The Court Lacks Subject Matter Jurisdiction For The State Law Claims

Because Plaintiffs' Section 10(b) must fail, the Complaint is left with only Plaintiffs'

state-law claims against the Palace Defendants, set forth at Counts II, VII, X and XI. "In

general, where the federal claims are dismissed before trial, the state claims should be dismissed

as well." *New York Mercantile Exchange, Inc. v. IntercontinentalExchange, Inc.*, 497 F.3d 109,

118 (2d Cir. 2007); *Alexandra Global Master Fund, Ltd. v. Ikon Office Solutions, Inc.*, 2007 WL

---

[9]    Since the SAC refers to the distribution reports, they are properly considered on a motion to dismiss and therefore in this memorandum in opposition to Plaintiffs' motion for leave to amend. *See Michtavi v. New York Daily News*, 2008 WL 754694, at *1 (S.D.N.Y March 12, 2008) (on motion to dismiss court can consider documents relied on by plaintiff in bringing suit); *Merrill Lynch Research Reports*, 2008 WL 2324111, at *2 n.2 (same rule applies in treating claim of futility under Rule 15(a)).

[10]    In trying to excuse their lack of diligence, the Nathels previously claimed that they had relied on their tax advisor, Josephson.  But tax advice is no longer the issue (SAC ¶ 103; Cross-Motion at 5), and the Nathels do not allege that they were provided any "assurances" concerning the advances. Accordingly, the supposed assurances from Josephson are irrelevant. In addition, the Nathels utterly fail to explain the lack of diligence on the part of their business agent, Byllott. (See SAC ¶¶ 30-33.)

2077153, at *10 (S.D.N.Y. July 20, 2007). Dismissal is particularly appropriate here, because, even if the state law claims survive independently (which, as discussed below, they should not), resolving the state law claims would entail inquiries into numerous tax issues which are no longer an element of the federal claim. "Where the district court determine[s] that resolving the state law claim would entail resolving additional issues of fact, … dismissal of those claims after the federal claims had been dismissed [is] particularly appropriate." *New York Mercantile Exchange*, 497 F.3d at 118-119.

### B.    Plaintiffs' Fraud Claim Fails for the Same Reasons as the Claim of Securities Fraud

"The pleading requirements for common law fraud are essentially the same as those for claims under Section 10(b) and Rule 10b-5." *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 2008 WL 2019680, at *15 (S.D.N.Y. May 08, 2008) (dismissing common law fraud claim for same reasons as dismissal of 10b-5 claim); *accord*, *Joffee v. Lehman Bros., Inc.*, 2005 WL 1492101, at *14 (S.D.N.Y. June 23, 2005) (same). When a 10b-5 claim has been dismissed with prejudice, it is proper to dismiss a parallel state law fraud claim with prejudice also. *See Rich v. Maidstone Financial, Inc.*, 2002 WL 31867724, at *13 (S.D.N.Y. December 20, 2002). As the Palace Defendants have demonstrated, Plaintiffs have failed to state a 10b-5 claim with respect to proximate cause, justifiable reliance, or scienter. These same inadequacies apply to the common law fraud claim. That claim should therefore be dismissed.

### C.    The Claim for Declaratory Judgment Is Not Ripe

The Palace Defendants adopt the arguments made by Defendants Richard S. Guralnick and Schain Leifer Guralnick with respect to the claim for declaratory judgment in the twelfth claim for relief insofar as they are applicable to the parallel claim against the Palace Defendants. The Palace Defendants agree that, even if the Second Circuit permits on occasion an action for

21

declaratory judgment based on a contingency, the contingency must be based on more than a communication from one IRS agent. As the Guralnick Defendants make clear, the *Seippel* case[11] relied on by Plaintiffs is easily distinguishable.

The Siegal Defendants note that the *Seippel* case is inapposite for an additional and broader reason. *Seippel* was brought under 28 U.S.C. § 2201, as the declaratory judgment claims here purport to be. It is black-letter law, however, that "the Declaratory Judgment Act does not by itself confer subject matter jurisdiction on the federal courts. Rather, there must be an *independent* basis of jurisdiction before a district court may issue a declaratory judgment." *Correspondent Services Corp. v. First Equities Corp. of Florida*, 442 F.3d 767, 769 (2d Cir. 2006) (emphasis added, quotation omitted); *see Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 17 (1983).

