UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

IRA NATHEL and SHELDON NATHEL,

Plaintiffs,

- against -

RICHARD SIEGAL, GEORGE COLEMAN, HARVEY JOSEPHSON, ROBERT A. TREVISANI, PAUL HOWARD, RICHARD S. GURALNICK, SCHAIN LEIFER GURALNICK, BISTATE OIL MANAGEMENT CORPORATION, SS&T HOLDING CO., LLC, PALACE EXPLORATORY COMPANY, TAH DRILLING CO., INC., TAQ DRILLING CO., INC., OIL AN GAS TITLE HOLDING CORPORATION, JOHN DOES 1-20, JOHN DOE CORPORATIONS 1-20, JOHN DOE LLCs 1-20, AND JOHN DOE LLPs 1-20,

Defendants.

---

ECF Case

07-CIV-10956 (LBS) (HPB)

**DEFENDANT HARVEY JOSEPHSON'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO FILE A SECOND AMENDED COMPLAINT**

**INGRAM YUZEK GAINEN CARROLL & BERTOLOTTI, LLP**
**250 Park Avenue**
**New York, New York 10177**
**(212) 907-9600**

**Attorneys for Defendant Harvey Josephson**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 3

PLAINTIFFS' PROPOSED SAC SHOULD NOT BE ACCEPTED FOR FILING BECAUSE IT CANNOT SURVIVE A MOTION TO DISMISS .......... 3

POINT I .......... 4

PLAINTIFFS' PROPOSED SAC DOES NOT ALLEGE FRAUD BY JOSEPHSON WITH THE REQUIRED PARTICULARITY; IT DOES NOT ADEQUATELY PLEAD THE "TIME, PLACE, SPEAKER AND CONTENT" OF THE ALLEGEDLY FRAUDULENT STATEMENTS .......... 4

POINT II .......... 7

PLAINTIFFS' PROPOSED SAC DOES NOT PLEAD THAT JOSEPHSON HAD THE *SCIENTER* REQUIRED TO ESTABLISH A RULE 10B-5 VIOLATION; VAGUE ALLEGATIONS OF "RECKLESSNESS" DO NOT SUFFICE .......... 7

POINT III .......... 10

PLAINTIFFS' PROPOSED SAC DOES NOT PLEAD THAT ANYTHING JOSEPHSON DID CAUSED PLAINTIFFS TO SUFFER A LOSS ON WHICH THEY CAN BASE A CLAIM .......... 10

A. Plaintiffs Have Not Alleged That They Have Suffered a Loss .......... 11

B. The Proposed SAC Does Not Allege That Any Actionable Conduct By Josephson Proximately Caused Plaintiffs To Suffer An Economic Loss .......... 11

CONCLUSION .......... 14

**TABLE OF AUTHORITIES**

*Aegon N.V. Secs. Litig.*,
No. 03 Civ. 0603, 2004 WL 1415973 (S.D.N.Y. June 23, 2004)....................................10

*ATSI Commc'ns, Inc. v. The Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)....................................................................5, 6, 7

*In re Bayou Hedge Fund Litig.*,
534 F. Supp. 2d 405 (S.D.N.Y. 2007)....................................................7, 8

*Castellano v. Young & Rubicam, Inc.*,
257 F.3d 171 (2d Cir. 2001)....................................................................11

*In re Crude Oil Commodity Litig.*,
No. 06 Civ. 6677 (NRB), 2007 WL 1946553 (S.D.N.Y. June 28, 2007)..........................5

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*,
343 F.3d 189 (2d Cir. 2003)....................................................................13

*Gabriel Capital, L.P. v. Natwest Fin., Inc.*,
137 F. Supp. 2d 251 (S.D.N.Y. 2000)....................................................9

*Greenwald v. Orb Commc'ns & Mktg., Inc.*,
192 F. Supp. 2d 212 (S.D.N.Y. 2002)....................................................11