Here, by contrast, Plaintiffs base their action for declaratory judgment, like all their claims other than their securities law cause of action, purely on 28 U.S.C. § 1367. (SAC ¶ 9.) Section 1367, though, as its title indicates, provides only "supplemental jurisdiction"; it is not an *independent* source of federal jurisdiction. Section 1367, therefore, cannot provide the basis for a federal claim under section 2201. To be sure, Plaintiffs could try to recast their cause of action as a claim for declaratory judgment under N.Y. C.P.L.R. § 3001, but such an amendment would be futile. The law of New York is even stricter than federal law regarding declaratory judgments on contingent claims. "[A] request for a declaratory judgment is premature if the future event is beyond the control of the parties and may never occur." *In re Guardianship of Chantel Nicole R.*, 34 A.D.3d 99, 107, 821 N.Y.S.2d 194, 200 (1st Dep't 2006) (quoting *New York Public Interest Research Group, Inc. v. Carey*, 399 N.Y.S.2d 621, 623 (1977).) "[A] declaratory judgment action should not be entertained when any judgment that might issue will become

---

[11]    *Seippel v. Sidley, Austin, Brown & Wood, LLP,* 399 F. Supp. 2d 283 (S.D.N.Y. 2005).

effective only upon the occurrence of a future event that may or may not come to pass." *Gates v. Hernandez*, 810 N.Y.S.2d 73, 74 (1st Dep't 2006). There can be no dispute that Plaintiffs' claim here is contingent on an action beyond the control of the parties – an unfavorable decision of the IRS and by any courts that might hear challenges to the IRS's acts. It is equally beyond dispute that this contingency may never come to pass. It follows that if Plaintiffs brought a claim for declaratory judgment under New York state law, it would be subject to instant dismissal.

Finally, in view of the focus of the securities claim in the SAC on Plaintiffs' alleged loss of an investment, there are no efficiencies in coupling a declaratory judgment action dealing with tax issues. When a declaratory judgment "claim is unrelated to matters decided herein[, a] decision by this Court would not promote judicial economy." *KPMG Peat Marwick v. Texas Commerce Bank*, 976 F. Supp. 623, 632 (S.D. Tex. 1997) (dismissing cross-claim for declaratory judgment). The connection between the federal securities claim and the declaratory judgment claim are simply too tenuous to make an assumption of jurisdiction worthwhile.

**D.    The Claims for Tortious Interference with Contractual Relations and Aiding and Abetting Breach of Fiduciary Duty Fail for the Reasons Set Forth by Trevisani and Coleman**

The Palace Defendants adopt the arguments laid out in the Memorandum of Law In Opposition To Plaintiffs' Cross-Motion to Amend and in Further Support of Motion To Dismiss the First Amended Complaint By Defendants George Coleman and Robert A. Trevisani with respect to Fifth, Sixth, Eighth and Ninth Claims for Relief insofar as they are applicable to the respective seventh and tenth claims for relief against the Siegal Defendants.

23

## VIII.   THE PALACE DEFENDANTS JOIN IN AND INCORPORATE THE OTHER DEFENDANTS' ARGUMENTS

The Palace Defendants hereby join in all of the arguments and grounds for dismissal offered by the other defendants in this action.

## IX.   THE PLAINTIFFS SHOULD NOT BE PERMITTED TO REPLEAD

Plaintiffs have now tried both approaches to stating a securities claim – first based on their alleged tax losses and now based on their alleged investment losses – and have failed both times. There are no more theories left to try. Plaintiffs have never been able to state a claim; indeed, they have never been able to provide a factual basis showing that they lost anything as a result of any allegedly fraudulent acts of the Siegal Defendants. Nothing would be gained by permitting them to replead. The complaint should be dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, the Palace Defendants respectfully request that the Court deny leave to file the Proposed SAC and dismiss this action with prejudice.

Dated: New York, New York
      June 26, 2008

> Respectfully submitted,
>
> ARKIN KAPLAN RICE LLP
>
> By: /s/ Stanley S. Arkin_____
>        Stanley S. Arkin (SA 1373)
>        Michelle A. Rice (MR 4254)
>        Sean R. O'Brien (SO 2318)
>        Justin M. Sher (JS 8379)
>    590 Madison Ave., 35th Floor
>    New York, New York  10022
>    (212) 333-0200 (phone)
>    (212) 333-2350 (fax)

24