*Joffee v. Lehman Bros., Inc.*,
No. 04 Civ. 3507, 2005 WL 1492101 (S.D.N.Y. June 23, 2005)....................................12

*Lentell v. Merrill Lynch & Co., Inc.*,
396 F.3d 161 (2d Cir. 2005)....................................................................4, 10

*Luce v. Edelstein*,
802 F.2d 49 (2d Cir. 1986)....................................................................14

*In re Merrill Lynch & Co., Inc.*,
273 F. Supp. 2d 351 (S.D.N.Y. 2003)....................................................12

*Novak v. Casaks*,
216 F.3d 300 (2d Cir. 2000)....................................................................9

*Spier v. Erber*,
No. 89 Civ. 1657, 1992 WL 230254 (S.D.N.Y. Sept. 1, 1992)....................................7, 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
127 S. Ct. 2499 (2007)....................................................................7, 8

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

IRA NATHEL and SHELDON NATHEL,

Plaintiffs,

- against -

RICHARD SIEGAL, GEORGE COLEMAN, HARVEY JOSEPHSON, ROBERT A. TREVISANI, PAUL HOWARD, RICHARD S. GURALNICK, SCHAIN LEIFER GURALNICK, BISTATE OIL MANAGEMENT CORPORATION, SS&T HOLDING CO., LLC, PALACE EXPLORATORY COMPANY, TAH DRILLING CO., INC., TAQ DRILLING CO., INC., OIL AN GAS TITLE HOLDING CORPORATION, JOHN DOES 1-20, JOHN DOE CORPORATIONS 1-20, JOHN DOE LLCs 1-20, AND JOHN DOE LLPs 1-20,

Defendants.

ECF Case

07-CIV-10956 (LBS) (HPB)

**DEFENDANT HARVEY JOSEPHSON'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO FILE A SECOND AMENDED COMPLAINT**

**PRELIMINARY STATEMENT**

Plaintiffs' first amended complaint dated December 13, 2007 purported to allege five claims against defendant Harvey Josephson: (1) violations of Rule 10b-5; (2) common law fraud based on alleged misrepresentations; (3) common law fraud based on alleged non-disclosures; (4) negligent misrepresentation; and (5) breach of an alleged fiduciary duty to plaintiffs. Josephson moved to dismiss them under Rule 12(b)(6) of the Federal Rules of Civil Procedure because, *inter alia*, plaintiffs failed utterly to plead fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act ("PSLRA").

Faced with Josephson's motion (with which we respectfully assume the Court is familiar), plaintiffs jettisoned their pleading, as much as conceding that it is legally insufficient.

Plaintiffs' latest effort is no better. The proposed second amended complaint (sometimes, "SAC") purports to assert two claims against Josephson. Plaintiffs take another (unsuccessful) stab at pleading a violation of Rule 10b-5, and rely on the same allegations to purport to assert a claim for common law fraud. Though plaintiffs' new pleading may mention Josephson in more paragraphs than their last, it suffers from the same defects as the old did, as well as new ones.[1] Plaintiffs have not pleaded, with particularity or otherwise, the elements of a 10b-5 claim and they have not pleaded the elements of a common law fraud claim.

* * *

According to plaintiffs' proposed SAC, Josephson's involvement in the events of which plaintiffs complain was that of an outside accountant for plaintiffs and their business for about three years. (¶ 29.) Plaintiffs allege in their proposed complaint that it was Josephson who suggested, initially, that they invest in a so-called Siegal partnership. (¶ 31.) Plaintiffs allege that Josephson made certain statements to recommend the investment and to explain how it was supposed to work. (¶¶ 32, 33, and 35.) Plaintiffs' claims are apparently based largely on what Josephson is alleged to have said to Richard Byllott, the controller of plaintiffs' business, because, plaintiffs allege, Byllott "act[ed] as their agent for purposes of handling their Siegal Partnership investments, was the liaison with Josephson, and contacted the Partnership promoters, and received and read the Investment Proposals and the Partnership Agreements on behalf of plaintiffs." (¶ 37.)

---

[1] The paragraphs in plaintiffs' proposed second amended complaint that reference Josephson are ¶¶ 6, 11, 15, 29-41, 96, 101-103, and 113-121.

Plaintiffs do not allege that Josephson knew of or participated in any alleged fraudulent scheme or conduct. Plaintiffs do not allege that Josephson had any reason to suspect fraud. And, plaintiffs do not allege that Josephson knowingly made any false statements to them. Instead, plaintiffs attribute to Josephson, and base their claims against him on, an alleged failure to have investigated and learned that plaintiffs could not get legitimate tax deductions and the return of their investment from oil and gas revenues.

Though they do not plead it, plaintiffs apparently assume that Josephson had some sort of duty to probe into the Siegal partnerships' business operations and ascertain what wells were drilled and when. Plaintiffs do not, however, even plead what that purported duty was, or from where it derives, much less that it applied to Josephson and he breached it.

Plaintiffs' proposed SAC alleges, in any event, that after Josephson told plaintiffs about the Siegal Partnerships generally and Byllott did his own due diligence, plaintiffs invested in the High Island partnership in August 2001. Over the next 16-month period, from August 2001 through December 2002, plaintiffs invested in three more Siegal partnerships. Plaintiffs do not sue on any of these first four investments. In December 2002, they invested in a fifth, Indian Village. That is the only one on which they sue Josephson; they invested in three more after Josephson stopped being their accountant.

These, and the other facts pleaded, do not state claims against Josephson.

## ARGUMENT

### PLAINTIFFS' PROPOSED SAC SHOULD NOT BE ACCEPTED FOR FILING BECAUSE IT CANNOT SURVIVE A MOTION TO DISMISS

To state a claim against Josephson under Rule 10b-5, plaintiffs must allege that Josephson "(1) made misstatements or omissions of material fact; (2) with scienter; (3) in

connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury."[2] Like plaintiffs' earlier complaint, the proffered complaint suffers from a total, and fatal, failure to plead against Josephson the elements of a claim under Rule 10b-5 or common law fraud with the particularity required by Rule 9(b) and the PSLRA. The proffered amended complaint fails adequately to allege the "time, place, speaker and content" of the allegedly fraudulent statements. It fails to allege that Josephson misrepresented anything. It fails to allege *scienter*. It fails to allege that plaintiffs even suffered a loss. It fails to allege that plaintiffs relied on Josephson's alleged statements. It fails to allege causation.

Each of these defects is fatal to plaintiffs' new claims against Josephson. Together, they defeat it overwhelmingly. As did our memorandum addressed to plaintiffs' first amended complaint, this memorandum focuses on the arguments particular to Josephson, and adopts and incorporates the other defendants' arguments to the extent that they provide bases for dismissing plaintiffs' claims against Josephson.

## POINT I

## PLAINTIFFS' PROPOSED SAC DOES NOT ALLEGE FRAUD BY JOSEPHSON WITH THE REQUIRED PARTICULARITY; IT DOES NOT ADEQUATELY PLEAD THE "TIME, PLACE, SPEAKER AND CONTENT" OF THE ALLEGEDLY FRAUDULENT STATEMENTS

Like plaintiffs' first amended complaint, plaintiffs' proposed SAC bases its fraud claims against Josephson on statements he purportedly made (none alleged to have been false) to introduce and explain the Siegal partnerships. Plaintiffs' first amended complaint alleged that, in or about November 2001, Josephson "approached Plaintiff's corporate controller, Richard

[2] *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 172 (2d Cir. 2005) (citation omitted).

Byllott, with a proposal to invest in a Siegal partnership."[3] The first amended complaint alleged that Josephson explained to Byllott how the Siegal partnerships were supposed to work, and identified Josephson as the speaker of very little to plaintiffs.[4]

Plaintiffs' proffered SAC changes the date of, and the participants in, the conversation that plaintiffs use as the foundation for their claims against Josephson. Now, plaintiffs allege that the conversation occurred in a regular monthly meeting, instead of an "approach" by Josephson to Byllott; that the meeting was "in or about July 2001," instead of "in or about November 2001;" and that Josephson spoke to Byllott and plaintiffs, instead of Byllott alone.

Assuming that plaintiffs' revised allegations are true, as we must on this motion, they also fail for lack of particularity. As set out in our memorandum addressed to plaintiffs' first amended complaint, the requirement that fraud be pleaded with particularity means that the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."[5] Stated otherwise, the plaintiff must identify the "time, place, speaker, and content" of the allegedly fraudulent statements.[6] In actions under the PSLRA, with its "heightened pleading instructions," a private securities plaintiff alleging that a defendant made a false or misleading statement must also "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading . . . ."[7] And, "if an

---

[3] Plaintiffs' First Amended Complaint, dated December 13, 2007, ¶ 47.

[4] *See* Memorandum Of Law In Support Of Motion To Dismiss Claims Against Defendant Harvey Josephson, dated February 27, 2008, at 4-6.

[5] *ATSI Commc'ns, Inc. v. Sharr Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

[6] *In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677 (NRB), 2007 WL 1946553, at *6 (S.D.N.Y. June 28, 2007).

[7] *ATSI Commc'ns, Inc.*, 493 F.3d at 99.

allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."[8]

Plaintiffs' new pleading does none of that. Paragraph 31 is the only paragraph that even attempts to state when Josephson made allegedly actionable statements. Its allegation that Josephson first mentioned the Siegal partnerships "[i]n or about July 2001," during "one of [Josephson's] [monthly] visits" to plaintiffs' office hardly pinpoints the time and place as the law requires. Plaintiffs purport to summarize what they allege Josephson said in that "visit" in paragraphs 32 through 36; none of those paragraphs alleges that Josephson said anything that he knew to be false or misleading. Moreover, plaintiffs do not sue on the investment that they made in August 2001 in purported reliance on Josephson's descriptions of the Siegel partnerships. As for particularizing allegedly false and fraudulent statements made by Josephson in connection with their later investments in Siegal partnerships, the best that plaintiffs come up with is paragraph 41, which alleges that "Josephson made the same representations to Byllott and Plaintiffs at similar meetings, with respect to five Siegal Partnerships in which he proposed they invest without any investigation of his own as to their validity."

*Spier v. Erber* is on point. At issue were misrepresentations one of the defendants allegedly made over a series of meetings and telephone conversations with the president of another party. Unlike plaintiffs here, the plaintiff in *Spier* alleged the precise location of each meeting, and the precise dates of each meeting and phone call, in which the defendant allegedly made the misrepresentations sued upon. The court rejected that pleading as legally insufficient, because "[b]y merely setting forth a list of dates and places, however, Waste Tech has not satisfied Rule 9(b)'s particularity requirement[.]" Instead, the court explained, "Waste Tech

---

[8] *Id.* (citation omitted).

would have to specify the time, place, speaker, and content of each of the alleged misrepresentations."[9] Here, plaintiffs' allegations do not come close to meeting the standard. They are so lacking as to be frivolous.

## POINT II

## PLAINTIFFS' PROPOSED SAC DOES NOT PLEAD THAT JOSEPHSON HAD THE *SCIENTER* REQUIRED TO ESTABLISH A RULE 10B-5 VIOLATION; VAGUE ALLEGATIONS OF "RECKLESSNESS" DO NOT SUFFICE

Under the PSLRA, a plaintiff must state with particularity "facts giving rise to a strong inference that the defendant acted with the required state of mind." For Rule 10b-5, the required state of mind is "scienter," defined in this context as "a mental state embracing intent to deceive, manipulate, or defraud."[10] A plaintiff may plead a strong inference of scienter by alleging facts "(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness."[11] Here, where plaintiffs rely on allegations of recklessness rather than motive and opportunity to plead fraudulent intent, the strength of the circumstantial allegations must be correspondingly greater. The Second Circuit defines recklessness as conduct that is "highly unreasonable" and "an extreme departure from the standards of ordinary care ... to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." [12] "[T]he

[9] *Spier v. Erber*, No. 89 Civ. 1657 (PKL), 1992 WL 230254, at *16 (S.D.N.Y. Sept. 1, 1992).

[10] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 127 S. Ct. at 2507 (2007) (internal quotes omitted).

[11] *ATSI Commc'ns, Inc.*, 493 F.3d at 99.

[12] *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 410 (S.D.N.Y. 2007) (internal quotes omitted).

plaintiff must allege facts approaching *a knowledgeable participation in the fraud or a deliberate and conscious disregard of facts*."[13]

The proposed SAC pleads just the opposite. Plaintiffs here do not allege that Josephson participated in or knew of the alleged fraud, or even that he had any reason to suspect it; they expressly allege that Josephson recommended the Siegal partnerships to them without knowing the true facts about the wells and the revenue they could be expected to generate -- "recklessly," "without any basis," and having "made no investigation." (¶ 35.) Plaintiffs attribute to Josephson, and base their claims against him on, an alleged failure to have investigated and learned of the alleged fraud. Those allegations do not do it for plaintiffs. "[A]llegations that a defendant knew or [was] reckless in not knowing the true facts" are not enough.[14]

For an inference of scienter to be "strong" under the heightened pleading standards that the Supreme Court set last year in *Tellabs*, it "must be more than merely 'reasonable" or 'permissible;'" in determining whether the allegations of the complaint create the required "strong inference" of scienter, "the court must take into account plausible opposing inferences."[15]

Here there are plausible opposing inferences. For example, plaintiffs allege that Josephson told them that he "had been putting his other clients" in Siegal partnership investment vehicles (¶ 34) and that oil and gas revenues paid down the promissory notes that the investors are required to execute (¶ 36). Plaintiffs do not allege that those statements were false. Assuming, therefore, that those statements were true, is not the inference that Josephson was

---

[13] *Id.* at 415 (internal quotes omitted) (emphasis supplied).

[14] *Id.*

[15] *Tellabs,* 127 S. Ct. at 2509.

trying to help plaintiffs, not defraud them, when he recommended the Siegal partnership investments?

Plaintiffs allege, upon information and belief, that Josephson breached an alleged duty to plaintiffs to investigate the *bona fides* of the Siegal partnerships and uncover the alleged fraud. Plaintiffs rely on the Second Circuit's decision in *Novak v. Kasaks* to defend their allegation that Josephson had a duty to monitor Siegal's partnerships and was reckless to the level of committing securities fraud in not doing so.[16] Plaintiffs are wrong to cite *Novak* in that way.

*First,* the discussion in *Novak* on which plaintiffs rely does not state the applicable test; it was a review of pre-PSLRA standards. *Second, Novak* was decided pre-*Tellabs*. *Third,* the passage plaintiffs cite merely states the unremarkable proposition that "[u]nder certain circumstances" (in the pre-PSLRA and pre-*Tellabs* world), allegations that defendants failed to review or check information that they had a duty to monitor, or ignored obvious signs of fraud, could suffice to allege recklessness. Nothing in *Novak* justifies plaintiffs' allegation that Josephson had and breached a duty to plaintiffs such that his conduct constituted securities fraud.[17] We do not say that Josephson, an accountant licensed in New York, had no duty to plaintiffs of any sort. As a professional, he was bound by the standard of reasonable care in the exercise of his professional duties. By describing Josephson as their trusted advisor (¶ 6), a man who had been their outside accountant for single year and with whom they communicated through Byllott as their "liaison," plaintiffs do not impose on Josephson a higher duty.

---

[16] *Novak v. Casaks*, 216 F. 3d 300, 308-09 (2d Cir. 2000).

[17] *See Gabriel Capital, L.P. v. Natwest Finance, Inc.,* 137 F. Supp. 2d 251 (S.D.N.Y. 2000).

The proffered SAC does not allege scienter. Under the PSLRA, where the facts pled do not support a strong inference of scienter, a fraud claim not only should, but must be dismissed at the threshold.[18]

**POINT III**

**PLAINTIFFS' PROPOSED SAC DOES NOT PLEAD THAT ANYTHING JOSEPHSON DID CAUSED PLAINTIFFS TO SUFFER A LOSS ON WHICH THEY CAN BASE A CLAIM**

Plaintiffs do not allege that anything Josephson did caused plaintiffs to suffer any damages. To plead a claim under Rule 10b-5, plaintiffs must allege that actionable conduct by Josephson (of which there is none) caused plaintiffs to suffer a loss. In particular, plaintiffs must allege both transaction causation and loss causation.[19] Plaintiffs allege neither.

As the Second Circuit explains it, transaction causation is "akin to reliance," requiring the allegation that "but for the claimed misrepresentation or omissions, the plaintiff would not have entered into the detrimental securities transaction."[20] "Loss causation is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff."[21] It is often compared to the principle of proximate cause. As another court in this district set out the Second Circuit's analysis, the "loss causation inquiry typically examines how directly the subject of the [misrepresentation] caused the loss, and whether the resulting loss was a foreseeable

---

18 *Aegon N.V. Securities Litigation*, No. 03 Civ. 0603, 2004 WL 1415973, at *16 (S.D.N.Y. June 23, 2004) (citations omitted).

19 *Lentell v. Merrill Lynch & Co.,* 396 F.3d 161, 172 (2d Cir. 2005).

20 *Id* (citation omitted).

21 *Id.*

outcome of the [misrepresentation], while also taking into account issues such as the presence of intervening causes and the lapse of time between the behavior complained of and the loss."[22]

Applying these analyses to plaintiffs' proposed pleading, the proffered SAC fails for multiple reasons, each rendering the pleading unable to survive a motion to dismiss the claims against Josephson. Here again we address the arguments particular to Josephson, and adopt and incorporate the arguments in the other defendants' memoranda as they apply to Josephson.

## A. Plaintiffs Have Not Alleged That They Have Suffered A Loss

Plaintiffs' allegations of losses they purportedly suffered are legally insufficient. A tax audit is not a loss that can provide the basis for a securities law claim (or one under the common law.). In the interest of economy, we respectfully refer the Court to our co-defendants' memoranda on this issue. We add only, as discussed above, that plaintiffs are not suing about four of the five Siegal partnerships in which plaintiffs allege they invested while Josephson served as their outside accountant. (¶ 54.) Presumably, plaintiffs reaped the tax benefits from the first four investments. (And, if they did not, then they were on inquiry notice of what they complain about here well before they claim to have been.)

## B. The Proposed SAC Does Not Allege That Any Actionable Conduct By Josephson Proximately Caused Plaintiffs To Suffer An Economic Loss

The fount of plaintiffs' claims against Josephson is what plaintiffs allege was Josephson's description to plaintiffs in July 2001 of how partnerships were supposed to work, and his recommendation that plaintiffs invest in them. As the proposed SAC does not allege that plaintiffs suffered a loss, it follows that no purportedly actionable conduct by Josephson caused

---

[22] *Greenwald v. Orb Commc'ns & Mktg., Inc.,* 192 F. Supp. 2d 212, 226 (S.D.N.Y. 2002), quoting *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 186 (2d Cir. 2001).

plaintiffs to suffer a loss. But even indulging plaintiffs to pretend that their tax audit is a loss that can support a securities or common law fraud claim, the statements that plaintiffs attribute to Josephson do not, as a matter of law, allege causation. Here again, each of these failures defeats causation. Together, they devastate it.

*First*, as discussed in Point I above, the only statements by Josephson that plaintiffs even try to tie to a particular investment, much less a purported loss, are those he allegedly made in July 2001 to introduce and explain the point of the Siegal partnerships and the tax benefits they were designed to enable. Plaintiffs purport to have made their first investment relying on those words. But they do not even allege a loss on that investment, nor in the next three that they made. Plaintiffs' proffered SAC lacks the required "allegations of a causal connection between the alleged misrepresentations and a subsequent economic loss suffered by the [p]laintiffs."[23] And, plaintiffs "failed to allege facts which, if accepted as true, would establish that . . . (their claimed losses) was caused by any or all of the alleged [misrepresentations]" by Josephson.[24] These failures are fatal.

*Second,* the allegations of the proposed SAC negate the conclusory allegation that plaintiffs relied on Josephson. As discussed above, plaintiffs plead their reliance on Byllott, their corporate controller, on Siegal and Howard, and on the Investment Proposals. Byllott, the Court may recall, acted as plaintiffs' "agent for purposes of handling their Siegal partnership investment…." (¶ 37.) "After the initial meeting with Josephson," plaintiffs allege, "pursuant to Josephson's introduction, Byllott, on behalf of Plaintiffs, spoke to Siegal and Howard by telephone to confirm the representations of Josephson, which they did…." (¶ 38.) In addition, plaintiffs allege, "Siegal and Howard forwarded the subscription documents to Byllott, intended

[23] *Joffee v. Lehman Bros., Inc.*, No. 04 Civ. 3507, 2005 WL 1492101, at * 9 (S.D.N.Y. Jun 23, 2005).

[24] *Merrill Lynch & Co., Inc* , 273 F. Supp. 2d 351, 363 (S.D.N.Y. 2003).

for Plaintiffs, which included an Investment Proposal and a Partnership Agreement, among other documents, as set forth below, which Byllott read on behalf of the Plaintiffs and which they relied upon. Plaintiffs received the Investment Proposals from Siegal prior to executing the final Partnership Agreement." (¶ 39.)

The referenced Partnership Agreements on which plaintiffs sue, provided with our co-defendant's papers, likewise negate reliance on Josephson. They include plaintiffs' acknowledgements, *inter alia,* that the offering of partnership units "was made only through direct, personal communication between [plaintiffs] and the Managing Partner or his duly authorized representative," that plaintiffs "had the opportunity to obtain all additional information desired in order to verify an investment in the Partnership," and that plaintiffs are "prepared to bear the economic risk of such an investment for an indefinite period. . . ." Had plaintiffs suffered an actionable loss, each of these circumstances -- alleged by plaintiffs -- would defeat loss causation as an intervening event.[25]

**CONCLUSION**

For the reasons stated, the claims against Josephson in plaintiffs' proffered complaint would not survive a motion to dismiss. It would be futile, therefore, for the Court to allow plaintiffs to file this new complaint. At this point, the claims against Josephson should be dismissed with prejudice. Though courts in this circuit often grant plaintiffs leave to replead where their complaints are defective under Rule 9(b), plaintiffs have already given themselves that relief. They amended their originally filed complaint as-of-right, and, when Josephson and

[25] *Emergent Capital Investment Management, LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 197 (2d Cir. 2003).

the other defendants moved to dismiss plaintiffs' amended pleading, plaintiffs abandoned it, tacitly conceding its legal insufficiency. They do not get to try again.[26]

Dated: New York, New York
June 26, 2008

**INGRAM YUZEK GAINEN CARROLL & BERTOLOTTI, LLP**

By: ______________________
Daniel L. Carroll (DC-5553)
Susan B. Ratner (SR-1446)
250 Park Avenue, 6th Floor
New York, NY 10177
(212) 907-9600

Attorneys for Defendant
Harvey Josephson

[26] *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986); ("[i]n cases where [leave to replead] has not been granted, plaintiffs have usually already had one opportunity to plead fraud with greater specificity"); *Spier v. Erber*, 1992 WL 230254, at *16.